1  Stuart M. Eppsteiner (CA SBN 098973)
   sme@eppsteiner.com
2  Andrew J. Kubik (CA SBN 246902)
   ajk@eppsteiner.com
3  Zelekha Amirzada (CA SBN 250419)
   za@eppsteiner.com
4  EPPSTEINER & FIORICA ATTORNEYS, LLP
   12555 High Bluff Dr., Ste. 155
5  San Diego, CA 92130
   Tel. (858) 350-1500
6  Fax (858) 350-1501

7  Counsel for Plaintiff and the Class

8

9              IN THE UNITED STATES DISTRICT COURT

10                CENTRAL DISTRICT OF CALIFORNIA

11

12

13  KRISTIAN APODACA, individually and  )  Case No.
    on behalf of all other similarly situated,  )     SACV13 - 00725 JVS (ANx)
14                                        )
                                          )  CLASS ACTION COMPLAINT
15            PLAINTIFF,                   )
                                          )
16       vs.                              )  Jury Trial Demanded
                                          )
17  WHIRLPOOL CORPORATION,                )
                                          )
18            DEFENDANT.                   )
                                          )
19  _____)

20

21

22      Plaintiff Kristian Apodaca, by and through his undersigned counsel,

23  individually and on behalf of all others similarly situated in the State of California

24  (the "Class"), alleges the following facts and claims upon personal knowledge and

25  upon information and belief as to all other matters as follows:

26  ///

27  ///

28

                                          1
                            CLASS ACTION COMPLAINT
    198925

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, the proposed Class consists of more than 100 members, and this is a class action in which the members of the proposed Class and Defendant are citizens of different states.

2.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant does substantial business in this district, and a substantial part of the events or omissions giving rise to Plaintiff's claims took place within this district.

## INTRODUCTION

3.     This action is brought to remedy violations of law in connection with Defendant's marketing, design, manufacture, sales, performance, servicing and warranting of its Maytag brand dishwashers ("Dishwashers"). The Dishwashers sell for a retail price of $350-$800.

4.     Plaintiff brings this class action on behalf of himself and all others similarly situated in the State of California against Defendant, Whirlpool Corporation ("Defendant" or "Whirlpool"), seeking damages, restitution, and injunctive relief for the proposed Class as defined herein.

5.     Plaintiff alleges Whirlpool engages in unfair and deceptive conduct when selling Dishwashers.  He and other purchasers of Dishwashers were deceived at the point of purchase because while Defendant represents that the Dishwashers do not require frequent repairs, Defendant fails to disclose the material fact that the Dishwashers have defective control panels that fail prematurely and frequently and require frequent and expensive repairs.

6.     Plaintiff further alleges that the Dishwashers are not fit for their ordinary purpose, do not pass without objection in the trade, and are substantially certain to fail within their useful life.

198925

7.     Whirlpool did not disclose either prior to, or at the time of purchase, any information to Plaintiff or Class members regarding the Dishwashers' defective Control Panels.

## THE PARTIES

8.     Defendant Whirlpool Corporation is a Delaware corporation with its principal place of business in Benton Harbor, Michigan.  Whirlpool purchased Maytag Corporation in 2005. Maytag is now a division of Whirlpool.  Whirlpool's stock trades on the New York Stock Exchange under the symbol WHR.

9.     At all times relevant hereto, Whirlpool was in the business of manufacturing, advertising, marketing, promoting and selling Dishwashers throughout the United States.

10.     Plaintiff Kristian Apodaca is a citizen of California and resides in Anaheim, California.

## FACTUAL BACKGROUND

11.     The Dishwashers are identical as to the parts and conditions that form the basis of these claims. Whirlpool distributes Dishwashers for sale through its network of authorized dealers in the United States such as Lowe's, Home Depot, Sears, and other large and medium-sized retail chains, as well as through independently-owned retailers.

12.     According to the U.S. Department of Energy, the average expected useful life of any dishwasher is 15 years.

13.     During the beginning of 2011, Mr. Apodaca was in the market for a new dishwasher.  On January 11, 2011 he went to a Home Depot store located in Fullerton, California and examined several dishwashers on the showroom floor.

14.     He noticed a Maytag model and immediately recalled the decades-long advertising campaign of the "Loneliest Guy - Maytag Repairman" and its advertising message that Maytag appliances are the most durable and reliable and do not require frequent repairs. Based on Defendant's numerous representations

over the years of its Maytag brand as being the most dependable and durable, not requiring frequent repair, Mr. Apodaca chose to purchase a Maytag dishwasher, model number MDBH979AWS4.

15.     At no point during his examination of the Dishwasher, and all labels and placards adhered to it, did Defendant disclose that the control panel on the Dishwasher is defective and would require frequent and costly replacement to keep the Dishwasher operational for its useful life.

16.     The Dishwasher was subsequently delivered to and professionally installed in Mr. Apodaca's home on February 13, 2011. Since being installed, the Dishwasher has broken down three times.

17.     The first break-down involved the soap dispenser and happened within the first three months following installation.    Mr. Apodaca submitted a warranty claim to Whirlpool, and Whirlpool replaced the defective soap dispenser under the terms of the warranty.

18.     The second failure involved the control panel.  It failed in October of 2011; within 8 months of installation.  As a result of the control panel failure, Mr. Apodaca was not able to turn on and run his dishwasher.  Mr. Apodaca contacted Whirlpool to make a warranty claim.  At first Whirlpool refused to do anything. Upon repeated demands by Mr. Apodaca, Whirlpool agreed to pay for the cost to replace the control panel.

19.     The third failure involved the control panel again, and happened in December of 2012. As a result of the third failure, Mr. Apodaca was unable to turn on and run his Dishwasher.  Mr. Apodaca again contacted Whirlpool to make a warranty claim.  Whirlpool denied his demand that it repair the Dishwasher's failure under its warranty.  Mr. Apodaca made repeated demands to Whirlpool that it buy back the defective Dishwasher due to repeated failures of the same component. Whirlpool refused to buy back his Dishwasher

198925

1    20.    Defendant refused Plaintiff's demand and disclaimed any problems

2    with its Dishwasher control panels.

3    21.    In January of 2013, Mr. Apodaca submitted a complaint to the Better

4    Business Bureau regarding his defective Dishwasher. Whirlpool did not timely

5    respond to the complaint.  When Whirlpool finally did respond, it demanded Mr.

6    Apodaca pay an additional $150.00 to replace his defective dishwasher with a

7    similar Maytag model.  Mr. Apodaca refused to pay more money to Whirlpool for a

8    defective product.

9    22.    Mr. Apodaca was deceived by Whirlpool into purchasing a defective

10   Dishwasher that is not fit for its ordinary purpose and now brings this class action

11   complaint seeking to recover the full relief afforded to him and those similarly

12   situated under California's consumer protection statutes, and California and federal

13   warranty law.

14   **The Maytag Repair Man and the Decades-Long Repair-Free Advertising**

15   **Campaign**

16   23.    For decades the Maytag brand was, and continues to be, advertised as

17   the most dependable and durable brand of home appliances.  More specifically,

18   Maytag sets itself apart as the most reliable brand that does not break down at all, or

19   as much as others brands, during its useful life, a fact capable of being proven true,

20   or false, through objective criteria.

21   24.    This marketing message was personified by the famous Maytag repair

22   man in the blue workman suit, white shirt, red tie, and matching cap.  The Maytag

23   Repairman was represented as the "loneliest guy" because Maytag appliances never

24   broke-down and thus he had nothing to do.  The advertisement characterized the

25   Maytag repairman's tool kit as being made-up of a deck of cards for playing

26   solitaire, cross-word puzzles, and beads from craft work.  Maytag's "loneliest guy"

27   advertising campaign is the longest running real-life advertising character in media.

28

198925

25.     The message from Maytag to consumers was clear: the Maytag repair man is bored and lonely because Maytag appliances are engineered and built so well they are virtually repair-free; leaving the repairmen with nothing to do. The repair man's nickname is "ol' lonely" and has been played by actors Hardy Rawls, Jesse White, Gordon Jump, and Clay Earl Jackson.

26.     The Maytag Repair man campaign has spanned over five decades and features both print and television media.  A brief history of the campaign follows:

a. 1967 – Maytag launches the Maytag Repairman national advertising campaign. Actor Jesse White appears in the first Maytag Repairman television commercial.

b. 1986 – The Maytag Repairman is joined by the basset hound "Newton."

c. 1989 – Actor Gordon Jump ("Jump") assumes the role of Maytag Repairman.

i. Jump appears in more than 77 Maytag television commercials and print advertisements.

d. 2003 – Actor Hardy Rawls assumes the role of Maytag Repairman following Jump's retirement.

e. 2007 – Actor Clay Earl Jackson assumes the role of Maytag Repairman following a national search for a replacement.

27.     The advertising campaign was little changed over the decades; all commercials conveyed the same representation that Maytag was the most dependable brand whose appliances did not require repairs during their useful life.

28.     In much of its advertising, Maytag employed the slogan: "Maytag. The Dependability People."

29.     The advertising campaign was so successful that the Maytag Repairman became a metaphor for a professional whose services are rarely needed.

198925

30.     The first Maytag Repairman commercial in 1967 featuring Jesse White training Maytag repairman stated, in part: "You men have all volunteered to become Maytag repairmen, so I'm going to give it to you straight. Maytag washers and dryers are built to last. That makes a Maytag repairman the loneliest guy in town. Look at this rugged motor; this almost indestructible pump. Take a good look because most of you will never see the inside of one of these again.  This is your survival kit: playing cards for solitaire; crossword puzzles; bead work.  Keep these things with you at all times! O.K., men, wear your Maytag emblem proud; the sign of dependable washers and dryers. So what if nobody needs you.  It takes a real man to fight off loneliness; a Maytag repairman – the loneliest guy in town."

31.     In a 1995 commercial featuring Gordon Jump, the Maytag Repairman is featured organizing his workspace. A voiceover states "we do less all day than most people do before sunrise.  We know this job isn't for everyone, but if you've got what it takes, maybe you could be one of us.  The few. The patient. The Lonely. Maytag. The dependability people." The commercial includes a scene where the Maytag repairman is crossing out all the days on the calendar that he has not had a repair call, which up to that point included the first 16 days of October.

32.     In a 1970's commercial featuring a dishwasher, the dialogue among three actors states as follows:

              Actor 1: and this Maytag dishwasher is built

              Actor 2: Rugged!

              Maytag Repairman: Rugged, ugh! You guys really know how to cheer up a Maytag repairman.

              Voiceover: Nobody builds 'em like Maytag. The dependability people.

33.     In a 1986 commercial featuring Maytag appliances, including a dishwasher, the Maytag Repairman states: "Still lonely."  The voiceover states: "Maytag. Still the dependability people."

198925

34.     In a more recent commercial featuring a Maytag dishwasher, the voiceover states: "The Maytag steam dishwasher; built strong to last long."

35.     Other recent commercials feature the Maytag Repairman fixing things such as teddy bear assembly lines, cable television, and copiers, implying that Maytag appliances are so dependable that the Maytag Repairman has time to perform other repair tasks.

36.     Following its acquisition of Maytag's assets and liabilities, Whirlpool has acquired, adopted, and continued the campaign's representation of Maytag as a dependable and repair-free brand. On its website, Whirlpool describes the Maytag brand as follows:

> **For more than a century, Maytag brand appliances have been synonymous with dependability and durability.   Today,  Maytag  brand's  unequaled tradition  of  quality  production  and  unrivaled performance  continues  to  thrive.   Exceptionally durable, commercial grade components are found in Maytag brand appliances.**[1]

37.     In its 2011 Annual Report, Whirlpool represents that the brand "delivers products that are built to last."

38.     In 2000 a survey revealed that 26,000 respondents ranked Maytag's corporate reputation second of all U.S. companies.

39.     Through the Maytag Repairman advertising campaign, the  Maytag brand has created the expectations and belief in consumers that Maytag Dishwashers are durable and dependable and will not break down or need frequent and costly repairs during their useful life, in this case of Dishwashers, approximately 15 years.

40.     Plaintiff Apodaca believed that his Dishwasher would not require frequent and costly repairs during its useful life based on the expectations

---

[1] http://www.Whirlpoolcorp.com/brands/maytag.aspx

CLASS ACTION COMPLAINT

198925

Defendant created for the product over a decades-long advertising campaign touting the brand's durability, reliability and repair-free quality and characteristics.

41.    Longevity, durability, and repair history are objective characteristics that are material to a consumer's decision about which appliance to purchase.

**The Uniform Product and Defect**

42.    The Dishwashers do not vary in their design in any way that is relevant to this action.   The relevant components are identical in their design and application.

43.    The control panel fails because it is contaminated with moisture from the Dishwasher upon the first day of operation and can result in malfunctioning, such as unresponsive program buttons, blinking lights, incomplete cycles, or a combination of malfunctions.

44.    The control panel is the interface between the user and the control board, which controls the start/cancel functions, as well as timing and cycles performed by the Dishwasher.

**Figure 1: Fully Assembled Control Panel for Maytag Dishwasher**



45.    The control panel is essentially made of three components: the plastic frame, a plastic front cover interface ("Interface"), and the flexible membrane switch ("FMS") with a clear cover.  When users press buttons on the Interface, they are pressing on the FMS that sends a signal to the control board (not shown) that is connected to the FMS via a ribbon cable, also known as the "tail" of the FMS.

**Figure 2:  Interface, FMS, and Frame (front top to bottom)**



46.    The ribbon cable, which is integrated with the FMS, passes from the front of the frame to the rear through an opening on the right hand side of the frame.

/ / /

/ / /

/ / /

198925

**Figure 3: Ribbon Cable Gap**

47.   The FMS and ribbon cable are integrated.   The visible lines running through the FMS are called traces.  Traces are printed on the FSM using conductive silver ink.   The circuit panel has integrated domes (metal buttons) that act as switches when pressed by the user through the Interface.   The signal flows through the traces to the control board which activates the desired activity, i.e. turning the dishwasher on when the "Start" button is pressed.

**Figure 4: FMS with Integrated Ribbon Cable and Domes (**The two domes from the right in Figure 4 are the Cancel and Start buttons as they appear under the Interface)



198925

48.     Conductive silver ink traces can run very close to each other as observed in Figure 4 (above).   The problem with such proximity is the risk of migration.   Silver migration is the ionic movement of silver between two adjacent traces.   When silver comes in contact with moisture under electrical potential, the silver is removed ionically from its original location, and is redeposited as a metal (silver dendrite) at some other location.   Silver migration inevitably results in an electrical short circuit, rendering the circuit inoperable.

49.     Silver is a very active metal and highly susceptible to migration and dendrite growth. When exposed to moisture and applied voltage, silver ink can form dendrites (branched projections), which causes the silver traces to bridge with other traces.

**Figure 5: Examples of Dendrites Forming Between Traces**

 

50.     The Dishwashers produce steam as part of a cleaning cycle.   Typically the steam, combined with minerals from detergent, water, and food, vents through from the inside of the dishwasher through a duct in the door and an open vent on the control panel frame.

/ / /

/ / /

/ / /

198925

**Figure 6. Control Panel Frame Vent Front View**



**Figure 7. Control Panel Frame Vent Rear View**



51.     The Dishwasher design allows steam to escape its intended path and flow behind the control panel frame and through the ribbon cable gap (Figure 3).

52.     Moisture can also penetrate from the front of the Dishwasher through the edges of the interface when it is routinely cleaned, as recommended by Whirlpool, with a damp cloth.  Moisture from a damp cloth gathers in a trough behind the interface and eventually flows to the ribbon cable gap where is makes contact with the FMS.

**Figure 8.  Interface Trough Moisture Collection Point**



53.    The moisture from steam and routine cleaning of the interface enters the FMS through the ribbon-cable gap and begins to build inside the control panel from the first day of using the Dishwasher.

54.    The moisture begins to break down the coating on the traces known as the solder mask.  Solder mask is an epoxy based polymer that eventually absorbs moisture, expands, cracks, and allows moisture to make direct contact with the silver traces.  Solder mask does not protect the silver traces from moisture.

55.    As voltage from using the switch passes through the metal traces, it combines with moisture to begin the process of migration and dendritic growth.

56.    Once the dendrites have sufficient time to form, which can happen in a manner of months, the FMS can begin malfunctioning and then experiences a short circuit and becomes inoperable, necessitating the removal of the original control panel and its replacement with a new control panel. Whirlpool has, through the date

198925

1  when this complaint was prepared, been replacing defective original control panels
2  with equally defective replacement control panels. Therefore even when Whirlpool
3  replaces the Dishwasher control panels the Dishwashers remain defective.

4       57.    The Dishwashers are defective because they do not adequately protect
5  against contamination of the control panels which results in their malfunction and
6  failure.

7       58.    The control panels in the Dishwashers do not break down over time
8  from regular wear and tear, but rather break down from a defective design,
9  rendering the electrical circuits highly susceptible to corruption and failure.  As
10  such, the control panels fail to meet applicable industry standards the instant they
11  are manufactured and at the time of purchase.

12        **BREACH OF EXPRESS AND IMPLIED WARRANTIES**
13  **Express Written Warranty**

14       59.    Whirlpool breached its express written warranty, express warranty by
15  affirmation of fact, and the implied warranty of merchantability.

16       60.    Whirlpool provides an express written warranty ("Written Warranty")
17  for Dishwashers against defects in materials and workmanship.  A copy of the
18  Written Warranty is attached hereto as Exhibit 1.

19       61.    The Written Warranty has provides, in relevant part:

20       **First Year Limited Warranty (Parts and Labor)**

21       For one year from the date of purchase, when this major
22       appliance is installed, operated and maintained according
23       to instructions attached to or furnished with the product,
24       Maytag brand of Whirlpool Corporation or Whirlpool
25       Canada, LP (hereafter "Maytag") will pay for factory
26       specified replacement parts and repair labor to correct
27       defects in materials or workmanship that existed when this
28       major appliances was purchased.

198925

62.   The Dishwashers have defects in materials, including, but not limited to gasket and sealing materials, adhesives, and the solder mask on the FMS as alleged herein.

63.   Whirlpool breached its Written Warranty because it failed to conform the Dishwashers to the Written Warranty when it replaced defective control panels with other defective control panels.  The defects in materials existed at the time of purchase, and continued to exist following Whirlpool's attempts at repair.

64.   Plaintiff relied on the Written Warranty and/or the Written Warranty became part of the basis of the bargain between Plaintiff and Whirlpool in that he would not have purchased the Dishwasher had it not been offered with the Written Warranty.

**Express Warranty by Affirmation of Fact**

65.   Whirlpool represents and promises the Dishwasher is made with commercial grade components, as alleged herein.  In so doing, Whirlpool creates an express warranty by affirmation of fact ("Commercial Grade Warranty" or "Fact Warranty").

66.   Commercial grade parts are made stronger, more durable and have a longer life cycle and expected useful life than non-commercial grade parts.

67.   Whirlpool breached the Commercial Grade Warranty by using inferior control panels in its Dishwashers that are not commercial grade.

68.   The Commercial Grade Warranty became part of the basis of the bargain between Plaintiff Apodaca and Whirlpool as Mr. Apodaca expected the control panel to be as durable as a commercial grade control panel.

69.   Whirlpool breached the Commercial Grade Warranty by not conforming Mr. Apodaca's Dishwasher to the Commercial Grade Warranty.

70.   As a result of Whirlpool's breach of the Commercial Grade Warranty, Plaintiff Apodaca suffered damages in that he received an inferior product to that for which he bargained.

198925

71.     Whirlpool has failed to satisfy its obligations under the Written Warranty and Commercial Grade Warranty by: not repairing or replacing the Dishwashers that it knows to have defective control panels and/or not refunding consumers' purchase prices in amounts sufficient to comply with the Song-Beverly Act.

72.     To the extent there is any notice requirement imposed by law, notice is excused because Defendant has (and had) actual knowledge of defects in the Dishwashers that result in their premature failure; therefore notice to it has been, is and will be futile, in that Whirlpool is unwilling and/or unable to cure the defective control panel.

**Implied Warranty of Merchantability**

73.     As part of the sale of each Dishwasher, Defendant warranted that the Dishwashers were of merchantable quality fit for the ordinary purpose for which they are used, i.e., to start and complete wash cycles that clean dishes.

74.     The Dishwashers fail their intended purpose and would not pass without objection in the trade because their control panels malfunction and/or fail and render the Dishwashers inoperable as alleged herein.

75.     The dishwashers are unmerchantable and as such Whirlpool has breached the implied warranty of merchantability causing damages to plaintiff Apodaca and Class members.

76.     Plaintiff and Class members suffered damages as a result of Whirlpool's breach of the implied warranty of Merchantability in that they overpaid for a defective product.

/ / /

/ / /

/ / /

198925

1
2
3

**NON-FRAUD ALLEGATIONS REGARDING DEFENDANT'S**

**VIOLATION OF THE UNFAIR PRONG OF CALIFORNIA**

**BUSINESS & PROFESSIONS CODE § 17200 *ET SEQ.***

4       77.     The following allegations apply to Plaintiffs' claim that Defendant's
5   conduct violated the unfair prong of the UCL. These allegations do not sound in
6   fraud, and the requirements for pleading fraud do not apply to Plaintiff's claims
7   under the unfair prong of the UCL. Plaintiff expressly disclaims any allegations that
8   could be construed as sounding in fraud as applied to this claim, and those
9   allegations expressly are not incorporated by reference in this section of the
10  complaint.  Furthermore, the conduct complained of that gives rise to Plaintiff's
11  unfair-prong claim is separate and apart from the course of conduct giving rise to
12  Plaintiffs' claims under the fraudulent prong of the UCL, as well as the CLRA and
13  FAL.

14      78.     Defendant's unfair conduct in violation of the unfair prong of the UCL
15  is Defendant's sale of Dishwashers that require frequent (as much as once or twice
16  annually) repairs each costing 50% or more of the original purchase price of the
17  Dishwasher.

18      79.     Plaintiff and Class members reasonably expected the Dishwashers
19  would operate throughout their useful life without requiring frequent and costly
20  replacement of control panels.   While the cost of a new Dishwasher is
21  approximately $350-$700, replacing the defective control panel costs approximately
22  $250 in parts and labor per installation.   The defective control panels can
23  malfunction and fail within a year of installation, and the useful life of the
24  Dishwashers is approximately 15 years.  Within just two years of installation, some
25  Class members will have spent more on repairs that the original purchase price of
26  their Dishwashers.

27      80.     Simply put, Plaintiff and Class members would not have purchased
28  Dishwashers that require frequent costly repairs.  Plaintiff and Class members did

18
CLASS ACTION COMPLAINT

not receive the products for which they bargained. Dishwashers requiring frequent repairs to major components are not worth as much as dishwashers that do not require frequent repairs.

81.    Plaintiffs also expected that ownership of the Dishwashers would save them money over the useful life of the product because the Dishwashers carry the Energy Star label, but the necessity and cost of frequent control panel replacements actually results in higher operating costs over the life of the Dishwashers.

82.    Defendants' conduct satisfies the prerequisites for unfair conduct under the UCL in that Defendant's practice offends an established public policy and/or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Further, consumers' injuries are substantial; the injuries are not outweighed by any countervailing benefits to consumers or competition; and consumers' injuries are such that consumers themselves could not reasonably have avoided them.

83.    The injury to consumers is substantial, particularly because the Dishwashers are defective at the time of sale and fail repeatedly during their useful life.  The cost of one repair of the control panel can cost 50% or more of the original cost of the entire Dishwasher and a Dishwasher will require numerous control panel replacements during the course of its useful life.  The cause of the failure is not normal wear and tear.

84.    The injury to consumers in not outweighed by any countervailing benefits to consumers or competition.  There is no benefit to an appliance that requires frequent repair or replacement of the same component.  To the extent Whirlpool saved costs by using inferior components in the Dishwashers, the injury to consumers significantly outweighs any purported savings.

85.    The injury to consumers is not an injury that consumers themselves could reasonably have avoided because consumers did not expect or know about the defective control panels and the need for frequent costly repairs before they

198925

purchased the Dishwashers.  Further, Whirlpool recommended the replacement of the control panel with another defective control panel that would also require replacement in a matter of months.

86.    Defendant's conduct also offends established public policies concerning consumer protection and class action litigation.  The California Supreme Court has opined that "[p]rotection of unwary consumers from being duped by unscrupulous sellers is an exigency of the utmost priority in contemporary society." *Vasquez v. Super. Ct.*, 4 Cal. 3d 800, 808 (1971).  Moreover, the public policy at the very core of the class action mechanism is to overcome the problem that relatively small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively small potential recoveries into something worth someone's time and labor.  *Amchem Prods. v. Windsor*, 52 U.S. 591, 617 (1997).  California also has established a public policy against allowing manufacturers to escape liability for placing defective consumer products in the stream of commerce by imposing liability on them and subjecting them to penalties under the implied warranty of merchantability through the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790 *et seq*.

**Whirlpool's Omission of Material Fact**

87.    Whirlpool fails to disclose the material fact that the Dishwashers have defective control panels that cause the Dishwashers to become inoperable and result in frequent and costly repairs.

88.    Plaintiff now pleads his omission claims with particularity to satisfy Federal Rule of Civil Procedure 9(b) and incorporates by reference all other paragraphs herein.

89.    **WHO.**  Whirlpool is the entity responsible for failing to disclose the material information to consumers who bought the Dishwashers.  Whirlpool is also the entity obligated, as alleged herein, to disclose the material information.

198925

90.   **WHAT.**  Whirlpool failed to disclose the material fact that the control panel is defective and will cause the Dishwashers to malfunction, become inoperable, and frequently require costly replacement parts and labor charges to remain in working order over its useful life. The omitted material facts are contrary to partial representations Whirlpool made about Maytag products being the most dependable and durable dishwashers that do not require repairs during their useful life through a decades-long advertising campaign featuring the Maytag Repairman as alleged herein.

91.   **WHEN.**  Whirlpool fails to disclose the material facts at the point of purchase in retail stores throughout California when consumers are deciding which dishwasher to purchase, on retail appliance websites, as well as at the time of repair when consumers are choosing between paying for repairs and discarding the Dishwasher. In the case of Mr. Apodaca, Whirlpool failed to disclose the material facts on January 18, 2011 through its authorized sales agent, and/or through labels or placards on the Dishwasher itself when he physically examined the Dishwasher at Home Depot in Fullerton, California.

92.   **WHERE.**  Whirlpool fails to disclose the material facts on the Dishwashers themselves or otherwise at the point of purchase in retail stores where the Dishwashers are sold, as well as at the point of purchase of replacement parts and repair services.

93.   In the case of Plaintiff Apodaca, he observed and relied on the omission of material facts on the Dishwasher at Home Depot located in Fullerton, California, as well as over the telephone with Maytag at the number 1-800-688-9900. Representations regarding the dependability and durability of Maytag appliances were made through television commercials on network and cable television channels during regularly scheduled programming and special events such as sports, and print media, including magazines, such and Home & Garden and newspapers of national and regional readership. Over their lifetimes, Mr. Apodaca

198925

and Class members were exposed to Defendant's advertising message that Maytag Dishwashers were the most durable and dependable and would not require repairs during their useful life.

94.   **WHY and HOW**. The fact that the Dishwasher are built with defective control panels is material because a consumer who has a choice between a dishwasher without defects and one with defects would consider the information important in deciding which dishwasher to purchase.

95.   The omission is misleading and likely to deceive a significant portion of the consuming public because Whirlpool represents that the Dishwashers are the most dependable and durable, and will not require repairs during their useful life, but at the same time fails to disclose the fact that the control panels are defective and will require frequent costly repairs.

96.   Whirlpool was obligated to disclose the material facts that the Dishwashers contain defective control panels because:

A.   Whirlpool had exclusive and superior knowledge of the material facts not known or reasonably accessible to Plaintiff and Class members, since only Defendant had access to the aggregate data from its retailers, its own tests of Dishwasher control panels (such as: the American Society for Testing and Materials ("ASTM") F1996-06 designation test for the susceptibility of a membrane switch to the migration of silver between circuit traces under dc voltage; Underwriters Laboratories ("UL") Standard 792 Silver Migration Test  and salty fog tests), warranty claims records, service records through its "Customer eXperience Center," complaints from its customers on its own Facebook page (of which there are so many that it takes several hours to load them all), to which Maytag would respond through Facebook posts through representatives named Emily, Kyle, Jordan, and others;

198925

B.   Whirlpool actively concealed and suppressed the material facts from Plaintiff by not warning of the defective control panel at the time of purchase; denying the existence of a defect to complaining consumers and warranty claimants who called its customer service number as corroborated by numerous consumers on Whirlpool's Maytag Facebook page and; by performing warranty and/or repair work that it knew would not cure the malfunctioning Dishwashers;

C.   The material facts are contrary to partial representations made about Dishwashers through a long-term advertising campaign, namely that due to their dependability, durability and use of commercial grade parts, they do not require frequent repairs as compared to other brands.

97.   The representations and omissions are material.   Whirlpool itself admits that "Maytag brand understands that what's inside matters – whether it's the parts that make up the products or what consumers put in their products." Whirlpool uses the advertising slogan "What's Inside Matters" for Maytag brand products.

98.   On April 27, 2010 Maytag Properties, LLC, a subsidiary of Whirlpool, applied for and later received registration of a trademark for the phrase "What's inside matters" when used in reference to Dishwashers, among other products.

**Whirlpool's Knowledge and/or Reckless Disregard of the Defective Control Panel**

99.   Whirlpool knew, should have known and was negligent and reckless in not knowing that it sold Dishwashers with defective control panels.

100.   Whirlpool had and has superior and exclusive knowledge of the defects plaguing the Dishwashers at the time of sale to Mr. Apodaca and Class members and such facts, as alleged herein, were not known or reasonably accessible to Plaintiff and Class members.

198925

101.   Appliance design life cycles are similar in length to major production automobiles.  Defendant refreshes dishwasher design every 3-4 years and conducts a major redesign approximately every 7-9 years.

102.   When designing the Dishwashers, defendant worked closely with the manufacturer of the FMS, Molex, Inc. ("Molex") to design and test the FMS and control panel.

103.   Whirlpool would receive samples from Molex and place them through certain tests, including the ASTM F1996-06 Standard Test Method for Exposure of Membrane Switches to Temperature and Relative Humidity, UL 792 Silver Migration Test, and salty fog test, among others. Proper testing would have revealed that the FSMs were susceptible to moisture penetration and failure, rendering the control panels and dishwashers useless.

104.   Whirlpool then ran a limited production run of the Dishwashers and placed several units inside homes of its engineers to conduct field tests of the units. Following the field testing over several months, Whirlpool began full rate production and Dishwashers begin being installed in consumers' homes.  Teardown of the field tested units should have revealed moisture penetration to the FMS and that the design of the control panels was defective.

105.   Once full rate production begins and the Dishwashers were being installed in homes, members of defendant's production team, including senior engineers, are then charged with monitoring service calls.

106.   During the first year of production and shipment Defendant would have begun receiving service calls related to malfunctioning dishwashers as a result of defective control panels. Examination of the defective control panels would have revealed that moisture was causing the FMS to short circuit.

107.   Whirlpool knew, of should have know, of the defects through its own testing, warranty claims database, its call center database, and its own research and

198925

conferences with Molex at least as early as July of 2007.  Examples of such warranty claims and consumer complaints made directly to Whirlpool follow:

| No. | Source | Date | Comment |
|---|---|---|---|
| 1. | Consumeraffairs.com[2]<br><br>By Sara of Monument, CO | 12/3/12 | "I purchased a Maytag dishwasher (Model MDB7809AWWI) in Sept. of 2009. In 2010 and 2011, it had dead control panels. The first time, it was under warranty. The second time, it was not, and I purchased a costly service plan to have it repaired. Now, 2012, it's dead a third time. Maytag tried to tell me that I could purchase another plan for $289. I informed them that for that cost, I can replace it with a dishwasher that doesn't require costly service plans and yearly repairs. They informed me that their parts only have a 30-day warranty. If they're not willing to stand behind their products enough to admit that one is faulty, then I'm not willing to stand behind them as a company." |
| 2. | Consumeraffairs.com<br><br>By Beverly of Plano, TX | 10/17/12 | "Maytag dishwasher model MDBH949AWW - I purchased a dishwasher thinking I was buying the best (laugh is on me). The date of purchase was 1/18/10, the control panel was replaced on 5-25-11 at no charge. On 10-15-12, the control panel failed again so I was forced to hand wash an entire load of dirty dishes. I used the dishwasher once a week. I am |

[2] Consumeraffiars.com complaints are available at http://www.consumeraffairs.com/homeowners/maytag_dish.html
As of 4/29/2013, the number of complaints on this website alone exceeded 260, almost all of them referring to dishwashers.

| | | | |
|---|---|---|---|
| 1 2 3 4 | | | debating if it is worth it to repair it or replace it, in light of the fact that it could go out again the next year. Wish I had found this website before I made the purchase." |
| 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 | 3. | Consumeraffairs.com<br><br>By Tasha of Grand Junction, CO | 10/15/12 | "My Maytag dishwasher is 1.5 years old and won't start. The Maytag call center said they couldn't help me except to sell me a service warranty for $269. Then she wanted to argue with me when I asked her to pass on my dissatisfaction with their products to her supervisor. I thought Maytag was a good product. For what I pay for parts and labor, I can get a new dishwasher. She said do I expect not to have any problems with that dishwasher. I will never buy anything Maytag again. They do not stand behind their products. Plus, it sounds like many people have had the same problem with their Maytag dishwasher. This part is defective. (I am assuming it is a control panel problem.) Since corporations are people now is there someone I push into my dishwasher so they will fix it. LOL." |
| 23 24 25 26 27 28 | 4. | Consumeraffairs.com<br><br>By Paula of Rome, GA | 10/13/12 | "After buying this dishwasher model MDB6759WWW3 in Jan. 2010, I fully expected it to work longer than it did! So far, the control panel has been **replaced 5 times**. The last time was Sept. 17, 2012 and already it is out again. I talked with Customer Service, since Georgia has a lemon law. |

198925

| | | | After 4 times it is to be replaced. They had no record of the part that was replaced, just that a technician had come and repaired (by ordering the same part they had no knowledge of). This time they will either replace or instead of me calling, my lawyer will call. I will never buy another Maytag product and will encourage anyone else not to buy either. My daughter had the same experience with a refrigerator, a piece of junk they did nothing about. By the way, I have an extended warranty plan, which should not even be necessary!" |
|---|---|---|---|
| 5. | Consumeraffairs.com<br><br>By Misty of Mishawaka, IN | 10/1/12 | "In December 2010, we purchased our Maytag Quiet Series dishwasher model #MDBM601AWB3, serial #NY2916421. At first the sanitize light quit working about 6 months ago. Today, September 30, 2012, this piece of crap will not turn on at all. There are no lights on at all. We paid almost $600.00. As far as being quiet, oh yes it is quiet alright! We the consumers are demanding a recall. Look at the complaints! It's a manufacturer defect in these control panels. I will not be forced into buying another dishwasher or a control panel. I want this company to stand up and say they're sorry and fix this problem for all of us Americans!" |
| 6. | Consumeraffairs.com<br><br>BY | 9/15/12 | "I bought a Maytag MDB7809AWW2 dishwasher two years ago. The control panel just |

198925

| | | | | |
|---|---|---|---|---|
| | | | | started doing free-games. Lights would come on and off during the cleaning cycle. When selecting a cleaning cycle, some functions would be automatically selected without the capability to deselect them. It is our second and last Maytag dishwasher. Stay away from them!" |
| 7. | Consumeraffairs.com<br><br>By Jacqueline of Norwalk, CT | 9/7/12 | | "There should be a recall. Just look at the number of people complaining about this same exact occurrence about the control panel not activating. I'm on my second control panel in 24 months. Some people are on their fourth already. Give me a break. There needs to be a recall and a redesign of this thing, which turned out to be a piece of junk washer." |
| 8. | Consumeraffairs.com<br>By Melinda of Lake Park, FL | 8/21/12 | | "On March 2011, I purchased a Maytag dishwasher model #MDB7749AWB1.The dishwasher worked excellent for 16 months. One morning, with dishes loaded and ready to go, the start button would not light up. The other buttons did light up but that did me no good, I need the start button. A few days later, none of the buttons would light up. I found a repair person who said it would cost over $200.00 to make repairs. I refuse to put another penny with no guarantee that this new part would work. I will never ever buy another Maytag appliance. The last inexpensive, unknown manufacturer's dishwasher lasted me 13 years. Do not waste your |

CLASS ACTION COMPLAINT

198925

| | | | | money on this thing." |
|---|---|---|---|---|
| 9. | Consumeraffairs.com<br><br>By Lee of Temple City, CA | 8/20/12 | "My husband and I purchased the Maytag dishwasher model #MDB7609AWW2 in December 2010. July 2012, the control panel would not operate. I called Sears to schedule a repair appointment. (I did not have an extended warranty.) After reading review after review of complaints about Maytag and control panel issues and learning it is a very costly repair, I called Whirlpool which now owns Maytag. (Be advised, Maytag is not the quality product it once was). Reviews also indicate that the replaced control panels are failing within 6 months to a year and a half.<br><br>After talking to a person in the Maytag/Whirlpool service department, he suggested some things to do: unplug power, unlock control panel, etc. He determined it was most likely the control panel that needed to be replaced. I asked how long a new panel would last informing him of the complaints I'd read. All he would tell me was that I had the option to buy an extended warranty. We have decided not repair the dishwasher and will replace it with a non-Maytag and non-Whirlpool brand. I will never buy Maytag or any products made by Whirlpool again. For a major component of the dishwasher to last only a year and a half is |

198925

| | | | |
|---|---|---|---|
| | | | unconscionable." |
| 10. | Consumeraffairs.com<br><br>By Christina of Darien, CT | 8/5/12 | "Maytag dishwasher #MDB 9750AWQ - **I am now on the fourth control panel and in less than one year, the present one is starting to fail**. The third one failed in less than a year also! I have read the reports of others and apparently, this is not just my dishwasher. Maytag owes its customers a recall of this inferior machine." |
| 11. | Consumeraffairs.com<br><br>By Gwen of Honolulu, HI | 7/12/12 | "I purchased a Maytag dishwasher (model MDB7609AWW1) from Sears on 09/11/2009. Its control panel failed twice in 3 years. In 02/2011, after just 17 months, the dishwasher wouldn't work. Nothing happened when I pressed the start button. I paid $294.39 ($129 for a new control panel plus labor) to have it fixed. Now, 17 months after the control panel was replaced, it has again crapped out with the same problem. I see by all the complaints here that this is a common problem. I wish I had read all these complaints before I had the control panel replaced the first time. Maytag, shame on you! Never again! I called Maytag and Sears, and as you would expect, they said, "Sorry, it's past the warranty period." When I buy my next dishwasher, it will not be a Maytag and it will not be from Sears." |
| 12. | Consumeraffairs.com<br><br>By Chan of Gaithersburg, | | "I bought a Maytag dishwasher (MDBH979AWW3) in Dec 2010 and it worked fine till yesterday, |

198925

| | | | |
|---|---|---|---|
| MD | | | when the buttons on the right side of the control panel no longer works (about 1.5 years old). I went through the diagnosis and finally found that the control panel cable was at fault. The cable is part of the control panel and there is no way to replace it without replacing the whole panel. The issue is that the cable wire was made of printed circuit, which was eroded and broke. The new part costs more than $150. Ironically, the old dishwasher I replaced was also a Maytag and it was more than 20 years old and it was still working when I replaced it. I thought Maytag has reliable products and that's why I bought it. Obviously, the company is no longer the company it used to be.<br><br>I am very disappointed and will not buy another Maytag again. It appears that there are plenty unhappy customers with Maytag dishwashers and many point to the control panel problem. To me, this is a design flaw or perhaps, this is part of their business plan - sell key parts to the customers in a couple of years to drive up their revenue. Sad story with corporate business nowadays!" |
| 13. | Consumeraffairs.com<br><br>By Terrasse of Vaudreuil, QC | 7/5/12 | "Maytag dishwasher, MDB4651AWW was purchased on 15/02/2010. Touch panel was replaced under warranty on 16/08/2010. Touch panel became defective on 04/07/2012. It was $103 for the service call: panel |

198925

| | | | |
|---|---|---|---|
| | | | was not replaced (too costly, > $200). My 2-year old dishwasher is now useless. The touch panel on this model has failed twice in two years and is obviously a design failure. I would ask for a free replacement panel." |
| 14. | Consumeraffairs.com<br><br>By Phillip of McComb, MS | 6/21/12 | "I bought a model MDB7749AWW1 Maytag dishwasher in May 2011. I thought I was getting a nice one, but no one really liked the way the racks were designed after we got it installed and began using it. My biggest complaint however is with the control panel. It failed in November 2011 and was replaced under warranty. It has now failed a second time in June 2012 (just over one year old and out of warranty). They've offered to pay for the parts since it is so close to one year and I pay labor. We'll see how that goes. Looks like there are lots of problems with Maytag control panels." |
| 15. | Consumeraffairs.com<br><br>By Allen or San Jose, CA | 5/21/12 | "We purchased a Maytag dishwasher in December of 2009 and it failed in November of 2010, under the one year warranty. So the repairman came out and said he had to order two parts (touch panel and control board) since either one could be bad, got it fixed and now it failed again in May of 2012. Of course, it's out of warranty and Maytag says: "Thank you for visiting the Maytag website. We appreciate hearing from you. I am sorry to hear that you are experiencing continued |

198925

| | | | |
|---|---|---|---|
| | | | issues with your Maytag dishwasher. Unfortunately, once the unit is outside of the manufacturer's warranty, we would be unable to assist financially with any repairs needed. Please see the last page of your use and care guide for detailed warranty information." Of course, the parts would cost more than a new washer. Maytag, never again." |
| 16. | Consumeraffairs.com<br><br>By Richard of Canton, GA | 4/22/12 | "Dishwasher control board - This will be the 3rd time for this same failure with the start/resume button on control panel. Obviously, with all the complaints regarding this part indicates manufacturing is producing a defective or inferior part. The service provided by Maytag, which is supposed to be a reputable company, is a joke and non-existing. Like many others, here I will gladly be part of the class action suit and will never buy another Maytag appliance and will also inform others of their poor service." |
| 17. | Consumeraffairs.com<br><br>By Annie of Midlothian, IL | 4/11/12 | "My husband and I are retired. In 2006, we purchased a Maytag stove, refrigerator and dishwasher thinking we bought the best. Since purchase, we have had repairs on all 3 appliances costing us over $1000. We are installing our 4th electronic control touchpad replacement today at a cost of $250.00 each. We had a new oven electronic ignitor replaced on the same stove. The compressor on |

198925

| | | | |
|---|---|---|---|
| 1 2 3 | | | the refrigerator had to be replaced! The drawer mechanism on the dishwasher had to be replaced. We will never recommend or purchase your products ever again!" |
| 18. | Consumeraffairs.com<br><br>By Melanie of Sweet Home, OR | 3/31/12 | "I bought a Maytag dishwasher, model MDB8551AWB, in 2007 and have kept purchasing maintenance agreements. From January 2011 to March 2012, I have had to have Maytag send out a repairman to replace the control panel five times. This is absolutely ridiculous, and the inconvenience. Plus the repairmen are surprised Maytag keeps on repairing this dishwasher and not replacing it. More the $2000 has been put into this dishwasher since January 2011. When calling Maytag, I was informed that the problem would have to be the same which it has been but on the same contract for it to be classified as a lemon. Well, it has now been four times. I will never purchase another Maytag." |
| 19. | Consumeraffairs.com<br><br>By Donna of Danvers, MA | 3/30/12 | "I too had to replace the control panel on my Maytag dishwasher which I purchased in 2007. I was told by my repairman to contact Maytag to see if they would do anything for me. **When I called Maytag, I asked them if there were any issues with the control panels as I had heard there have been multiple issues with them needing to be replaced. I was told they had no record of any complaints and offered to sell me an extended warranty for** |

| | | | |
|---|---|---|---|
| | | | **$269, but there was nothing else they could do for me.** I ultimately had my repairman order the part and it was replaced. **My repairman did say Maytag did upgrade the panel because of all the issues they were having with the panel**. Hopefully, they have fixed the problem and it will not have to be replaced again. But if it does, I will not replace it again. I will look into a new dishwasher and definitely not a Maytag. Yes, I would be interested in joining a class action suit." |
| 20. | Consumeraffairs.com By John of Lindale, GA | 3/26/12 | "**Control panel broken for a second time in 23 months**: I purchased a Maytag dishwasher less than 2 years ago at Home Depot. 11 months later, the control panel went out. Specifically, the start/cancel buttons stopped working. A service tech called me under warranty; the control panel was shipped to me, and the tech fixed it. He also told me that they had had numerous problems with the control panels. 13 months later, the control panel went out; specifically, the start/cancel buttons stopped working (sounds familiar). I can get nothing from Maytag, except a demand for service fees or sales pitches for extended warranties (at a price that was half of what the dishwasher cost new). They also offered me the "free part" as long as I pay the service call fees. I told them to just to ship me the part |

| | | | | |
|---|---|---|---|---|
| 1 | | | | and that I'd do it myself. Nope. I must pay the repairman. Now, they'll ship me the part if I pay for it, but they won't ship me the free part. It only comes with a service call. |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | **Maytag also told me that there were no reports of problems with the start/cancel button, an obvious lie with a quick internet search**. The customer service rep sounded like she knew I was getting treated badly and kept using the word "policy." Her supervisor was much more cocky and made sure I knew that I wasn't getting anything from her company. |
| 6 | | | | |
| 7 | | | | |
| 8 | | | | |
| 9 | | | | |
| 10 | | | | |
| 11 | | | | |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | They make horrible products, attach what once was a good name, provide zero customer service, and lie to your customers. Great business practices. I will never purchase a Maytag product again." |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | 21. | Consumeraffairs.com by John of Spring City, PA | 1/21/12 | "My Maytag dishwasher control panel stopped working. The control panel failed, it was replaced. The replaced control panel failed. **The control panel failed again and needs a fourth (4th) control panel**. I have had to pay for service calls and control panels. I only use it 1 to 2 times per week. This is obviously a lemon. I would like it fixed and to be reimbursed for the lemon part and service calls." |
| 21 | | | | |
| 22 | | | | |
| 23 | | | | |
| 24 | | | | |
| 25 | | | | |
| 26 | | | | |
| 27 | | | | |
| 28 | | | | |

CLASS ACTION COMPLAINT

| | | | |
|---|---|---|---|
| 22. | Consumeraffairs.com by Medi of Irvine, CA | 1/18/12 | "I'm another Maytag dishwasher dissatisfied victim. **The control panel stopped working within 12 months and replacement stopped working after one year, which they say is not covered under the warranty**. They make rubbish which are disposable and have lifetime of one year.<br><br>I feel we have to stop Maytag misrepresenting their garbage and basically defrauding us by selling substandard items to unsuspecting consumers. If you have been victim of Maytag let's join together. I would like to start a group to take a class action lawsuit against Maytag. I am very angry and feel they have to be stopped. All Maytag says in response is to try to sell me a one-year insurance. With the rubbishy quality of their products, they probably make more money from selling insurance than their substandard equipments." |
| 23. | Consumeraffairs.com By Louis of Janesville, WI | 12/19/11 | "I purchased a new Maytag dishwasher (model #MDB4651awb3) for $300, **in December of 2009. Seven months later, the dishwasher refused to start.** Some lights on the front panel would remain on, while others would not respond. The Maytag repairman made a house call and replaced the front control panel, and vent. **After the repair, the dishwasher worked** |

198925

| | | | |
|---|---|---|---|
| | | | **fine for nine months. Then, the same thing happened again. It refused to start with the same front panel light problem.**<br><br>I called Maytag, and since the machine was now past the one year warranty, they wanted $275 for an additional 1 year warranty, to repair the machine. Since I can buy a similar new machine for $25 more, and felt this was now an ongoing problem, (it would be the third panel in less than two years). I expected Maytag to offer more to take care of their lemon problem. Since they refused to reconcile the situation, they obviously no longer stand by their machines. I will no longer buy Maytag/ Whirlpool machines, and do not recommend them." |
| 24. | Consumeraffairs.com<br>By Burt of Sutherlin, OH | 11/19/11 | "I also am the unfortunate owner of a Maytag dishwasher Quiet Series 300. **I bought it in April 2006. The control panel has been a problem since the first year of operation.** Typically, one of the indicator lights would randomly go on and off during the machine's off mode. At other times, the control panel would not operate. However, if I waited a few hours, it would "dry out," enough and then would operate.<br><br>Apparently, steam leaks into the control panel and causes it to be erratic. This has been a problem with this design for many years and the Maytag Corporation has |

198925

| | | | |
|---|---|---|---|
| | | | not cared enough about it's customers to correct the design flaw. I remember when the name "Maytag" indicated a top of the line product. Sadly, this is no longer the case. As a result, my loyalty to them has ceased." |
| 25. | Consumeraffairs.com by Barry of Brighton, MA | 10/5/11 | "I purchased a Maytag dishwasher in March 2005. **About every 8 to 12 months since I've owned it, the control panel malfunctions and needs to be replaced**. I was told by the repairmen (similar to the many other postings below) that the malfunction is due to a faulty design where warm moisture shorts out the electronic control panel. For a few years, I paid for a service contract. But this seemed quite unfair, given the regularity of the same malfunction. Given that this is such a common problem, isn't there some responsibility by Maytag? This is clearly a faulty design. What about the legal responsibility for a recall? Is it possible that, together with other aggrieved owners, a lawsuit against Maytag would be the appropriate action?" |
| 26. | Consumeraffairs.com by Jim or Zirconia, NC | 10/4/11 | "Like many others, the touch control is out for the third time in just over two years. Their customer service is terrible. Never buy a Maytag." |
| 27. | Consumeraffairs.com by Lauren of Pittsford, VT | 9/24/11 | "Just like so many others, our Maytag 300 Quiet Series, just 2 years old, has a malfunctioning |

198925

| | | | |
|---|---|---|---|
| | | | control panel. Repairman told us this has been an ongoing problem with Maytag dishwashers. Steam/water gets into the control panel.

For a while it worked on and off and now it is dead. I am saving up to do the repair, but in the meantime the dishwasher sits idle." |
| 28. | Consumeraffiars.com

By Geri of Los Angeles, CA | 9/26/11 | "I bought a Maytag Dishwasher. The control panel has been replaced 7 times! About the protection plan that I renewed every year, the representative said that in order to replace a lemon, it had to break down 3 times in one protection plan year/12 months." |
| 29. | Consumeraffiars.com

By Lenny of Pembroke, MA | 8/25/11 | "I purchased a Maytag quiet series dishwasher (Model Number: MDB6759AWW) for $500.00 in May 2009. **Three months later, I started experiencing difficulty with the control panel**. One light would continue to blink and it would not do anything else. I called to have it repaired but by the time he was to come out, it started working again only to stop working again the next week.

On 7 Oct 09, the repairman came out and replaced the panel. Then, about six months later, it stopped working again. I called again but canceled the appointment because it started working again. Then, after having it for one year, it |

| | | | |
|---|---|---|---|
| | | | stopped working again and I called only to be told that it was no longer under warranty. Now, we can't get the control panel to do anything. From all the other similar complaints I have read, it seems like there is a defect with the control panel. A dishwasher should last for more than one to two years. This is very frustrating." |
| 30. | Consumeraffiars.com<br><br>By Pam of Gulf Breeze, FL | 7/20/11 | "I purchased a Maytag Dishwasher in Jan 2010. In Jan 2011, the electronic control panel failed. It was still under the 1 yr warranty so Maytag had it replaced. **The repairman says there is a problem w/ steam/water getting into their front panels. One month later, the 2nd electronic control panel failed.** Maytag replaced it again "as a courtesy". One month later, the 3rd electronic control panel failed. (Note: I would not open the door until the next day to avoid water/steam from entering the panel.)" |
| 31. | Consumeraffiars.com<br><br>By Becky of Pineville, NC | 7/26/10 | "I purchased a $500 Maytag dishwasher in Spring of 2008, believing the claims that they "Are Built Strong to Last". In January of 2009, the control panel stopped working and needed to be replaced and now in July of 2010 the door latch has broken.<br><br>Once again, this $500 Maytag dishwasher is not working. I |

41
CLASS ACTION COMPLAINT

| | | | |
|---|---|---|---|
| | | | called Maytag to complain and they really had no interest in the fact the dishwasher keeps breaking down but they did tell me that there is a safety recall on the dishwasher because the heating element can catch on fire. They offered to send someone out to replace the heating element but that does no good if I cannot open the door.<br><br>I bought this dishwasher believing that I would have at least five years of uninterrupted service and unfortunately, the dishwasher seems to be breaking down every year and Maytag is absolutely no help. I really expected better quality from Maytag and am extremely disappointed in their attitude." |
| 32. | Consumeraffiars.com<br><br>By Marybeth of Fairfax, VT | 7/24/08 | "Bought a Maytag dishwasher 2 1/2 years ago. Have had 7 service calls all for the control panel. Looking at 3rd total replacement. Have had actual use of machine about 1/2 the time we've owned it. Repairs have cost almost as much as the original purchase price. Have contacted Maytag numerous times. We are sitting in the review board's inbox waiting for a decision about whether they will replace the machine at this point. This machine is an obvious lemon and while we have spent the equivalence of 2 new machines we don't have one working machine. They have no customer service!" |

198925

| | 33. | facebook.com/maytag[3] by Marie Adams of Tempe, AZ | 2/5/13 | "Purchased Maytag dishwasher Model MDB7601AWW on Jan 2008, with extended warranty which expired on 1/11/13. 4 replacements of the control panel, last one on 10/2/12, which broke again on 2/4/13" |
|---|---|---|---|---|
| | 34. | Facebook.com/maytag By David Robbecke of Tacoma, WA | 2/17/13 | "What happened to Maytag? I can't believe you still use the poor lonely repairman image. Own up! We bought ALL MAYTAG APPLIANCES three years ago after remodeling the kitchen. A week after the warranty passed the dishwasher quit working. Had to have it repaired. Within 90 days it failed again. Had to have it repaired. Each time I had to pay the repair people a minimum of $140 just to come to the door. Got the dishwasher fixed. A month later the refrigerator went out. Turns out the control board AND the defrost systems went out. More money down the drain. Last week the dishwasher quit working AGAIN! I am just going to rip it out and buy a new one. I may as well have done that the first time it went out. WHAT'S INSIDE MATTERS INDEED!" |
| | 35. | Facebook.com/maytag By Barbara Shepherd | 1/2/13 | "Hey there "Emily" the Maytag Facebook Persona, I did actually email you the required |

---

[3] Whirlpool hosts a Facebook page through which it can and does respond to consumer complaints. Whirlpool describes its Facebook page as the "Official Facebook page for Maytag Home Appliances." Maytag's Facebook page is available at http://www.facebook.com/maytag

198925

| | | | |
|---|---|---|---|
| | | | information regarding my dishwasher, but have not yet received a response from you. Why is that? Are you too busy answering the multitude of complaints Maytag receives daily on this page? I'm annoyed. I finally got hold of your certified service center today, and they would like to charge me for the labor in coming out to re-replace the touch pad component. My feeling: **I paid once to have that part replaced, and it failed within 45 days**. I will not pay a cent to have it replaced again. Maytag needs to step up and stand behind its products." |
| 36. | Facebook.com/maytag<br><br>By Rick Denton, Frisco, TX | | "Had a great Christmas, Maytag, but no thanks to your dishwasher that failed on Christmas Day. Sounds like there's a consistent issue with the touch panel on the QuietSeries 300 but Maytag won't stand behind the part...instead looking to charge ~$200 for a replacement part. You should issue a recall on that part and distribute it for free or a discount. Should not fail this quickly." |
| 37. | Facebook.com/maytag<br><br>By Melissa Rogers Hussin, Jefferson, WI | 12/10/12 | "So disappointed in the Maytag repair department. My husband and I bought our higher end Maytag dishwasher a little over 2 years ago. After three visits from our retailer for repairs, we found that we needed a new |

44
CLASS ACTION COMPLAINT

198925

| | | | |
|---|---|---|---|
| | | | control panel. Our retailer suggested that we contact Maytag because sometimes they will cover the cost of parts especially in our case since our dishwasher was not very old. Not only did we get the "sorry we can't do anything for you" line but we got to hear that after waiting 45 minutes on the phone to talk to someone. **We went with a Maytag due to the reliability and to not be taken care of for a part that was likely faulty is really disappointing. We believed in the Maytag brand** and are saddened that we weren't taken care of after putting our hard earned money into trying to repair a product that we believed in." |
| 38. | Facebook.com/maytag<br><br>By Lisa Harvey-Smith | 11/15/12 | "Maytag, I've got to say that I'm totally disappointed in the quality of your product. One month after my warranty expired my dishwasher touch panel ceased to working. I had to pay for that. Then about 3 months later the central computer panel went. You did quickly provide a new one when I complained. Now about 6 months later it's stopped working again, this time it looks like the touch panel again as it's not starting when start is pressed. The major problems in less than three years is just unacceptable. I don't want to sink another dime into this |

198925

| | | | machine." |
|---|---|---|---|
| 39. | Facebook.com/maytag<br><br>By Mandy Sobecky England | 10/8/12 | "Purchased my Maytag dishwasher in February 2012, and for the 2nd time since purchase this machine is DEAD. The first time it was the motor, now it's the control panel. Never in my life have I had an appliance be so unreliable! Is there a 'Lemon Law' for these things?! Extremely unhappy customer here." |
| 40. | Facebook.com/maytag<br><br>By Andrew Norman | 10/7/12 | I purchased a Maytag Dishwasher a year and a half ago. **I specifically picked a Maytag because of its reputation for not breaking down.** Our dishwasher is no longer working. I called Maytag and because I am barely outside of my warranty period I was told that I could pay another $250 for another warranty or get a service call which would cost me approximately $300-400. This is absolutely ridiculous that I should have to pay more, or for that matter that the dishwasher is broken in the first place. I have emailed the CEO of Whirlpool, whom owns Maytag, and of course no repsonse. In this economic time you would think that companies like Maytag would want to maintain their reputation and quality products, and ESPECIALLY Customer Service." |

198925

| | 41. | Facebook.com/maytag     By Mike Copeland | 9/19/12 | "I bought a maytag dishwasher (Quiet Series 200) and the control panel has failed twice in 2 years. It seems to last exactly 12 months. A quick google search will confirm that this is a known issue with the model and yet Maytag refuses to replace the part. I can not be expected to spend $250+ a year replacing the control panel. I would rather buy a new dishwasher. If it comes to that I will never purchase a Maytag product again." |
|---|---|---|---|---|
| | 42. | Facebook.com/maytag By Michael Kelly | 9/10/12 | "Just talked to one of your customer service reps and explained a failed control panel issue on a 1.5 year old dishwasher. **She said that she had never heard of the problem.** Perhaps you folks should google 'maytag control panel problem'. That might help." |
| | 43. | Facebook.com/maytag By    Melissa    Boatman Linebaugh | 9/1/12 | "I did what you asked and contacted customer service about my dishwasher. We don't even care about the dryer and fridge anymore, the dishwasher is the main thing. They were kind enough to offer to sending the new control panel for $200. This doesn't include the service and installation work which will run well over $100. Combined, this is nearly half the price of the dishwasher. We have decided not to fix it and to save for a |

198925

| | | | |
|---|---|---|---|
| | | | new one. This is the THIRD breakdown of the dishwasher in the two years since we bought it new.<br><br>On the plus side since I began hand washing my dishes they are cleaner than they ever were from the dishwasher. I will never never never buy maytag/whirlpool again. The poor maytag repair guy is rolling over in his grave right now". |
| 44. | Facebook.com/maytag<br><br>By Marj Jones | 8/15/12 | "When we built our house, we selected maytag stainless steel products for our kitchen.... what a mistake. I have replaced two control panels on my Maytag Dishwasher Model Number MDB8781AWS, serial number 32060177JG, and I now have to put in a third control panel. I have paid more for the control panels than I did for the dishwasher." |
| 45. | Facebook.com/maytag<br><br>By Scott Patton | 8/4/12 | Having just ordered the control panel for my quiet series 200 dishwasher, it became obvious what the problem really is for the controls on this series. Maytag uses a flat, flexible cable from the external control panel to the internal circuit board. The leads at the end of the flat, flexible cable under the external control panel are all severely corroded at a bend, right where steam filled with cleaning chemicals will |

198925

| | | | |
|---|---|---|---|
| | | | condense on meeting the cold kitchen air. With the present design this will continue to occur, an unfortunate reality. |
| 46. | Facebook.com/maytag<br><br>By Amy Miller Takacs, Winston-Salem, NC | 6/5/12 | My one-year-old Maytag dishwasher needs a new touch pad and control board too? What? Unacceptable. And calling customer service did not help. **Repair parts will cost as much as a new dishwasher.** Guess this one is going to the dump. Any suggestions on RELIABLE dishwashers, other than Maytag??? |
| 47. | Facebook.com/maytag<br><br>By Kalei Smith | 5/22/12 | Why do you create a dishwasher that lets the steam out to destroy the control panel? and make us pay to fix it? after only a year and a half? I will never buy Maytag again, this is the third appliance that we have had and issue with. Glad I figured this out before we invested in the remodel, your out a customer for a new fridge among other things like a replacement for your defunct dishwasher. |
| 48. | Facebook.com/maytag<br><br>By Sonya J. Lindsey Moody | 5/8/2012 | "RE: Dishwashers. I have posted to 2 others (Chris & Jenny) on this site with the same issues (control board failures). We have all heard the same story from our local repairmen & other customers. That is, I have been told repeatedly that the problem is with excess moisture because the vents do not |

198925

| | | | | |
|---|---|---|---|---|
| | | | | properly distribute the steam. It appears that this is a known problem across dishwasher lines. I do not see that Maytag is addressing this. After spending nearly $500.00 less than 16 months ago, I should not need to spend another $290.52 for repair and 1 yr extended warrenty. What will it take for Maytag/Whirlpool to address this issue? I find it very hard to believe that a good number of others have not had the same experiences." |
| 49. | Facebook.com/maytag<br><br>By Jenny Thomas Day | 5/2/2012 | | "sorry but I can not like your page! I just got off the phone with your customer service department and boy am I ticked!! I have replaced the control panel on my Quiet Series 200 dishwasher 4 times in 3 years. The last time we replaced it was just a little over a month ago, and it has already quit. When I called the last time, they told me they could do nothing now, but if it happened again, please call back and something would be done. Well this is what they said to me today, "the only thing we can do for you, since you have no warranty is offer to send you the control panel and an extended warranty for 1 year at the cost of $269.00" ARE YOU KIDDING ME?? There is a major problem here and no one wants to do anything about it. I have spent more on this |

198925

| | | | |
|---|---|---|---|
| | | | dishwasher than I paid for it to begin with. JUNK!!! Never again will I buy any Maytag appliance, they do not take care of their customers." |
| 50. | Facebook.com/maytag By Phil Reilly | 3/12/13 | "My Maytag QuietSeries 200 dishwasher control panel just went belly up....that's 3 panels in 3 years.....What can you do for me Maytag?" |
| 51. | Facebook.com/maytag By Sarah Curington Wilbanks | 2/15/12 | "Dear Maytag: Your customer service is horrible, I am amazed that you are able to stay in business! I think you should rethink your advertising campaign because obviously your products are less than dependable and your customer service is rude and unhelpful. My less than three year old dishwasher is broken - we have already had the problem fixed once and now it is out AGAIN! I will never ever purchase one of your products nor will I recommend you." |
| 52. | Facebook.com/maytag By Greg Kroll | 1/29/12 | "**How dependable is my dishwasher when it is having its second control board replaced in 6 months?** I would not be surprised if Maytag removes this complaint." |
| 53. | Facebook.com/maytag By Heinrich Koenen | 12/19/11 | "What is the live expectancy of a Maytag Dishwasher? The electric panel on mine died again. It was replaced twice under warranty and now that the |

198925

| | | | |
|---|---|---|---|
| | | | machine is 2 years and 4 months old it died again." |
| 54. | Facebook.com/maytag<br>By Laura Rentfro Tyndall | 12/14/11 | "I only liked this page to complain about an obviously defective dishwasher. **The first time the control panel went out it was after only three months of use. After that, it went out about twice a year.** Maytag did fix it once after its warranty was up, but in the end we had to just buy a new one. (NOT Maytag, that'll never happen again.) Beware of Maytag. If you get a lemon, and due to poor quality control it's a distinct possibility, you're just screwed. Goodbye, Maytag. You suck." |
| 55. | Facebook.com/maytag<br>By Gretchen Kruysman | 12/5/11 | "You guys are a mess! I've been waiting over two months for a replacement dishwater control panel....which broke on a 1-year old dishwasher. Guess you guys dont care about "dependable" anymore." |
| 56. | Facebook.com/maytag<br>By Julia Cain | 12/2/11 | "We have a fairly new Maytag Quiet Series-200 Dishwasher with a broken controller board. I was surprised it failed so soon, but even more surprised to find out you can't get a replacement for it ANYWHERE until 2/1/2012!!!! That is ridiculous, and I'm sure I'm not alone on this." |

198925

| 57. | Facebook.com/maytag<br><br>By Colleen Higgins | 11/28/11 | "I will join the rest of the dissatisfied Maytag customers. My dishwasher is 2 years old, **the control panel failed at 6 months took 4 months to replace. The control panel has failed again!** Seriously? Just got off the phone with customer service and was offered a warranty plan of $282.39 to cover this replacement and an additional year. Seriously? I think everyone needs to ship these junky appliances back to Maytag. Stop selling this stuff and stealing our money!" |
|---|---|---|---|
| 58. | Facebook.com/maytag<br><br>By Billie Trout Patterson | 11/16/11 | "I have always respected Maytag, but I bought a dishwasher 13 months ago that I have had to have service on repeatedly. Last week the computer went out again. I have had service more than 5 times on my dishwasher. I want a new one! only a different kind! I am now using it as a dishdrainer! as I have about 6 times in the last year!" |
| 59. | Facebook.com/maytag<br><br>By Joe Cioffi | 10/26/11 | "I am now going on almost a month with a broken dishwasher. Supposedly parts have been ordered. This is ridiculous. A dishwasher breaks after just six months. Your company should be absolutely ashamed of itself. You don't stand by your products. I will be contacting an attorney about this. Anyone who buys a Maytag product is being foolish with their money." |

198925

| | 60. | Facebook.com/maytag<br><br>By Laurie Dillon-Schalk | 8/26/11 | "I'm furious. I bought a $900 Maytag dishwasher believing that a Maytag would last. It has been 14 months and the controller has failed. It will cost $70 for a repair person visit. $200 - $300 for a new part and another $70 for a repair person to return to install it.<br><br>A $900 dishwasher costing me $340 - 440 two months off warrantee." |
| --- | --- | --- | --- | --- |
| | 61. | Facebook.com/maytag<br><br>By Teresa Amsbaugh | 2/21/11 | "I have owned a Maytag dishwasher for only about 16 month and needed a repairman come to my house 4 times due to a faulty control panel. **I had to have the panel replaced and now five months later it had gone out again, and I am told it will cost almost half of the purchase price of the dishwasher to replace it**. I am very frustrated and disappointed." |
| | 62. | Facebook.com/maytag<br><br>By Prem Mishra | 6/27/10 | "I scheduled the service for the recall fix but the repairman came over and did not fix the issue and told my wife your dishwasher is not working and you need a new keypad. It was working fine before the recall and as we heard about recall, we stopped using it. Now the new keypad for not using it? Please look into the issue." |
| | 63. | Facebook.com/maytag<br><br>By Katherine Marie Houser | 6/4/10 | "BUILT TO LAST" IS TOTAL AND COMPLETE CRAP!!! I bought a Maytag Quiet Series |

| | | | |
|---|---|---|---|
| | | | "300 dishwasher Memorial Day 2008. Last weekend while cleaning a black sooty substance off the inside of the door, the control panel goes completely blank. I called a repair man, who for a fee, came out to look at the problem. He tells me its needs a new control board that will cost me as much as the dishwasher did when I bought it 2 years ago." |
| 64. | news.consumerreports.org[4]<br><br>By Robin | 11/13/10 | "Our recalled Maytag has had failed electronic control panel 3 times - it is 4 years old. Sadly, they are not replacing the electronic parts that are so poorly made that they only last 18 months (at best) and cost close to $400 to replace (equal to the cost of a new/inexpensive dishwasher). I paid for the first repair, Maytag paid for the 2nd one. I've been washing dishes by hand, because I refuse to pay again. The $150 rebate is not anywhere near enough of an incentive for me to ever buy another Maytag product." |
| 65. | Complaintsboard.com[5]<br><br>By Sher | 12/4/09 | "I bought Maytag dishwasher in 2007. The control panel went out 1 yr 3 months later, replaced it for $200. On April 11, 2009 the control panel went out again. Maytag should not be allowed to sell another product-------EVER." |

---

[4] Available at http://news.consumerreports.org/home/2010/06/maytag-dishwasher-recall-should-you-repair-or-buy-a-new-one-and-get-a-rebate-dishwasher-review html
[5] Available at http://www.complaintsboard.com/complaints/maytag-quiet-series-200-dishwasher-c4832.html?page=4

CLASS ACTION COMPLAINT
198925

108.   Whirlpool also knew of the defects from the sales figures of replacement control boards for the Dishwashers.  At one point Maytag replacement controls panels were backordered for at least four months due to the overwhelming failures of its defective control panels.

109.   Whirlpool repeatedly denied the existence of defects in the Dishwashers to Mr. Apodaca and Class members who called Whirlpool to make warranty claims or plead for compensation on account of repeated failures of their control panels and the need to pay for costly repairs early in the useful life of the Dishwashers.

110.   Mr. Apodaca himself called Whirlpool at 1-800-688-9900 to inform them about the premature failure of his Dishwasher several times.  Whirlpool denied the existence of a problem with the control panels.  Whirlpool received thousands of complaints from similarly situated consumers.

111.   Defendant knew, or by the exercise of reasonable care should have known, of the alleged defect when it made representations and omissions alleged to be deceptive.

112.   Despite having repeated notice of the defective Dishwasher control panel failures, Whirlpool has engaged and continues to engage in the following routine, albeit, wrongful course of conduct, whereby, since it began selling the Dishwasher, it:

    A. Designs, manufactures and sells Dishwashers with defective control panels;

    B. Fails to disclose that the Dishwashers have defective control panels that will require frequent and costly repairs and/or replacement while representing that Maytag is a dependable and reliable brand that will not experience repeated and costly failures during its useful life;

198925

C. Continues to manufacture, market, advertise, distribute, and sell the Dishwashers to consumers as dependable and durable products when it knew or should have known the Dishwashers were not dependable and would not withstand normal operation;

D. Fails to implement a recall or repair program to adequately announce to Plaintiff and Class members the presence of the defective control panel.

113.   As a result of Whirlpool's deceptive conduct and concealment of material information about its Dishwashers as alleged herein, Whirlpool has caused Plaintiff and Class members to suffer injury as a result of the defective Control Panels in the Dishwashers, including, but not limited to:

A. Plaintiff and Class members overpaid for their Dishwashers;

B. The value of Plaintiff's and Class members' Dishwashers is less than it would have been, if the Dishwashers did not have defective Control Panels; and

C. Some Class members reasonably spent money for attempted repairs and extended warranties related to the defective control panel, which money they would not have spent, but for Whirlpool's concealment of material information about the Dishwashers and the efficacy of the futile repairs it recommended Class members perform on their Dishwashers. A replacement control panel sells at retail for approximately $115, plus the cost of installation, which can easily exceed an additional $150-$200.

/ / /

/ / /

/ / /

198925

## **TOLLING OF STATUTES OF LIMITATIONS**

114.   Any applicable statutes of limitation have been tolled by Defendant's continuing, knowing and active concealment of the fact that the control panels are defective by consistently denying the existence of a defect and replacing the defect control panels with other defective control panels.  Defendant has kept Plaintiff and Class members ignorant of vital information essential to the pursuit of their claims without any fault or lack of diligence on their part.  Defendant has offered futile repair attempts while maintaining that each repair attempt was a solution for the malfunctioning or failed control panel.

115.   Claims of Class members are also tolled pursuant to the continuing violations doctrine. As explained above, Whirlpool denied the existence of a defect and recommended and charged for replacement of control panels with identical defective control panels.

116.   Claims of Class members are tolled pursuant to the discovery rule. Given the undetectable nature of the defect, at or before purchase, and Whirlpool's repeated denial of the existence of a defect, Class members could not have reasonably discovered or have reason to discover their cause of action until recently, if at all.

117.   Claims of Class members are tolled under the theory of continuous accrual.  Each sale of a replacement control panel triggered a new limitations period as Whirlpool knew that the replacement control panel would not outlast the one it replaced, let alone last the Dishwasher's expected useful life.

118.   In the alternative, Defendant should be estopped from relying on any statutes of limitation.  Defendant has been under a continuing duty to disclose the true character, quality, and nature of its Dishwashers to Plaintiff and Class members, and to repair the defective control panel, but has failed to do so.  Because Defendant is and was in exclusive possession of the facts and information

concerning the true character, quality and nature of the Dishwashers, Defendant is estopped from relying on any statutes of limitations.

## TOLLING OF WARRANTY PERIOD

119. The warranty period of Plaintiff's and Class members' express and implied warranty claims is tolled pursuant to Cal. Civ. Code § 1795.6. Replacement control panels were unavailable at times for up to four months.

## CLASS ACTION ALLEGATIONS

120. Plaintiff brings this action on behalf of himself and all others similarly situated as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

121. The Class which Plaintiff seeks to represent is defined as follows:

> **All persons who purchased in California, for primarily personal, family, or household use, a Maytag brand dishwasher with a control panel that contains a Molex flexible membrane switch.**

122. Excluded from the Class are (i) Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendant's legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) Defendant's employees, officers, directors, agents, and representatives and their family members; (iv) the Judge and staff to whom this case is assigned, and any member of the Judge's immediate family; and (v) any purchaser of a Dishwasher in the State of California who has received a refund for the <u>full</u> purchase price of his/her Dishwasher from Whirlpool.

123. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal the Class should be expanded or otherwise modified.

198925

124.   This action has been brought and may properly be maintained as a class action, pursuant to Federal Rule of Civil Procedure 23(b)(3), because there is a well-defined community of interest in the litigation in which common issues predominate and the proposed class is easily ascertainable:

A.   <u>Numerosity</u>.   The Dishwashers were sold and distributed by Whirlpool throughout the United States.  Plaintiff is informed and believes that the proposed putative Class is made-up of at least several hundred residents of California.

B.   <u>Common Issues Predominate</u>.  Common questions of law and fact exist as to all members of the Class and predominate over any questions which affect only individual members of the Class. The Dishwashers are all the same and do not differ in any manner that is relevant to Plaintiff's allegations, and the damage and harm caused thereby.  Plaintiff alleges herein that the Dishwashers all have the same inherent defects and that they were defective when made, when they left Whirlpool's possession and control. There is a well-defined community of interest in the questions of law and fact involved and that affect consumers who purchased the Dishwashers, and they all suffer from inherent and common defects.  These questions of law and fact predominate over questions that affect only individual Class members.  The common questions of law and fact include, without limitation:

i. Whether the control panels are defective;

ii. Whether the Dishwashers are unmerchantable;

iii. Whether Whirlpool knew and/or recklessly disregarded the fact that the control panels were and are defective;

iv. Whether Whirlpool concealed and failed to disclose material facts in its communications and disclosures to Plaintiff and Class members regarding the defective control panels;

v. Whether Whirlpool has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or

198925

deceptive acts or practices in connection with the sale and warranting of the Dishwashers;

vi. Whether consumers are likely to be deceived by Whirlpool's conduct;

vii. Whether Whirlpool breached its express Written Warranty and/or Fact Warranty;

viii. Whether, as a result of Whirlpool's conduct, Plaintiff and Class members have suffered damages, and if so, the appropriate amount thereof; and

ix. Whether, as a result of Defendant's misconduct, Plaintiff and Class members are entitled to equitable relief and/or other relief, and, if so, the nature of such relief.

C. <u>Typicality</u>. Plaintiff's claims are typical of the claims of the Class members in that Plaintiff and the Class members have the same Dishwashers, which share the same design, parts, materials, workmanship and manufacture and about which Defendant repeatedly made the same, or nearly identical, uniform omissions. Therefore, the claims of Plaintiff are and will be typical of Class members.

D. <u>The Class is Ascertainable</u>. Plaintiff has adequately and objectively defined the Class, as detailed above, so the Court and Class members will be able to use the definition to determine Class membership.

E. <u>Adequacy</u>. Plaintiff will fairly and adequately represent the interests of all Class members. Plaintiff has purchased a Dishwasher and is an adequate representative of the Class as he has no interests which are adverse to the interests of absent Class members. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex defective product and consumer class action litigation.

198925

F. <u>Superiority</u>. A class action is superior to other available means for the fair and efficient adjudication of this controversy. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender. The disposition of their claims in this case and as part of a single class action lawsuit, rather than hundreds of individual lawsuits, will benefit the parties and greatly reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds of separate lawsuits. Furthermore, given the extraordinary expenses and burden in conducting the discovery and presentation of evidence about the inherent defects in the Dishwashers, the burden of individual litigation would make it extremely difficult, if not impossible for individual members of the Class to redress the wrongs asserted herein, while an important public interest will be served by addressing the matter as a class action. Moreover, separate prosecution by thousands of individual members of the Class would likely establish inconsistent standards of conduct for the Defendant and result in the impairment of and potential harm to, Class members' rights and the disposition of their interests through actions to which they were not parties. Plaintiff is informed and believes that a great amount of time and expense will be saved by conducting the discovery and presentation of evidence about the inherent defects in the Dishwashers in a single class action lawsuit, in contrast to the repeated discovery and presentation of evidence in hundreds or thousands of separate lawsuits brought on the common questions presented by the allegations of this complaint. Plaintiff knows of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

/ / /

198925

**FIRST CAUSE OF ACTION**

**(Violations of the "Unfair" Prong of Cal. Bus. & Prof. Code § 17200 *et seq*.)**

125.    Plaintiff repeats and re-alleges paragraphs 1-86 and 99-124 and incorporates them as if fully set forth herein.

126.    Plaintiff brings this cause of action on behalf of himself and the Class, pursuant to California Business and Professions Code, §17200, *et seq*.

127.    Defendant's conduct constitutes **unfair** business acts and/or practices because Defendant's practices have caused and are likely to cause substantial injury to Plaintiffs which injury is not reasonably avoidable by Plaintiffs in light of Defendant's exclusive knowledge of the defective control panels in the Dishwashers, and is not outweighed by the acts' and practices' benefits, if any, to Plaintiff and Class members.  Such conduct is ongoing and continues to this date.

128.    The injury to consumers is substantial, particularly because the Dishwashers are defective at the time of sale and continue to be defective after numerous repair attempts made during and after the warranty period.  Plaintiff and Class members paid hundreds of dollars for Dishwashers that they would not otherwise have spent for Dishwashers that have defective control panels.  The Dishwashers are worth substantially less than Plaintiff and Class members paid for them given the defective Control Panels.

129.    The injury to consumers is not outweighed by any countervailing benefits to consumers or competition.  Any purported benefits to consumers from the design of the Dishwashers, if any, is negated by the need for frequent repairs and the substantial expense to replace the defective control panels.

130.    The injury to consumers is not an injury that consumers themselves could reasonably have avoided because consumers did not know about the defective control panels before they bought the Dishwashers and had no reason to believe that the Dishwashers were defective.

198925

131.    Defendant's acts and practices of selling Dishwashers with defective control panels offends an established public policy and are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

132.    It is unethical and oppressive to sell a product that fails of its essential purpose of not operating and cleaning dishes and then deny the existence of a defect and charge for replacement parts that are also defective as Whirlpool does. Further, as alleged in detail above, Defendant actually knew its control panels were defective, which renders Defendant's conduct particularly immoral, unethical, oppressive and unscrupulous.

133.    Defendant's conduct also offends established public policies concerning consumer protection and class action litigation as alleged herein.

134.    Plaintiff and Class members relied on Defendant's unfair conduct and would not have purchased the Dishwashers or would have paid less for the Dishwashers had Defendant conducted itself fairly with respect to the transactions.

135.    Defendant's unfair conduct caused Plaintiff's and Class members' injuries in that Plaintiff and Class members would not have purchased the Dishwashers, would have paid less for the Dishwashers, or would not have purchased replacement parts and repair services had Defendant conducted itself fairly during the transactions.

136.    Plaintiff and Class members seek an order of this Court awarding restitution, injunctive relief and all other relief allowed under Section 17200, *et seq.,* plus interest, attorneys' fees, and costs.

## SECOND CAUSE OF ACTION

### (Violations of the "Unlawful" Prong of Cal. Bus. & Prof. Code § 17200 *et seq.*)

137.    Plaintiff repeats and re-alleges all prior paragraphs and incorporates them by reference as if fully set forth herein.

198925

138.     Defendant's acts and practices are **unlawful** because they violate the Song-Beverly Act, Civil Code §§ 1790 et seq., the Consumer Legal Remedies Act, Civil Code 1750 *et seq.*, Bus. & Prof. Code § 17500, the California Commercial Code, and the Magnuson-Moss Warranty Act ("MMWA").

139.     Defendant violates Cal. Bus. & Prof. Code § 17500 as alleged throughout this Complaint and in the Fourth Cause of Action, incorporated hereto by reference.

140.     Defendant violates the CLRA, Cal. Civ. §§ 1750 *et seq.*, as alleged throughout this Complaint and the Fifth cause of action, incorporated by reference hereto.

141.     Defendant violates Cal. Civ. Code §§ 1790 *et seq.*, the California Commercial Code, and the MMWA as alleged throughout this Complaint, and in the Sixth, Seventh and Eighth Causes of Action, incorporated hereto by reference.

142.     Plaintiff and Class members relied on Whirlpool's unlawful conduct as alleged herein.

143.     Whirlpool's unlawful conduct caused Plaintiff's and Class members' injury in that they paid more for the Dishwashers that they are worth given the defective control panels.

144.     Plaintiff and Class members seek an order of this Court awarding restitution, injunctive relief and all other relief allowed under Section 17200, *et seq.,* plus interest, attorneys' fees, and costs.

## **THIRD CAUSE OF ACTION**

### **(Violations of the "fraudulent" Prong of Cal. Bus. & Prof. Code § 17200 *et seq.*)**

145.     Plaintiff repeats and alleges all prior paragraphs and incorporates them as if fully set forth herein.

198925

146.     Defendant's acts and practices are **fraudulent** in that they have deceived and/or are "likely to deceive" Plaintiff and a significant portion of the consuming public and/or of targeted consumers.  Defendant sold Plaintiff and Class members Dishwashers with defective control panels that have rendered the Dishwashers unusable and therefore they cannot perform the functions for which they were purchased.

147.     Plaintiff and Class members relied on Defendant's deceptive and fraudulent business acts and practices to their detriment in that they would not have purchased the Dishwashers had Whirlpool disclosed that the control panels were defective.

148.     As alleged herein, Mr. Apodaca and Class members relied on Defendant's omissions and would not have purchased the Dishwashers had Whirlpool disclosed that Dishwashers contained defective control panels that would render the Dishwasher inoperable, and thereafter require frequent and costly replacement.

149.     Defendant's deceptive and fraudulent business acts and practices directly and proximately caused Plaintiff and Class members' injuries in that but for Defendant's failure to disclose that the Dishwashers had defective control panels, Plaintiff and Class members would have paid less for the Dishwashers, would not have purchased the dishwasher, or would not have paid for replacement control panels and costly repair services and/or extended warranties.

150.     Defendant was obliged to disclose the material facts because: a) Defendant had exclusive knowledge of the material facts not known to Plaintiff and Class members, since only Defendant had access to the aggregate data from its retailers, its own research and tests, and complaints from its customers through its warranty and customer service database(s); and b) Defendant actively concealed and suppressed the material facts from Plaintiff and Class members by not warning of the defective Control Panel at the time of purchase and by performing warranty

198925

and/or repair work with defective control panels; and (c) Whirlpool made partial representations about the Dishwasher's durability and reliability through a long-term advertising campaign while withholding the material fact that the Dishwashers have defective control panels that render the Dishwashers inoperable.

151.     Whirlpool's omissions and misrepresentations have a tendency to deceive a significant portion of the consuming public and/or of targeted consumers.

152.     Plaintiff and Class members have suffered injury in fact and have lost money as a result of Defendant's deceptive and fraudulent conduct in that they have overpaid for the Dishwashers and/or by that fact that their Dishwashers are worth less than they paid for them because of the defective Control Panels and by paying for replacement control panels that were defective and the repair services required to install the defective control panels.

153.     Plaintiff and Class members seek an order of this Court awarding restitution, injunctive relief and all other relief allowed under Section 17200, *et seq.,* plus interest, attorneys' fees, and costs.

## **FOURTH CAUSE OF ACTION**

### **(Violations of Cal. Bus. & Prof. Code § 17500 *et seq.*)**

154.     Plaintiff repeats and re-alleges all prior paragraphs and incorporates them as if fully set forth herein.

155.     Plaintiff brings this cause of action on behalf of himself and the Class pursuant to California Business and Professions Code, §17500, *et seq.*

156.     Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17506.

157.     Defendant falsely advertised the Dishwashers by making partial representations about the Dishwashers' reliability and durability, while omitting the material information that the control panels were defective and would require frequent and costly replacement.

198925

158.    Whirlpool also falsely advertised the Dishwashers by omitting from point-of-purchase labeling, such as placards or stickers on the Dishwashers themselves, material information that the control panels are defective. Whirlpool's false advertising through omission of material fact has deceived and is "likely to deceive" Plaintiff and Class members.

159.    Plaintiff and Class members relied on Defendant's false advertising to their detriment in that they would not have purchased the Dishwashers or replacement control panels and related repair services had Whirlpool disclosed that the control panels were defective.

160.    Defendant's false advertising directly and proximately caused Plaintiff's and Class members' injuries in that but for Defendant's failure to disclose that the Dishwashers had defective control panels, Plaintiff and Class members would not have overpaid for the Dishwashers, would not have bought the Dishwashers at all or would not have paid for replacement control panels and related repair services.

161.    Plaintiff and Class members have suffered injury in fact and have lost money as a result of Defendant's false advertising in that they have overpaid for the Dishwashers and/or by that fact that their Dishwashers are worth less than they paid for them because of the defective Control Panels and by paying for defective replacement control panels and related repair services.

162.    Pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17535, Plaintiff seeks an order 1) requiring Defendant to immediately cease the unlawful, unfair, and or fraudulent business acts and/or practices and false and misleading advertising complained of herein; 2) enjoining Defendant from continuing to falsely advertise the Dishwashers; and 3) requiring Defendant to repair or replace the Dishwashers or provide full restitution to Plaintiff and Class members, plus interest and attorneys' fees.

198925

# FIFTH CAUSE OF ACTION

## (Violations of the California Consumers Legal Remedies Act,

## Cal. Civ. Code § 1750 *et seq.* – Seeking Injunctive Relief Only)

163.   Plaintiff repeats and re-alleges all prior paragraphs and incorporates them as if fully set forth herein.

164.   Plaintiff seeks to enjoin Defendant's violation of the California Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750 *et seq.*

165.   At all times relevant hereto, Plaintiff and Class members were "consumer[s]" as that term is defined in Civ. Code § 1761(d).

166.   At all times relevant hereto, the Dishwashers constituted "goods" as that term is defined in Civ. Code § 1761(a).

167.   At all times relevant hereto, Defendant constituted a "person" as that term is defined in Civ. Code § 1761(c).

168.   At all times relevant hereto, Plaintiff's and Class members' purchases of Defendant's Dishwashers and replacement parts constituted a "transaction" as that term is defined in Civ. Code § 1761(e).

169.   At all times relevant hereto, Defendant provided "services" to Plaintiffs within the meaning of Civil Code § 1761(b).

170.   The CLRA provides in relevant part that "[t]he following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: (5) Representing that goods . . . have . . . characteristics, uses, benefits . . . which they do not have; ... (7) Representing that goods ... are of a particular standard, quality or grade . . . if they are of another; ...  and (9) Advertising goods ... with intent not to sell them as advertised.

171.   Defendant violated Civ. Code § 1770(a) subsection (5), (7), and (9) by representing that Dishwashers were durable and reliable through a decades-long advertising campaign while omitting the material fact that the Dishwashers have

defective control panels as alleged herein.  The information Defendant concealed and/or did not disclose to Plaintiff and Class members is material in that reasonable consumers would consider the fact of whether a dishwasher will frequently become inoperable during its useful life and only become operable again if they repeatedly pay for the costly replacement of its control panel to be important information when deciding whether to purchase a Maytag dishwasher.

172.  Plaintiff and Class members would have behaved differently by not buying the Dishwashers, not paying for repairs and replacement parts, and/or paying less for the Dishwashers, had they been aware that the Diswasher control panels were defective.

173.  Defendant was obliged to disclose the material facts because: a) Defendant had exclusive knowledge of the material facts not known to Plaintiff and Class members, since only Defendant had access to the aggregate data from its retailers, its own research and tests, and complaints from its customers through its warranty and customer service database(s); and b) Defendant actively concealed and suppressed the material facts from Plaintiff and Class members by not warning of the defective control panel at the time of purchase and by performing warranty and/or repair work with defective control panels; and (c) Whirlpool made partial representations about the Dishwasher's durability and reliability through a long-term advertising campaign while withholding the material fact that the Dishwashers have defective control panels that render the Dishwashers inoperable.

174.  Plaintiff and Class members justifiably acted or relied to their detriment upon the concealment and/or non-disclosure of material facts as evidenced by their purchases of the defective Dishwashers.  Had defendant disclosed the material fact that the Dishwashers had defective control panels, Plaintiff and Class members would have behaved differently by not buying the Dishwashers, not paying for defective replacement control panels and related repair services, and/or paying less for the Dishwashers.

198925

175.   Defendant's omissions of material facts directly and proximately caused Plaintiff's and Class member's injuries in that Plaintiff and Class members would not have overpaid for the Dishwashers, and/or have paid for defective replacement control panels and related repair services.   As such, Plaintiff and Class members did not receive the benefit of the bargain.

176.   Civil Code § 1780 (a)(2) permits any court of competent jurisdiction to enjoin practices that violate Civil Code § 1770.

177.   Pursuant to Civil Code § 1782(d), Plaintiff seeks only injunctive relief under this cause of action, and will be sending Defendant a demand letter that complies with Civ. Code § 1782(a).   Should Defendant not satisfy all of the elements of Civ. Code § 1782(c)(1)-(4), Plaintiff will amend this complaint to include a claim for damages under the CLRA.

## SIXTH CAUSE OF ACTION

**(Breach of Express Warranty under the Song-Beverly Act,**

**Cal. Civ. Code 1790 *et seq*., and Cal. Comm. Code § 2313)**

178.   Plaintiff repeats and re-alleges all prior paragraphs and incorporates them as if fully set forth herein.

179.   Plaintiff seeks recovery for himself and the Class for Defendant's breach of express warranty under the laws of the State of California.

180.   Under its Written Warranty, Defendant warranted all of the Dishwashers against "defects in materials or workmanship."

181.   As alleged herein, the Dishwashers' control panels contain FMS's with defective materials that cause them to fail when exposed to moisture.

182.   Under its Fact Warranty, Whirlpool warranted that the Dishwashers contained "commercial grade parts." However, the control panels are not commercial grade as they cannot withstand normal household use, let alone the rigors of heavy duty commercial use.

198925

183. Whirlpool's affirmations and promises created express warranties that the Dishwashers would provide the performance described above and were sold without defects and would conform to Defendant's affirmations and promises.

184. Defendant is obligated under the terms of its Written Warranty to repair the defective control panels in the Dishwashers sold to Plaintiff and Class members, and/or to make the Dishwashers conform to the Written Warranties and Fact Warranties under the Song-Beverly Act, Civil Code § 1793.2(b) and (d), Cal. Comm. Code § 2313.

185. Defendant breached its Written Warranty and Fact Warranties, as set forth above, by selling and supplying the Dishwashers with defective control panels and by failing to repair the Dishwashers or replace the control panels with non-defective control panels so that they conform to the warranties.

186. To the extent any notice is deemed required, Defendant has received sufficient and timely notice of the breaches of warranties alleged herein. Defendant has had notice of Plaintiff's claim as it has attempted to repair Plaintiff's Dishwasher, and Plaintiff called Maytag repeatedly regarding his Dishwasher's defect. Despite this notice and Defendant's knowledge of the defective Control Panels in its Dishwashers, Defendant has refused to honor its Written Warranty or conform the Dishwasher to the Fact Warranty.

187. In addition, Defendant has received thousands of complaints and other notices from its customers throughout the United States, which complaints notified Defendant that the Dishwashers are malfunctioning.

188. Plaintiff has complied with his obligations under the Written Warranty and the law and has given Defendant a reasonable opportunity to cure the breaches of its Warranties and Defendant failed to do so.

/ / /

/ / /

198925

189.   Pursuant to Cal. Civ. Code § 1793.2, Whirlpool had 30 days within which to conform Plaintiff's and Class member's Dishwashers to the express warranties, however, Whirlpool failed to do so and no conditions beyond its control prevented its compliance.

190.   Defendant knew of its Warranty obligations to repair or replace the Dishwashers, because of the defective Control Panels in the Dishwashers that it could not conform to its express warranties.   However, Defendant has willfully refused to replace the Dishwashers.   Therefore, Defendant is liable for damages, as well as civil penalties pursuant to Civil Code § 1794.

191.   Whirlpool's time limits on its express Warranties are procedurally and substantively unconscionable.   The Written Warranties are offered on a take-it-or leave-it basis without any input from consumers in a prolix printed form that are oppressive and surprise consumers because Whirlpool is in a superior bargaining position.  The Written Warranties are substantially unconscionable because Whirlpool knowingly and/or recklessly sold a defective product that was defective at the time of sale.

192.   The time limits on the express Warranties are grossly inadequate to protect Plaintiff and Class members.   The terms of the Written Warranty unreasonably favor Defendant by unreasonably limiting the Warranty to 1 year on a product that is expected to last 15 or more years; a gross disparity in bargaining power existed as between Defendant and Plaintiff and the Class members; Plaintiff and the Class members had no meaningful choice in determining those time limitations; and Defendant knew or should have known that the Dishwashers were defective at the time of sale and that the Control Panels would fail prematurely in the useful lives of the Dishwashers, thereby creating overly harsh and one-sided results by leaving consumers to pay for the repair of defects that Whirlpool knew existed at the time of sale.

198925

193.   Defendant's affirmations and promises became part of the "basis of the bargains" between Plaintiff and the Class members, on the one hand, and Whirlpool, on the other hand. Plaintiff and Class members would not have purchased the Dishwashers had Whirlpool not warranted the Dishwashers as it did.

194.   As a direct and proximate result of Defendant's breach of the Written Warranty and Fact Warranty, Plaintiff and Class members have sustained damages and other losses in an amount to be determined at trial.

195.   Defendant has made more repair attempts than is reasonable and has still has not conformed the Dishwashers to its express warranties.  Pursuant to Cal. Civ. Code § 1793.2, Whirlpool is required to replace the Dishwashers with conforming Dishwashers, or reimburse Plaintiff and Class members their purchase price. Plaintiff is also entitled to recover costs, attorneys' fees, and other relief as the Court deems appropriate.

## SEVENTH CAUSE OF ACTION

**(Breach of Implied Warranty of Merchantability under the Song-Beverly Act, Cal. Civ. Code 1790 *et seq*.)**

196.   Plaintiff alleges and incorporates the above allegations by reference as if fully set forth herein.

197.   Under California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1792 *et seq*., every sale of consumer goods is accompanied by both a "manufacturer's and retailer's" implied warranty that the goods are merchantable within the meaning of Cal. Civ. Code § 1791.1(a). Therefore, consumers need not be in privity with the manufacturer to bring an implied warranty claim.

198.   Pursuant to Cal. Civ. Code § 1793, Whirlpool's attempt to modify the length of the implied warranty of merchantability in its Written warranty is void.

199.   The Dishwashers are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

198925

200.   Defendant is a "manufacturer" within the meaning of Cal. Civ. Code §§ 1791(j).

201.   Plaintiff bought the Dishwasher at retail in the State of California.

202.   At the time of sale, and currently, Defendant is in the business of manufacturing, marketing, and selling Dishwashers.

203.   By operation of law, Defendant impliedly warranted to Plaintiff and Class members that the Dishwashers were of merchantable quality and fit for the ordinary purposes for which they are used – cleaning dishes, cutlery, cookware, and glassware.

204.   The Dishwashers have an expected useful life of 15 years or more.  The control panels are defective and cause the Dishwashers to malfunction and become inoperable.   An inoperable Dishwasher cannot clean dishes, cannot satisfy its ordinary purpose and is therefore unmerchantable.

205.   The Dishwashers are substantially certain to fail within their useful life.

206.   Defendant breached the implied warranty at the time of sale by selling the Dishwashers with defective control panels and by selling replacement control panels that were defective.

207.   Plaintiff's and Class members' Dishwashers do not pass without objection in the trade as they fail prematurely as compared against industry standards and the FMS does not pass industry tests.

208.   Plaintiff's and Class members' Dishwashers became unfit for their ordinary purpose of cleaning dishes.

209.   Plaintiff's and Class members' Dishwashers were not adequately contained, packaged, or labeled.

210.   Plaintiff's and Class member's Dishwashers do not conform to the promises or affirmations of fact regarding commercial grade parts as alleged herein.
/ / /

198925

211.   Plaintiff and Class members were the intended third-party beneficiaries of the contracts for sale of the Dishwashers from Whirlpool to the retailers who ultimately sold the Dishwashers to Plaintiff and Class members.   In the case of Plaintiff Apodaca, Plaintiff is the intended third party beneficiary of a contract for sale of the Dishwasher from Whirlpool to Home Depot, Inc.   As for Class members, they are the intended third-party beneficiaries of the contracts for sale of the Dishwashers from Whirlpool to retailers such as Lowes, Home Depot, Sears, Pacific Sales/Best Buy, and/or smaller independent retailers across the State of California.

212.   Defendant knew that the retailers to whom it sold the Dishwashers were not going to own the Dishwashers any longer than it took to sell them to Plaintiff and Class members.   Further, Defendant intended that any warranty, whether express or implied, that applied to the Dishwashers were for the benefit of Plaintiff and Class members; who are the people that own and use the Dishwashers as expressly stated in the terms of the Express Written Warranty.

213.   Plaintiff and Class members purchased the Dishwashers from authorized dealers who are agents of Whirlpool.

214.   The dealers were not intended to be the ultimate consumers of the defective Dishwashers; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

215.   Defendant, who manufactures and markets the Dishwashers, and/or sellers/resellers of the Dishwashers, had knowledge that Plaintiff and Class members were the end users of the Dishwashers when Defendant entered into any and all sales contracts and subcontracts for the Dishwashers with retailers and resellers and Defendant's intent to benefit Plaintiff and Class members arises by operation of law pursuant to the implied covenant of good faith and fair dealing contained within any and all sales contracts and subcontracts for the Dishwashers entered into by Defendant.

198925

216. Whirlpool brought itself into privity with Plaintiff and Class members who relied on written labels, representations, and advertisements made by Whirlpool as alleged herein.

217. As a direct and proximate result of Defendant's breach of implied warranty, Plaintiff and Class members have sustained damages and other losses in an amount to be determined at trial. Plaintiff and Class members are entitled to recover damages and attorneys' fees as provided by statute, as well as costs, and other relief the Court deems appropriate.

## EIGHTH CAUSE OF ACTION

**(Violations of the Magnuson-Moss Warranty Act (15 U.S.C. §§ 2301 *et seq.*) – Breach of Express Written Warranty and Breach Implied Warranty of Merchantability)**

218. Plaintiff repeats and re-alleges all prior paragraphs and incorporates them as if fully set forth herein.

219. The Dishwashers are "consumer products" as that term is defined under 15 U.S.C. §2301(1).

220. Plaintiff and Class members are "consumers" as that term is defined by 15 U.S.C. § 2301(3), and utilized the Dishwashers for personal and household use and not for resale or commercial purposes.

221. Whirlpool is a "warrantor" and "supplier" as those terms are defined by 15 U.S.C. § 2301(4) and (5).

222. Whirlpool provided Plaintiff and Class members with "written warranties" as that term is defined by 15 U.S.C. § 2301(6).

223. The Dishwashers have defects in materials as alleged herein.

224. Whirlpool provided Plaintiff and Class members with "implied warranties" as that term is defined by 15 U.S.C. § 2301(7).

198925

225.   In its capacity as a warrantor, and by the conduct described herein, any attempt by Whirlpool to limit the express warranties in a manner that would exclude coverage for the defective Control Panels in the Dishwashers is unconscionable and any such effort to disclaim, or otherwise limit, liability for its defective Dishwashers is null and void as alleged above.

226.   This Court has jurisdiction over this cause of action under 28 U.S.C. 1332.

227.   Whirlpool has failed to comply with its obligations under its Written Warranty, Fact Warranty and implied warranty of merchantability. By failing to repair the Dishwashers under the Written Warranty and conform the Dishwashers to the Fact Warranties and implied warranty of merchantability, Whirlpool breached its express and implied warranties.

228.   Plaintiff fulfilled his obligations under the warranties.

229.   As a direct and proximate result of Defendant's breach of express and implied warranties, Plaintiff and Class members have suffered injury in that their Dishwashers are worth less than what they paid for them and Plaintiff and Class members are entitled to damages, equitable relief, attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant for the following:

1.   An order certifying Plaintiff's claims as a class action, appointing Kristian Apodaca as representative Plaintiff and appointing his counsel, Eppsteiner & Fiorica Attorneys, LLP, and Stuart M. Eppsteiner, Andrew J. Kubik, and Zelekha Amirzada of that firm to be counsel for the Class;

198925

2. A constructive trust on and restitution of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

3. All recoverable compensatory and other damages sustained by Plaintiff and Class members;

4. Actual and/or statutory damages for injuries suffered by Plaintiff and Class members in the maximum amount permitted by applicable law;

5. An order (1) enjoining Defendant's wrongful, unlawful, fraudulent, deceptive, and unfair conduct as set forth above; (2) directing Defendant to engage in a corrective notice campaign; and (3) directing Defendant to repair or replace the Dishwashers or pay full restitution to Plaintiff and Class members;

6. Statutory pre-judgment and post-judgment interest on any amounts;

7. Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

8. Such other relief as the Court may deem just and proper.

Plaintiff individually and on behalf of all others similarly situated, hereby demands a trial by jury on all issues so triable.

DATED: May 6, 2013          EPPSTEINER & FIORICA ATTORNEYS, LLP

By:_____

Stuart M. Eppsteiner, Esq.
Andrew J. Kubik, Esq.
Zelekha Amirzada, Esq.

198925

# EXHIBIT 1

# MAYTAG® DISHWASHER LIMITED WARRANTY

### FIRST YEAR LIMITED WARRANTY (PARTS AND LABOR)

For one year from the date of purchase, when this major appliance is installed, operated and maintained according to instructions attached to or furnished with the product, Maytag brand of Whirlpool Corporation or Whirlpool Canada, LP (hereafter "Maytag") will pay for factory specified replacement parts and repair labor to correct defects in materials or workmanship that existed when this major appliance was purchased.

### SECOND THROUGH TENTH YEAR LIMITED WARRANTY (CERTAIN COMPONENT PARTS ONLY - LABOR NOT INCLUDED)

In the second through tenth years from the date of original purchase, when this major appliance is installed, operated and maintained according to instructions attached to or furnished with the product, Maytag will pay for factory specified parts for the following components to correct non-cosmetic defects in materials or workmanship in these parts that prevent function of the dishwasher and that existed when this major appliance was purchased. This is a limited 10-year warranty on the below named parts only and does not include repair labor.

- Upper and Lower Racks (excludes cup shelf and silverware basket)
- Chopper Blade
- Stainless Steel Tub and Inner Door Liner

YOUR SOLE AND EXCLUSIVE REMEDY UNDER THE LIMITED WARRANTY SHALL BE PRODUCT REPAIR AS PROVIDED HEREIN. Service must be provided by a Maytag designated service company. This limited warranty is valid in the United States or Canada and applies only when the major appliance is used in the country in which it was purchased. This limited warranty is effective from the date of the original consumer purchase. Proof of original purchase date is required to obtain service under this limited warranty.

### ITEMS EXCLUDED FROM WARRANTY

**This limited warranty does not cover:**

1. Replacement parts or repair labor if this major appliance is used for other than normal, single-family household use or when it is used in a manner that is inconsistent with published user or operator instructions and/or installation instructions.
2. Service calls to correct the installation of your major appliance, to instruct you on how to use your major appliance, to replace or repair house fuses, or to correct house wiring or plumbing.
3. Service calls to repair or replace appliance light bulbs, air filters or water filters. Consumable parts are excluded from warranty coverage.
4. Damage resulting from accident, alteration, misuse, abuse, fire, flood, acts of God, improper installation, installation not in accordance with electrical or plumbing codes, or use of products not approved by Maytag.
5. Cosmetic damage, including scratches, dents, chips or other damage to the finish of your major appliance, unless such damage results from defects in materials or workmanship and is reported to Maytag within 30 days from the date of purchase.
6. Pickup and delivery. This major appliance is intended to be repaired in your home.
7. Repairs to parts or systems resulting from unauthorized modifications made to the appliance.
8. Expenses for travel and transportation for product service if your major appliance is located in a remote area where service by an authorized Maytag servicer is not available.
9. The removal and reinstallation of your major appliance if it is installed in an inaccessible location or is not installed in accordance with Maytag published installation instructions.
10. Replacement parts or repair labor on major appliances with original model/serial numbers that have been removed, altered or cannot be easily determined.
11. Discoloration, rust, or oxidation of stainless steel surfaces.

The cost of repair or replacement under these excluded circumstances shall be borne by the customer.

### DISCLAIMER OF IMPLIED WARRANTIES

IMPLIED WARRANTIES, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, ARE LIMITED TO ONE YEAR OR THE SHORTEST PERIOD ALLOWED BY LAW. Some states and provinces do not allow limitations on the duration of implied warranties of merchantability or fitness, so this limitation may not apply to you. This warranty gives you specific legal rights, and you also may have other rights that vary from state to state or province to province.

### LIMITATION OF REMEDIES; EXCLUSION OF INCIDENTAL AND CONSEQUENTIAL DAMAGES

YOUR SOLE AND EXCLUSIVE REMEDY UNDER THIS LIMITED WARRANTY SHALL BE PRODUCT REPAIR AS PROVIDED HEREIN. MAYTAG SHALL NOT BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES. Some states and provinces do not allow the exclusion or limitation of incidental or consequential damages, so these limitations and exclusions may not apply to you. This warranty gives you specific legal rights, and you also may have other rights that vary from state to state or province to province.

If outside the 50 United States and Canada, contact your authorized Maytag dealer to determine if another warranty applies.

If you think you need repair service, first see the "Troubleshooting" section of the Use & Care Guide. If you are unable to resolve the problem after checking "Troubleshooting," additional help can be found by checking the "Assistance or Service" section or by calling Maytag. In the U.S.A., call **1-800-688-9900**. In Canada, call **1-800-807-6777**.                    7/10

Exhibit 1, Page 81

For additional product information, in the U.S.A., visit **www.maytag.com**
In Canada, visit **www.maytag.ca**

If you do not have access to the Internet and you need assistance using your product or you would like to schedule service, you may contact Maytag at the number below.

*Have your complete model number ready. You can find your model number and serial number on the label located near the door on the right-hand or left-hand side of the dishwasher interior.*

For assistance or service in the U.S.A., call 1-800-688-9900. In Canada, call 1-800-807-6777.

If you need further assistance, you can write to Maytag with any questions or concerns at the address below:

In the U.S.A.:                                                 In Canada:

Maytag Brand Home Appliances                Maytag Brand Home Appliances
Customer eXperience Center                    Customer eXperience Centre
553 Benson Road                                      200 – 6750 Century Avenue
Benton Harbor, MI 49022-2692                  Mississauga ON L5N 0B7

Please include a daytime phone number in your correspondence.

Please keep this User Instructions and model number information for future reference.

**W10255114B**
**SP PN W10255115B**
© 2011.
All rights reserved.

®Registered Trademark/™ Trademark of Maytag Corporation or its related companies.
Used under license by Maytag Limited in Canada.

2/11
Printed in U.S.A.

# EXHIBIT 2

1 | Stuart M. Eppsteiner (CA SBN 098973)
sme@eppsteiner.com
2 | Andrew J. Kubik (CA SBN 246902)
ajk@eppsteiner.com
3 | Zelekha Amirzada (CA SBN 250419)
za@eppsteiner.com
4 | **EPPSTEINER & FIORICA ATTORNEYS, LLP**
12555 High Bluff Dr., Ste. 155
5 | San Diego, CA  92130
Tel. (858) 350-1500
6 | Fax (858) 350-1501

7 | Counsel for Plaintiff and the Putative Class

8

9 | **IN THE UNITED STATES DISTRICT COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

11 | **SOUTHERN DIVISION**

12

13 | KRISTIAN APODACA, individually and   )   Case No.
on behalf of all other similarly situated,   )
14 | )
)   **CONSUMERS LEGAL**
15 | PLAINTIFF,   )   **REMEDIES ACT VENUE**
)   **DECLARATION**
16 | vs.   )
)
17 | WHIRLPOOL CORPORATION,   )
)
18 | )
DEFENDANT.   )
19 | )
)
20 | )

21

22 | I, Kristen Apodaca, declare as follows:

23 | 1. I am a named plaintiff in this litigation.

24 | 2. I have personal knowledge of the matters set forth below except to those

25 | matters stated herein which are based on information and belief, which matters I

26 | believe to be true.

27

28

DECLARATION OF KRISTEN APODACA

200250

Exhibit 2, Page 84

3. If called as a witness I could and would competently testify to the matters included herein.

4. I purchased a Maytag dishwasher at a Home Depot store located in Fullerton, California.

5. I am informed and believe that venue is proper in this Court under California Civil Code § 1780(d) based on the fact that the transaction at issue, or a substantial portion thereof, occurred in this district.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on April 15, 2013 in Anaheim, California.

By: _____
                Kristian Apodaca

2
DECLARATION OF KRISTEN APODACA

**Exhibit 2, Page 85**

200250