Stuart M. Eppsteiner (CA SBN 098973)
sme@eppsteiner.com
Andrew J. Kubik (CA SBN 246902)
ajk@eppsteiner.com
Zelekha Amirzada (CA SBN 250419)
za@eppsteiner.com
**EPPSTEINER & FIORICA ATTORNEYS, LLP**
12555 High Bluff Dr., Ste. 155
San Diego, CA  92130
Tel. (858) 350-1500
Fax (858) 350-1501

Attorneys for Plaintiffs and the Putative Class

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| KRISTIAN APODACA and BRUCE KALEITA, individually and on behalf of all other similarly situated,<br><br>PLAINTIFFS,<br><br>vs.<br><br>WHIRLPOOL CORPORATION,<br><br>DEFENDANT. | Case No. SACV13-00725 JVS (ANx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>DATE:          OCTOBER 21, 2013<br>TIME:           1:30 P.M.<br>COURTROOM: 10C<br><br>THE HONORABLE JAMES V. SELNA |

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................1

STATEMENT OF FACTS .......................................................2

STANDARD OF REVIEW ......................................................3

ARGUMENT ......................................................................4

I.   PLAINTIFFS SUFFICIENTLY ALLEGED THEIR POINT-OF-PURCHASE CONSUMER PROTECTION AND FRAUDULENT CONCEALMENT CLAIMS UNDER RULE 9(b) ...............................4

   a.   UCL "Fraudulent" Business Practices, CLRA, and FAL.................. 5

      i.  Omission Claims ............................................... 5

      ii. Misrepresentation Claim..............................................16

   b. UCL "Unlawful" claim............................................... 18

   c. FDUTPA Omissions Claims Under "Deceptive" Prong.................. 18

   d. Fraudulent Concealment ............................................... 20

      e.

II.  PLAINTIFFS PLAUSIBLY ALLEGE UCL AND FDUTPA UNFAIR CONDUCT UNDER RULE (8) ............................................. 22

III. PLAINTIFF APODACA ALLEGES PLAUSIBLE WARRANTY CLAIMS UNDER RULE 8(a)…..................................... 25

   a. Express Warranties.......................................... 25

      i.  Written Warranty............................................. 25

      ii. "Commercial Grade" Warranty..................................... 25

   b. Implied Warranty.......................................... 25

CONCLUSION........................................................... 30

i

# Table of Authorities

**Cases**                                                                          **Page**

*Aaronson v. Vital Pharmaceuticals, Inc.,*
 09-CV-1333 W (CAB), 2010 WL 625337 (S.D. Cal. Feb. 17, 2010)....... 27

*Anunziato v. eMachines, Inc.,*
 402 F.Supp.2d 1133 (C.D. Cal. 2005) at 1141............................... 27

*Ashcroft v. Iqbal,*
 556 U.S.662, 129 S. Ct. 1937, 1949 (2009).................................. 3

*Astiana v. Ben & Jerry's Homemade, Inc.,*
 C 10-4387 PJH, 2011 WL 2111796 (N.D. Cal. May 26, 2011).............. 4

*Avedisian v. Mercedes-Benz USA, LLC,*
 CV 12-00936 DMG CWX, 2013 WL 2285237 (C.D. Cal.
 May 22, 2013) ................................................................. 29

*Baba v. Hewlett-Packard Co.,*
 C 09-05946 RS, 2010 WL 2486353 (N.D. Cal. June 16, 2010)............ 9, 12

*Bardin v. Daimlerchrysler Corp.,*
 136 Cal. App. 4th 1255 (2006) .............................................. 10

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)................................... 3

*Belle v. Chrysler Grp., LLC,*
 SACV 12-00936 JVS, 2013 WL 949484, at *4 (C.D. Cal.
 Jan. 29, 2013) ................................................................ 15

*Bills v. U.S. Fid. & Guar. Co.,*
 280 F.3d 1231, 1234 n. 1 (9th Cir. 2002)................................... 6

*Bros. v. Hewlett-Packard Co.,*
 C-06-02254RMW, 2007 WL 485979, at *4 (N.D. Cal. Feb. 12, 2007)..... 26

ii

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FAC

206934              Case No. SACV13-00725 JVS(ANx)

*Bruno v. Eckhart Corp.*,
  280 F.R.D. 540, 545 (C.D. Cal. 2012)........................................ 6

*C.f. Newcal Indus., Inc. v. Ikon Office Solution*,
  513 F.3d 1038, 1053 (9th Cir. 2008).................................... 16

*Coastal Abstract Serv. v. First Am. Title Ins. Co.*,
  173 F.3d 725, 731 (9th Cir.1999) ...................................... 16

*Cohen v. Nat'l City Mortgage*,
  2:08-CV-00578-29DNF, 2009 WL 2436595 (M.D. Fla. Aug. 6, 2009)..... 21

*Collins v. eMachines, Inc.*,
  202 Cal. App. 4th 249, 252, 255-259 (2011), reh'g denied
  (Dec. 15, 2011), as modified (Dec. 28, 2011), review denied
  (Feb. 15, 2012)..................................................... 6, 9-11

*Consumer Advocates v. Echostar Satellite Corp.*,
  113 Cal. App. 4th 1351, 1361-62 (2003).................................. 17

*Date v. Sony Electronics, Inc.*,
  07-CV-15474, 2010 WL 3702599 (E.D. Mich. Sept. 16, 2010)............. 28

*Daugherty v. Am. Honda Motor Co., Inc.*,
  144 Cal. App. 4th 824, 827 (2006) ...................................... *Passim*

*Davis v. Powertel, Inc.*,
  776 So. 2d 971, 973 (Fla. Dist. Ct. App. 2000)............................. 19

*Decker v. Mazda Motor of Am., Inc.*,
  SACV 11-0873 AG MLGX, 2011 WL 5101705, at *4 (C.D.
  Cal. Oct. 24, 2011).................................................... 12

*Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*,
  693 So. 2d 602, 606 (Fla. Dist. Ct. App. 1997)............................. 5

*Donahue v. Apple*,
  871 F.Supp.2d 913, 926 (N.D. Cal. 2012) ................................. 12

iii

*Donlen v. Ford Motor Co.*,
    217 Cal. App. 4th 138, 149 (2013)............................................. 29

*Ehrlich v. BMW of N. Am., LLC*,
    801 F.Supp.2d 908 (C.D.Cal.2010)...................................... 6, 29

*Falk v. General Motors Corp.*,
    544 F. Supp 2d 1088 (N.D. Cal. 2007) ............................... 5, 8-10

*Fitzpatrick v. Gen. Mills, Inc.*,
    635 F.3d 1279, 1282 (11th Cir. 2011) ............................................19

*Freeman v. Sharpe Res. Corp.*,
    6:12-CV-1584-ORL-22T, 2013 WL 2151723, at *8
    (M.D. Fla. May 16, 2013) ............................................................22

*Gavron v. Weather Shield Mfg., Inc.*,
    819 F. Supp. 2d 1297, 1302 (S.D. Fla. 2011) ...................................19

*Grodzitsky v. Am. Honda Motor Co., Inc.*,
    2:12-CV-1142-SVW-PLA, 2013 WL 2631326
    (C.D. Cal. June 12, 2013) ...........................................................12

*Hartless v. Clorox Co.*,
    CIV. 06CV2705JAHCAB, 2007 WL 3245260, at *7
    (S.D. Cal. Nov. 2, 2007) .............................................................24

*Hewlett-Packard Co. v. Superior Court*,
    167 Cal. App. 4th 87, 96 (2008) ...................................................11

*Hicks v. Kaufman & Broad Home Corp.*,
    89 Cal. App. 4th 908 (2001) .......................................11, 25, 29, 30

*Hill v. Hoover Co.*,
    899 F. Supp. 2d 1259, 1264 (N.D. Fla. 2012) .....................................23

*Holt v. Globalinx Pet, LLC*,
    SACV13-0041 DOC JPRX, 2013 WL 3947169, at *10
    (C.D. Cal. July 30, 2013) .......................................................27, 28

iv

*Horvath v. LG Electronics Mobilecomm U.S.A., Inc.,*
    3:11-CV-01576-H-RBB, 2012 WL 2861160, at *6
    (S.D. Cal. Feb. 13, 2012) ...................................................15, 24, 26, 28

*HTP, Ltd. v. Lineas Aereas Costarricenses,*
    *S.A.,* 685 So. 2d 1238, 1239 (Fla. 1996) .......................................22

*Hovsepian v. Apple, Inc.,*
    08-5788 JF (PVT), 2009 WL 2591445, at *1, *3
    (N.D. Cal. Aug. 21, 2009) ...............................................................26

*In re Apple & AT & TM Antitrust Litig.,*
    596 F. Supp. 2d 1288, 1310 (N.D. Cal. 2008) ...................................4

*In Re LG Electronics Inc.,*
    SERIAL 77046446, 2009 WL 4863339, at *5 (Trademark Tr.
    & App. Bd. Dec. 1, 2009) ...............................................................28

*In re NVIDIA GPU Litig.,*
    2009 WL 4020104 at * 10 (N.D. Cal. Nov. 19, 2009).........................12

*In re OnStar Contract Litig.,*
    600 F. Supp. 2d at 869-70. .............................................................. 9

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection*
*HGTV Televisions Litig.,*
    758 F. Supp. 2d 1077, 1095 (S.D. Cal. 2010) ...................................17

*In re Sony Vaio Computer Tracpad Litig.,*
    2010 WL 4262191, *4-*5 (S.D. Cal. 2010) .......................................9

*In re Tobacco II Cases,*
    46 Cal. 4th 298, 328 (2009) .............................................................18

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices,*
  *& Products Liab. Litig.,*
    754 F. Supp. 2d 1145, 1161 (C.D. Cal. 2010).........12, 13, 15-17, 25-26, 28

*Johnson v. Mitsubishi Digital Electronics Am., Inc.,*
    578 F. Supp. 2d 1229 (C.D. Cal. 2008) ...........................................28

v

*Jovine v. Abbott Laboratories, Inc.*,
   795 F. Supp. 2d 1331, 1335 (S.D. Fla. 2011) ...............................19, 20

*Kahn v. Shiley, Inc.*,
   217 Cal. App. 3d 848, 858 (1990) ..............................................20, 21

*Kaiser v. Depuy Spine, Inc.*,
   8:12-CV-2596-T35-AEP, 2013 WL 2006122,
   at *6 (M.D. Fla. May 14, 2013) ....................................................23

*Kas v. Mercedes-Benz USA, LLC*,
   CV 11-1032-GHK PJWX, 2011 WL 5248299,
   at  2 (C.D. Cal. Oct. 31, 2011) ....................................................30

*Kasky v. Nike, Inc.*,
   27 Cal.4th 939, 949 (2002) ............................................................5

*Keegan v. Am. Honda Motor Co., Inc.* ("*Keegan I*"),
   838 F. Supp. 2d 929, 943 (C.D. Cal. 2012) ...........................12, 19, 30

*Keegan v. Am. Honda Motor Co., Inc.* ("*Keegan II*"),
   284 F.R.D. 504, 534, 537 (C.D. Cal. 2012) *leave to appeal denied*,
   12-80138, 2012 WL 7152289 (9th Cir. Nov. 9, 2012)..........................11, 25

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005)..................................................4, 20

*Kowalsky v. Hewlett-Packard Co.*,
   771 F. Supp. 2d 1138 (N.D. Cal. 2010) order vacated in part on
   reconsideration, 771 F. Supp. 2d 1156 (N.D. Cal. 2011).....................4

*Lazar v. Trans Union LLC*,
   195 F.R.D. 665, 668 (C.D. Cal. 2000) ..............................................4

*Lehman Bros. Holdings, Inc. v. Campbell*,
   3:12-CV-259, 2013 WL 3479525, at *1-2 (E.D. Tenn. July 10, 2013)........22

*LiMandri v. Judkins*,
   52 Cal. App. 4th 326, 337 (1997) ...........................................6, 8, 9

vi

*Long v. Hewlett-Packard Co.,*
        316 F. App'x 585, 586 (9th Cir. 2009) ........................................... 26

*Long v. Hewlett-Packard Co.,*
        No. 06-02816 JO, 2007 WL 2994812 at *7
        (N.D. Cal. July 27, 2007) ...............................................17, 26-27

*Marchante v. Sony Corp. of Am., Inc.,*
        801 F. Supp. 2d 1013, 1020 (S.D. Cal. 2011) ...................................26

*Marsikian v. Mercedes Benz USA, LLC,*
        2009 WL 8379784 at *5 (C.D. Cal. May 4, 2009) ................................10

*Matthews v. Am. Honda Motor Co., Inc.,*
        12-60630-CIV, 2012 WL 2520675 (S.D. Fla. June 6, 2012) ........19, 24, 25

*McAdams v. Monier, Inc.,*
        182 Cal. App. 4th 174, 191 (2010) ................................................11

*Mexia v. Rinker Boat Co., Inc.,*
        174 Cal. App. 4th 1297, 1303 (2009) ...................................28, 29, 30

*Mirkin v. Wasserman,*
        5 Cal.4th 1082, 1093, 23 Cal.Rptr.2d 101, 858 P.2d 568 (1993) .............6

*Mlejnecky v. Olympus Imaging Am. Inc.,*
        2:10-CV-02630 JAM, 2011 WL 1497096, at *3
        (E.D. Cal. Apr. 19, 2011) ...............................................................9

*Montich v. Miele USA, Inc.,*
        2012 WL 1005329, *9 & n.10  (D.N.J. Mar. 27, 2012) ...........................9

*Morris v. ADT Sec. Servs.,*
        580 F. Supp. 2d 1305, 1310 (S.D. Fla. 2008) .................................20

*Moss v. U.S. Secret Serv.,*
        572 F.3d 962, 969 (9th Cir. 2009) ...............................................3

*Mui Ho v. Toyota Motor Corp.,*

vii

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FAC

12-2672 SC, 2013 WL 1087846 (N.D. Cal. Mar. 14, 2013) ......6, 14, 15, 24

*National Council Against Health Fraud, Inc. v. King Bio*
   *Pharmaceuticals, Inc.*
      107 Cal.App.4th 1336, 1348 (2003) ………………………………………..17

*Nessim v. DeLoache*,
      384 So. 2d 1341, 1344 (Fla. Dist. Ct. App. 1980) ………………………21

*Oestreicher v. Alienware Corp.*,
      544 F. Supp. 2d 964 (N.D. Cal. 2008),
      aff'd 322 Fed. Appx. 489 (9th Cir. 2009) …………………………8, 9, 21

*Outboard Marine Corp. v. Superior Court*,
      52 Cal. App. 3d 30 (1975) ……………………………………………....7

*Ramel v. Chasebrook Const. Co.*,
      135 So. 2d 876, 882 (Fla. Dist. Ct. App. 1961) ………………………...21, 22

*Robertson v. Fleetwood Travel Trailers of California, Inc.*,
      144 Cal. App. 4th 785, 800-801 (2006) ………………………………….26

*Rose v. Bank of Am., N.A.*,
      159 Cal. Rptr. 3d 693 (Cal. 2013) …………………………………...5, 18

*Rothstein v. DaimlerChrysler Corp.*,
      8:05CV1126T30MSS, 2005 WL 3093573, at *2
      (M.D. Fla. Nov. 18, 2005) …………………………………………..20, 25

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
      806 F.2d 1393, 1401 (9th Cir. 1986) ………………………………….30

*Seifi v. Mercedes-Benz USA, LLC*,
      C12-5493 TEH, 2013 WL 2285339
      (N.D. Cal. May 23, 2013) …………………………………………….13

*Shapiro v. Sutherland*,
      64 Cal. App. 4th 1534, 1544 (1998) ………………………………….21

*Sherleigh Assocs. LLC v. Windmere-Durable Holdings, Inc.*,

viii

178 F. Supp. 2d 1255, 1270 (S.D. Fla. 2000) ...............................22

*Smith v. Ford Motor Co.,*
    462 F. App'x 660, 665 (9th Cir. 2011) ........................................24

*Smith v. Wm. Wrigley Jr. Co.,*
    663 F. Supp. 2d 1336, 1339 (S.D. Fla. 2009) ..............................24

*Tait v. BSH Home Appliances Corp.* ("*Tait I*"),
    SACV 10-00711 DOC, 2011 WL 3941387, at *2
    (C.D. Cal. Aug. 31, 2011) ...........................................14, 15, 20

*Tait v. BSH Home Appliances Corp.* ("*Tait II*"),
    289 F.R.D. 466, 488 (C.D. Cal. 2012) leave to appeal denied,
    13-80000, 2013 WL 1395690 (9th Cir. Apr. 1, 2013) ..........7-8, 10, 12, 14

*Taragan v. Nissan N. Am., Inc.,*
    C 09-3660 SBA, 2013 WL 3157918, at *6
    (N.D. Cal. June 20, 2013) ..................................................15

*Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.,*
    110 So. 3d 399, 402 (Fla. 2013) ........................................ 22-23

*Tietsworth v. Sears, Roebuck & Co.,*
    720 F. Supp.2d 1123 (N.D.Cal. 2010) ...................................12, 15

*United Steel, Paper & Forestry, Rubber, Mfg. Energy,*
  *Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v.*
  *ConocoPhillips Co.,*
    593 F.3d 802, 808 (9th Cir. 2010) *leave to appeal denied,*
    12-80138, 2012 WL 7152289 (9th Cir. Nov. 9, 2012) .....................25

*Vasquez v. Superior Court*
    4 Cal. 3d 800, 808 (1971) .................................................5

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097, 1107 (9th Cir. 2003) ...................................4, 23

*W. v. JPMorgan Chase Bank, N.A.,*

ix

214 Cal. App. 4th 780, 806 (2013), reh'g denied (Apr. 11, 2013),
      review filed (Apr. 26, 2013) ......................................................23

*Ward v. IPEX, Inc.,*
      CV-08-6370-VBF, 2009 WL 2634842, at *2-3
       (C.D. Cal. Feb. 4, 2009) ......................................................4

*Warren v. Fox Family Worldwide, Inc.,*
      171 F. Supp. 2d 1057, 1062
      (C.D. Cal. 2001) *aff'd,* 328 F.3d 1136 (9th Cir. 2003) ......................4

*Weinstat v. Dentsply Int'l., Inc.,*
      180 Cal.App.4th 1213, 1227, 103 Cal.Rptr.3d 614 (2010) ..............27-28

*Williams v. Gerber Products Co.,*
      552 F.3d 934, 939 (9th Cir. 2008) ....................................16, 18

*Wilson v. Hewlett-Packard Co.,*
      668 F.3d 1136, 1141, 1144 (9th Cir. 2012) ..............6, 7, 10, 11, 12, 20

*Yumul v. Smart Balance, Inc.,*
      733 F. Supp. 2d 1117, 1125 (C.D. Cal. 2010) ..............................16

## <u>STATUTES & AUTHORITIES</u>

322 Fed. Appx. at 493 ......................................................8, 21

9th Cir. R. 36-3(a) ..........................................................8

Cal. Bus. & Prof. Code § 17200.............................................1, 8

Cal. Bus. & Prof. Code § 21627 (West) .....................................27

Cal. Civ. Code § 1654 (West) ...............................................27

Cal. Civ. Code ¶ 1750 ......................................................8

Cal. Civ. Code § 1760 ......................................................5

x

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FAC

Cal. Civ. Code § 1791.1 ................................................................28

Cal. Civ. Code 1792.3 ..................................................................26

Cal. Code Regs. tit. 17, § 95102 ...................................................28

Cal. Code Regs. tit. 22, § 77153 ...................................................28

Cal. Health & Safety Code § 113916(b)(West) ............................27

Cal. Rules of Court § 8.548(a) .......................................................7

Class Action Fairness Act ..............................................................7

Florida Unfair and Deceptive Trade Practices Act,
    Fla. Stat. §501, 201 et seq. (FUDTPA) ................................ *Passim*

Federal Rules of Civil Procedure 12(b)(6) ..................................3, 4

Federal Rules of Civil Procedure Rule 9(b) ........................4, 18, 19

Song-Beverly Act (¶¶ 18-22, 71, 73, 80, 97, 124, 247) ...............26

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FAC

206934                                          Case No. SACV13-00725 JVS(ANx)

**INTRODUCTION**

This case is about Whirlpool's knowing manufacture and sale of, and failure to repair, its defective Maytag brand dishwashers ("Dishwashers").   Plaintiffs' experts, one a former dishwasher engineer and the other a former flexible membrane switch designer and manufacturer, have identified that the Dishwashers suffer from defects affecting their control panels, detergent dispensers, and control panels, as well as pose a safety concern. The repair costs outstrip the purchase price in as little as two repair attempts, or cost up to ten times the purchase price to keep the Dishwasher operational throughout their useful life. Worse yet, Whirlpool replaces the defective parts with other defective parts while expressly denying the existence of problems to inquiring consumers.   While this conduct alone is unfair, deceptive, fraudulent, unethical, unscrupulous, and immoral, what makes it more so is that Whirlpool sells the Dishwashers knowing that they pose a safety concern – i.e. short circuits in the detergent dispenser solenoids create a risk of fire.

Defendant's motion relies on ignoring express allegations of the First Amended Class Action Complaint ("FAC"), misconstruing others, misstating the law and failing to distinguish between point-of-purchase and post-purchase consumer rights, repeatedly referring to the FAC as a "kitchen sink."   Whirlpool's motif is apt on one point as the kitchen sink is all consumers are left with after their Dishwashers repeatedly fail of their essential purpose.

Plaintiffs Kristian Apodaca ("Apodaca") and Bruce Kaleita ("Kaleita") (collectively ("Plaintiffs")) both allege particularized point-of-purchase deception and plausible unfair conduct, and Apodaca additionally alleges plausible claims for breach of express and implied warranty.   Apodaca's states actionable omission claims in the absence of a safety concern because the alleged defects manifested during Apodaca's warranty period.   Even if a safety concern were required to plead a claim under the Cal. Bus. & Prof. Code §17200 *et seq.* ("UCL") and Cal. Civ. Code § 1750 *et seq.* ("CLRA"), which it is not, Apodaca has stated one and its

1   nexus to the dispenser defect. Moreover, a safety concern would not be required for
2   an omission claim under Cal. Bus. & Prof. Code § 17500 ("FAL") or common law
3   fraudulent concealment under Whirlpool's own authority.  Likewise, Kaleita has
4   standing under a diminished value theory and has sufficiently alleged omissions
5   claims under the Florida Deceptive and Unfair Trade Practices Act, Fla. Sta. Ann. §
6   501.201 *et seq.* ("FDUTPA"). As to his common law claim for fraudulent
7   concealment, he has standing based on diminished value, has sufficiently alleged a
8   duty to disclose, and the economic loss doctrine is inapplicable.

9     Whirlpool spent hundreds of millions of dollars over a decades-long national
10  advertising campaign convincing consumers that its appliances did not require
11  frequent and costly repairs. While it would have this Court believe that it merely
12  wasted its money because its message was meaningless, the reality is that an
13  appliance brand's repair history is an objectively verifiable fact, the
14  misrepresentation of which is likely to mislead a reasonable consumer.

15    Apodaca alleges both materials and design defects, thereby plausibly alleging
16  express and implied warranty claims under the Song Beverly Consumer Warranty
17  Act ("SBA") and Magnuson-Moss Warranty Act ("MMWA").  Whirlpool never
18  "corrected" the defects as promised.  Also, unsafe Dishwashers that would not pass
19  industry standards and are unfit for their ordinary purpose are unmerchantable.

20          **STATEMENT OF FACTS**

21    Apodaca experienced three failures with his Dishwasher and had to replace
22  two control panels, the detergent dispenser assembly, and related components. ¶¶
23  19-21 (all paragraph references are to the FAC). Whirlpool had three reasonable
24  attempts at repair, but was unable to correct the defects and conform the Dishwasher
25  to its express and implied warranties. *Id.* Apodaca's Dishwasher is inoperable. ¶ 24.
26  Kaleita's Dishwasher experienced a failure of the detergent dispenser assembly,
27  control board, and control panel. ¶ 32.  Given that the cost to repair was greater than

28

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' FAC

1  a new dishwasher (¶ 117), and upon learning the truth of the futility of repair, he
2  purchased a new Dishwasher. ¶ 34.

3      The Dishwashers are plagued by excessive moisture coming into contact with
4  electrical components. As to the control panel, upon its first day of operation,
5  moisture infiltrates the silver traces resulting in malfunctioning, and ultimately,
6  failure as a result of open and/or short circuits. ¶¶ 55-73. As to the detergent
7  dispenser and control board, moisture is allowed to enter the solenoid (¶¶78-79)
8  causing a short circuit path that overloads the control board, allowing the solenoid
9  to draw too much energy and thereby creating a fire hazard. ¶¶ 80-88.

10     Whirlpool had superior knowledge of these defects that was not reasonably
11 accessible to Plaintiffs (¶¶ 112, 142, 146-158) and actively concealed their
12 existence.  ¶¶ 22, 142(B), 158-160, 282-292; *see also* FAC Comment[1] # 9, 15, 18,
13 19, 20, 22, 40, 42, 49, 67.[2]  Also, Whirlpool misrepresented that the Dishwashers
14 would not require frequent repairs, an objective characteristic that Plaintiffs and
15 other consumers believed. ¶¶ 15, 29, 36-54; FAC Comments 12, 24, 31, 34, 37, 40,
16 43, 51, 52, 55, 58, 63.   Under warranty, Whirlpool would attempt futile and
17 unreasonable repairs with parts it knew were defective. ¶ 71, 97, 124, 167, 182.

18                    **STANDARD OF REVIEW**

19     A complaint survives a motion to dismiss under Rule 12(b)(6) if it contains
20 "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*
21 *Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007).  "The plausibility standard is
22 not akin to a 'probability requirement,' but it asks for more than a sheer possibility
23 that a defendant has acted unlawfully."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962,
24 969 (9th Cir. 2009), citing, *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949
25 (2009).   The Court must accept all factual allegations as true and draw all

26
27 [1] "FAC Comment" refers to consumer comments beginning on page 36 of the FAC.
   [2] Defendant attempts to introduce facts outside the FAC that the Dishwashers are
28 "failsafe," "melting is different from igniting," and liquid rinse aid is different from
   moisture. MTD at 7-8.  The Court should disregard these factual assertions.

reasonable inferences in favor of the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005). Because the plaintiff is the master of the complaint, the Court should not involve itself in tampering with the complaint absent a strong reason for doing so. *Lazar v. Trans Union LLC,* 195 F.R.D. 665, 668 (C.D. Cal. 2000). "The presence of factual disputes does not render the claims inadequately pled for purposes of" a 12(b)(6) motion. *Astiana v. Ben & Jerry's Homemade, Inc.*, C 10-4387 PJH, 2011 WL 2111796 at *6 (N.D. Cal. May 26, 2011). Other than judicially noticeable facts, "the court may not consider material outside the pleading (e.g., facts presented in briefs, affidavits, or discovery materials)." *Warren v. Fox Family Worldwide, Inc.*, 171 F. Supp. 2d 1057, 1062 (C.D. Cal. 2001) *aff'd,* 328 F.3d 1136 (9th Cir. 2003).

"Where the claim is one of fraud by omission… the pleading standard is lowered on account of the reduced ability in an omission suit 'to specify the time, place, and specific content' relative to a claim involving affirmative misrepresentations." *In re Apple & AT & TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1310 (N.D. Cal. 2008); *Ward v. IPEX, Inc.*, CV-08-6370-VBF, 2009 WL 2634842, at *2-3 (C.D. Cal. Feb. 4, 2009). Heightened pleading requirements do not apply to allegations of knowledge, intent, or "other conditions of a person's mind." *Kowalsky v. Hewlett-Packard Co*., 2011 U.S. Dist. LEXIS 89379, at *8-9 (N.D.Cal. Aug. 10, 2011). *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1138, 1144 (N.D. Cal. 2010) *order vacated in part on reconsideration,* 771 F. Supp. 2d 1156 (N.D. Cal. 2011). And "whether a business practice is deceptive will usually present a question of fact and therefore dismissal… will only be appropriate in 'the rare case.'" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

## ARGUMENT

I.   **PLAINTIFFS SUFFICIENTLY ALLEGED THEIR POINT-OF-PURCHASE CONSUMER PROTECTION AND FRAUDULENT CONCEALMENT CLAIMS UNDER RULE 9(b)**

The CLRA is to "be liberally construed… to protect consumers… and to provide efficient and economical procedures." Cal. Civ. Code § 1760; *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 949 (2002); *Vasquez v. Superior Court*, 4 Cal. 3d 800, 808 (1971)("[p]rotection of unwary consumers from being duped by unscrupulous sellers is an exigency of the utmost priority."). "The UCL reflects the Legislature's intent to discourage business practices that confer unfair advantages in the marketplace to the detriment of both consumers and law-abiding competitors." *Rose v. Bank of Am., N.A.*, 159 Cal. Rptr. 3d 693, 699 (Cal. 2013). Similarly, "[b]y enacting the FDUTPA, the legislature clearly intended to establish a new cause of action for the benefit and protection of the consuming public." *Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*, 693 So. 2d 602, 606 (Fla. Dist. Ct. App. 1997).

### a. UCL "Fraudulent" Business Practices, CLRA, and FAL

#### i. Omission Claims

Defendant misconstrues California law and the facts and its argument fails because: 1) a safety-related defect is not required to plead an omissions claim under California law whether the defect manifest in or outside warranty; 2) Apodaca's defects manifested during the warranty period, as such no safety related defect is required; 3) if a safety defect were required to state a claim, the FAC is sufficient; and 4) Plaintiffs satisfy the relevant *Judkins* factors.

A claim for omission is actionable where the "omission [is] contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1094 (N.D. Cal. 2007)(citation omitted). Under California law, there are four circumstances ("*Judkins* factors") under which a failure to disclose can constitute fraud or deceit:

> (1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FAC

1  plaintiff; and (4) when the defendant makes partial representations that are

2  misleading because some other material fact has not been disclosed.

3  *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255 (2011), reh'g denied (Dec.

4  15, 2011), as modified (Dec. 28, 2011), review denied (Feb. 15, 2012) *citing*

5  *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997). "Omitted information is

6  material if a plaintiff can allege that, 'had the omitted information been disclosed,

7  one would have been aware of it and behaved differently.'" *Ehrlich v. BMW of N.*

8  *Am., LLC*, 801 F.Supp.2d 908, 916 (C.D.Cal.2010) (quoting *Mirkin v. Wasserman*, 5

9  Cal.4th 1082, 1093, 23 Cal.Rptr.2d 101, 858 P.2d 568 (1993)). "Materiality is

10 viewed from the perspective of the reasonable consumer." *Ehrlich*, 801 F.Supp.2d at

11 916; s*ee also Mui Ho v. Toyota Motor Corp.*, 12-2672 SC, 2013 WL 1087846, at *8

12 (N.D. Cal. Mar. 14, 2013)("the costs associated with continually repairing

13 problematic headlamps" considered material). Plaintiffs plausibly plead materiality.

14 ¶¶54, 143-145.

15    **A safety defect is not required to plead an omission claim.** In support of its

16 safety-concern argument, Whirlpool relies entirely on federal (mainly unpublished)

17 cases interpreting California law. MTD at 16.  As this Court has recognized, "[i]t is

18 well-established that where, as here, a federal court sits in diversity jurisdiction, the

19 court must follow substantive 'state law as announced by the highest court of the

20 State,' even when 'the application of a federal statute is involved.'" *Bruno v.*

21 *Eckhart Corp.*, 280 F.R.D. 540, 545 (C.D. Cal. 2012).   "[A] federal court is

22 obligated to follow the decisions of the state's intermediate appellate courts where

23 there is no convincing evidence that the state supreme court would decide

24 differently." *Bills v. U.S. Fid. & Guar. Co.*, 280 F.3d 1231, 1234 n. 1 (9th Cir.

25 2002).

26    In a thorough analysis, the Honorable David O. Carter of this Court recently

27 opined that "[t]his Court is skeptical that *Wilson* accurately interpreted California

28 law when it held that "California federal courts have generally interpreted [the

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' FAC

California case] *Daugherty* as holding that '[a] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue.'" *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 489 (C.D. Cal. 2012) *leave to appeal denied*, 13-80000, 2013 WL 1395690 fn. 9 (9th Cir. Apr. 1, 2013)(citations omitted)( *"Tait II"*). Indeed, the requirement that omissions claims under the UCL, FAL, and CLRA implicate safety concerns is wholly foreign to California jurisprudence.    The Ninth Circuit's decision in *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1138 (9th Cir. 2012), upon which Whirlpool primarily relies, is the unfortunate result of a growing line of conflicting decisions handed down by federal courts in the wake of the Class Action Fairness Act and *Daugherty*. *Daugherty* is now the center of a split of authority among lower federal courts. That split is authoritatively resolved only by California's highest court. *See* Cal. R. Ct. 8.548(a).

*Daugherty's* actual holding is limited and quite simple.  The plaintiff did not adequately plead a CLRA omission claim under long-established principles of California law – "to be actionable the omission must be [1] contrary to a representation actually made by the defendant, or [2] an omission of fact the defendant was obliged to disclose." *Id.* at 835 (citing *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30 (1975)).  As for the first prong, the court held that "no representation is alleged relating to the [defendant's] engine, which functioned as warranted.  Accordingly, no claim has been stated." *Id.*  As to the second prong, the court rejected plaintiff's only argument – that the defendant was "bound to disclose" the defect because it created an "unreasonable risk" of harm (*id.* at 836) because the complaint was "devoid of factual allegations showing any instance of physical injury or any safety concerns posed by the defect." *Id.*  The court's analysis of the UCL claim was the same. *Id.* at 837-38.

Importantly, nowhere does *Daugherty* hold or even opine in dicta that the proof of a safety risk was the only way to establish a duty to disclose under CLRA

or UCL claims for omissions. *See id, passim; see also Tait II*, at 488 ("***Daugherty itself says nothing about a general rule rejecting a broad obligation to disclose under the CLRA.***")(emphasis added.)

The court was merely responding to plaintiff's argument that she alleged a duty to disclose.  As such, *Daugherty* did not create new law, nor did it interpret existing law to include a "safety concern" element.[3]  And it could not, since nothing in the language of the CLRA or UCL does so. *See* Cal. Bus. & Prof. Code 17200 *et seq*. and Cal. Civ. Code ¶ 1750 *et seq*.

Despite the fact that *Daugherty* did not make new law, misinterpretation by California federal courts has caused a split.  The post-*Daugherty* split can traced back to two decisions, *Falk v. General Motors Corp.*, 544 F. Supp 2d 1088 (N.D. Cal. 2007) and *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964 (N.D. Cal. 2008), aff'd 322 Fed. Appx. 489 (9th Cir. 2009), which have become leading cases in the wake of *Daugherty*.[4]  Both *Falk* and *Oestreicher* recognized that *Daugherty* did not explicitly make proof of a safety risk an element in an omissions case.  *Falk* explains (consistent with *Daugherty*) that a duty to disclose may exist in a situation not involving safety risks, such as "when the defendant had exclusive knowledge of material facts not known to the plaintiff" and "when the defendant actively conceals a material fact from the plaintiff." *Id*. at 1095 (quoting *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997)).  In a footnote, *Falk* pointed out that "the risk of inadvertent speeding, driving at unsafe speeds, and accidents" posed by faulty speedometers merely "**strengthen[ed]**" plaintiffs' omission claim – not that a safety risk was an essential element of the omissions claim under the CLRA or UCL.  *Id*.

---

[3] Notably, *Daugherty*'s authors did not originally consider the opinion important enough for publication.  It was published only upon Honda's request. http://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=2&doc_id=1125059&doc_no=B186402).

[4] The unpublished affirmance addressed the *Daugherty* question in a single sentence. 322 Fed. Appx. at 493 ("A manufacturer' duty to consumers is limited to its warranty obligations absent an affirmative misrepresentation or safety issue." (citing *Daugherty*)). *Daugherty* did not go so far.  In any event, the affirmance is "not precedent." 9th Cir. R. 36-3(a).

8

at 1096 n * (emphasis added).  This footnote, however, has led other federal courts to read into *Falk* a safety-defect limitation that the case did not create.

*Oestreicher* is one such decision.  The *Oestreicher* court recited the same standard as *Falk*, but then went too far, holding in effect that the only facts manufacturers are obligated to disclose are those relating to safety (*id.* at 969-73) – and declining to impose any duty on a manufacturer to disclose any form of "latent nonsafety related defect" in their product. *Id.* at 973. Yet, nothing in *Daugherty* itself directly supports this holding, and *Oestreicher* never states that it does. *Oestreicher* misread *Falk* and opined "the safety consideration was integral to the court's finding that the non-disclosed information was material." *Id.*  at 971 (citing *Falk*, at 1096).  *Oestreicher* failed to recognize that the safety concerns in *Falk* merely "strengthened the claim," and were not an essential element of the claim. *Falk*, at 1096, n*. *Oestricher's* flaws notwithstanding, the disparity between *Oesteicher* and *Falk* has caused a lower federal court split.[5]

Notably, no California decision has ever read a safety element into *Daugherty*. Most recently, a California state court upheld a product defect omission claim where, as here, a manufacturer concealed a defect that existed at the time of sale and that adversely affected the primary function of the product.    *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255-259 (2011), reh'g denied (Dec. 15, 2011), as modified (Dec. 28, 2011), review denied (Feb. 15, 2012).  In *Collins*, the court reviewed an appeal from judgment on the pleadings in favor of the manufacturer. *Collins*, 202 Cal. App. 4th at 252.  The claims involved no safety issue. *Id. Collins* held that the plaintiff had sufficiently alleged an CLRA omission claim under the second and third *Judkins* factors.  *Id.* at 255-56 (citing *Limandri*, 52

---

[5] 1) Following *Falk* - *see, e.g., Baba v. Hewlett-Packard Co.*, 2010 WL 2486353, *4 (N.D. Cal. 2010); *Bruce v. Harley-Davidson, Inc.*, 2010 WL 3521775, *7 & n.5 (C.D. Cal. 2010); *In re Sony Vaio Computer Tracpad Litig.*, 2010 WL 4262191, *4-*5 (S.D. Cal. 2010); *Montich v. Miele USA, Inc.*, 2012 WL 1005329, *9 & n.10  (D.N.J. Mar. 27, 2012); 2) Following *Oestreicher* - *see*, e.g., *Mlejnecky v. Olympus Imaging Am. Inc.*, 2:10-CV-02630 JAM, 2011 WL 1497096, at *3 (E.D. Cal. Apr. 19, 2011).

Cal.App.4th at 326 and *Falk*, 496 F. Supp.2d at 1094-95). Consistent with *Judkins* and the long-established definition of "materiality" under California law, the court stated the rule that "[i]n the CLRA context, a fact is deemed 'material,' and obligates an exclusively knowledgeable defendant to disclose it, if a "reasonable [consumer]" would deem it important in determining how to act in the transaction at issue." *Id.* at 256. (emphasis added). Its thorough recitation of California law does not include a safety concern element. *Id.* In distinguishing *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255 (2006), the court observed, consistent with *Falk*, that a safety hazard is but a mere example of material fact, not an element of an omissions claim. *Id.* at 257 (opining that the "composition of the exhaust manifolds was an insignificant matter" because their composition was never misrepresented, did not amount to a breach of contract, and were not otherwise contrary to consumers' expectations or assumptions).[6] The court's UCL analysis was similar. *Id.* at 258-59. Therefore, no California State court has required that CLRA and UCL omission claims plead a safety related defect; adhering to *Wilson* would "produce an absurd result in violation of *Erie* doctrine." *Tait II*, at 489 fn. 9. For these reasons, the cases Defendant cites are inapposite.[7]

   *Wilson* is also distinguishable on the facts as the plaintiffs failed to sufficiently allege that the defendant was aware of the defect at the time of selling the product, which Plaintiff Apodaca has alleged in spades here. *Wilson*, 668 F.3d at 1137; ¶¶ 109, 142,146-163, 200, 225, 240, 241, 283. Also, unlike this case, the plaintiffs in *Wilson* only experienced failure outside their warranty period (*id.* at 1141), as such, Plaintiff is not attempting "an end-around the warranty laws." *Collins*, 202 Cal. App. 4th at 257.[8] Lastly, unlike the plaintiffs in *Wilson* (*Wilson* at

---

[6] *See also*, *Marsikian v. Mercedes Benz USA, LLC*, 2009 WL 8379784 at *5 (C.D. Cal. May 4, 2009) ("**An example of a material fact that *Daugherty* emphasized is an unreasonable safety risk**.") (emphasis added) (citing *Daugherty*, at 836).

[7] As to the FAL, none of the cases *Whirlpool* cites extend a "safety concern" requirement to the FAL. *See also Tait*, 289 F.R.D. at 488 fn. 7.

[8] *Vitt v. Apple Computer, Inc.*, 469 F. App'x 605, 608 (9th Cir. 2012) is distinguishable for the same reasons. Plaintiffs allege more than wear-and-tear. ¶ 73.

1144), Plaintiffs here have alleged a nexus between the design defect and the safety hazards. See p. 12, *infra*.

*Wilson*'s analysis of California law is incomplete and there is substantial evidence that the California Supreme Court would rule differently. As discussed above, the *Collins* court did not include a safety element in its recitation of California law. *Collins*, at 256-57. *Wilson* does not explain why the CLRA and UCL, statutes expressly enacted to protect consumers and make proving fraud less onerous, should have more limited application and greater proof burdens than California common law. See, *McAdams v. Monier, Inc.*, 182 Cal. App. 4th 174, 191 (2010)(observing consumer protection statutes require less vigorous proof burdens than common fraud). To limit a manufacturer's duty to disclose to safety hazards instead of any material fact would contravene the statutory framework of the UCL and CLRA. So while *Wilson* discussed the policy considerations raised by federal courts regarding term limits on warranties and how a contrary reading of *Daugherty* would effectively make warranties last "for the 'useful life'" of the product (*Wilson*, at 1141-42)(emphasis added), it ignored the policies underlying consumer protection law. Moreover, the court failed to recognize that California law already holds that a defendant can be held liable for a product's substantially certainty of failure during its "useful life." *See Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th 908, 918 (2001); *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 534, 537 (C.D. Cal. 2012) *leave to appeal denied,* 12-80138, 2012 WL 7152289 (9th Cir. Nov. 9, 2012) ("*Keegan II*"); *see also, Hewlett-Packard Co. v. Superior Court*, 167 Cal. App. 4th 87, 96 (2008)(doubting that *Daugherty* stands for the proposition that a claim is barred if the defect does not manifest during the term limits of the express written warranty, *citing Hicks*, 89 Cal.App.4th at 918). For these reasons, *Wilson*, and other federal cases following the misinterpretation of *Daugherty* incorrectly apply California law, are distinguishable and there is convincing evidence that the California Supreme Court would rule differently.

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' FAC

1    **The omission claims are actionable in the absence of a safety concern**

2    **because Plaintiff Apodaca's defects manifested during the warranty period** (¶¶

3    19-20). *Wilson*, 1143 & n. 1 (distinguishing *Baba v. Hewlett-Packard Co.*, 2010 WL

4    2486353 at *4 (N.D. Cal. June 16, 2010) and *Tietsworth v. Sears, Roebuck & Co.*,

5    720 F. Supp.2d 1123 (N.D.Cal. 2010) as not requiring a safety concern because

6    plaintiffs in those cases began experiencing problems during the express warranty

7    period); *see also In re NVIDIA GPU Litig.*, 2009 WL 4020104 at * 10 (N.D. Cal.

8    Nov. 19, 2009); *Donahue v. Apple*, 871 F.Supp.2d 913, 926 (N.D. Cal. 2012); *Tait

9    II*, at 488; *Decker v. Mazda Motor of Am., Inc.*, SACV 11-0873 AG MLGX, 2011

10   WL 5101705, at *4 (C.D. Cal. Oct. 24, 2011). The weight of authority holds that

11   regardless of whether they relate to safety, Apodaca's omission claims are

12   actionable.

13   **Plaintiffs allege a plausible safety defect.** Even if California law could be

14   correctly interpreted to require a safety defect, Plaintiffs have satisfied their minimal

15   burden of showing a "plausible prospect of a safety problem." *Grodzitsky v. Am.

16   Honda Motor Co., Inc.*, 2:12-CV-1142-SVW-PLA, 2013 WL 2631326, at *6 (C.D.

17   Cal. June 12, 2013)(finding manufacturer's failure to disclose car window regulator

18   defect sufficiently plead where plaintiff did not suffer injury). Plaintiffs need only

19   allege sufficient facts to show a "safety concern" and a "sufficient nexus" between

20   the safety concern and the alleged defect. *Wilson*, at 1141, 1144.  The plaintiff need

21   not suffer personal injury, or identify others who have suffered personal injury.

22   *Keegan v. Am. Honda Motor Co., Inc.*, 838 F. Supp. 2d 929, 943 (C.D. Cal.

23   2012)("*Keegan I*")("The Court is not persuaded by *Tietsworth* or *BMW's* arguments

24   that [p]laintiff must plead that consumers have been injured by the alleged

25   unreasonable safety risk."). Apodaca's purchase of a similar dishwasher is sufficient

26   to confer standing for a claim based on point-of-purchase deception resulting in

27   diminished value. The fact that he also experienced a detergent dispenser failure

28   three months into owning the Dishwasher merely strengthens his claim. *In re Toyota*

1    *Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab.*
2    *Litig.*, 754 F. Supp. 2d 1145, 1161 (C.D. Cal. 2010)("*In re Toyota*")(finding that
3    "experiencing a[ ] defect is not required for standing"); *Seifi v. Mercedes-Benz USA,*
4    *LLC*, C12-5493 TEH, 2013 WL 2285339, at *7 (N.D. Cal. May 23, 2013)(defect
5    causing vehicle to stall established safety concern where neither plaintiff
6    experienced stall). Similar incidences of moisture coming into contact with
7    electrical components have been treated as safety concerns. *See* Plaintiffs' Request
8    for Judicial Notice ("RFJN") Ex. 1.

9         Plaintiffs' allegations provide more than just a plausible inference of a safety
10   concern. Plaintiffs plead six pages of facts and photographs detailing the specific
11   defect and its nexus to the stated safety concern. ¶¶ 74-92. The FAC thoroughly
12   explains how the detergent dispenser operates (¶¶ 74-77); how the defect manifests
13   itself (¶¶ 78-83); and the nexus between the defect and the safety concern it poses
14   (¶¶ 83-92). Plaintiffs also allege why the Dishwashers fail industry safety standards
15   for switches and solenoids. ¶ 112. Defendant's weak attempt to dismiss the safety
16   claim is premised on ignoring these allegations of the FAC. The FAC reads like an
17   expert report because it is based on expert analysis of failed Dishwashers. To ask
18   for more at this stage of the case would be to convert the motion to dismiss into a
19   motion for summary judgment.

20        Defendant's attempt to trivialize the safety concern fails. Not surprisingly,
21   Whirlpool side-steps the inconvenient fact that it recalled millions of nearly
22   identical dishwashers involving a nearly identical risk of fire from moisture
23   contacting internal wiring. ¶¶ 89-91. It's only attempt to distinguish that event from
24   the present case is to speciously argue that moisture from the Dishwasher does not
25   pose the same risk of short circuiting electrical components and house fires as liquid
26   rinse aid – both of which are water-based liquids. Even if this were a straight-faced
27   point of contention by Whirlpool, it is not appropriate for resolution on a motion to
28   dismiss. Similarly, Defendant's factual assertions that "melting is different from

1   igniting" (MTD at 7) and reference to "Whirlpool's 'failsafe' design" (*id*) are an

2   inappropriate attempt to introduce unsupported facts.  A Dishwasher that repeatedly

3   fails, and short circuits during its useful life can hardly be described as "failsafe."

4       **Plaintiffs Satisfy the *Judkins* Factors.**   Plaintiffs allege that Defendant

5   deceived them under the second through fourth *Judkins* factors. Whirlpool pays

6   mere lip service to the second factor and does not even challenge Plaintiffs'

7   pleading of the third factor (MTD at 17:22-18:2), as such the omissions claims

8   stand. *Tait II*, at 481 (Defendant's argument…fails because it does not address *all*

9   the *Judkins* circumstances through which Plaintiffs *might* prove their CLRA

10  claim")(emphasis in original).

11      **Exclusive Knowledge.** Plaintiff pleads specific facts of Whirlpool's

12  exclusive and superior knowledge that was not reasonably accessible to Plaintiffs

13  (¶¶ 142(A); 146-147), including conferences with the suppliers of the defective

14  parts (¶¶ 148-151, 155); Whirlpool's testing and analysis of production and field

15  units (¶¶ 112, 142(A), 152-154);  its warranty claims database and call center

16  records  (¶155);  consumer  complaints,  including  those  submitted  through

17  Whirlpool's own Maytag Facebook page which Whirlpool actively monitored and

18  through which it acknowledges and responds to consumer complaints (FAC. pp. 36-

19  69; ¶156); direct emails of control panel and detergent dispenser failure to its

20  maytag.digital@maytag.com email (¶ 157); sales figures of replacement control

21  panels as compared to other replacement parts, including a significant four-month

22  backorder of replacement control panels (¶ 158); and the recall of similar

23  dishwashers in the past based on similar defects (¶¶ 89-92, 161).  These facts satisfy

24  the second *Judkins* factor. *Tait v. BSH Home Appliances Corp.*, SACV 10-00711

25  DOC, 2011 WL 3941387, at *2 (C.D. Cal. Aug. 31, 2011)("*Tait I*")(second factor

26  satisfied where "[p]laintiffs aver that Defendant, both from first-hand experience

27  and consumer complaints, knew of the machines' defects"); *see also Mui Ho*, 2013

28  WL 1087846, at *8 (pre-release testing data, early consumer complaints to dealers,

1  dealership repair orders, testing in response to complaints and "other internal
2  sources" satisfy exclusive knowledge factor); *see also Belle v. Chrysler Grp., LLC*,
3  SACV 12-00936 JVS, 2013 WL 949484, at *1 (C.D. Cal. Jan. 29, 2013)(Selna,
4  J.)(similar); *In re Toyota*, at 1174 (similar); *Horvath v. LG Electronics Mobilecomm
5  U.S.A., Inc.*, 3:11-CV-01576-H-RBB, 2012 WL 2861160, at *9 (S.D. Cal. Feb. 13,
6  2012)("LG Electronics had notice of the defects based on consumer postings on LG
7  Electronics' website, and Plaintiff Horvath alleges that LG Electronics' responses to
8  the postings suggest LG Electronics had knowledge of the content of those
9  postings.").[9]

10      **Active Concealment.** Plaintiffs allege Whirlpool failed to disclose the
11  material information at the point of purchase (*See Tait I*, at *2), expressly and
12  repeatedly denied the existence of defects in the Dishwashers' control panels and
13  detergent dispensers to Apodaca and Dishwasher owners who spoke directly to
14  Whirlpool, and induced the purchase of replacement parts and extended service
15  contracts. ¶¶ 22, 142,158-160, 282-292; *see also* FAC Comment # 9, 15, 18, 19 ("I
16  was told they had no record of any complaints"), 20 ("Maytag told me there were no
17  reports of problems"), 22, 40, 42 ("she said she never heard of the problem"), 49,
18  67. *Mui Ho*, at *9 (active concealment supported by citing "other consumers'
19  similar complaints"). "Plaintiffs' allegations that [manufacturer] repeatedly denied
20  the existence of the alleged [] defect [] are sufficient to demonstrate active
21  concealment." *In re Toyota*, at 1192, *citing Tietsworth*, 720 F. Supp.2d at 1135-36
22  (active concealment sufficiently alleged where manufacturer denied existence of
23  defect to complaining consumers).

24
25

26  [9] Defendant's reliance on *Taragan v. Nissan N. Am., Inc.*, C 09-3660 SBA, 2013 WL
27  3157918, at *6 (N.D. Cal. June 20, 2013) is misplaced as the sole allegation of
    knowledge was "Nissan is in a superior position to know the facts about the quality
28  and nature of the Subject Vehicles." *Taragan* goes on to state that allegations of
    "pre-release testing data," like (¶¶ 142, 149-155), support a finding of knowledge.

15

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' FAC

1    **Whirlpool's Partial Representations.** Because the fourth *Judkins* factor

2  overlaps with the first prong for pleading an omission identified in *Daugherty*,

3  Plaintiffs refer the Court to Section I.(a).ii, *infra*, which establishes Whirlpool's

4  partial representations.

5                            **ii.  Misrepresentation Claim**

6    In     its     motion,     Whirlpool     erroneously     alleges     that     Apodaca's

7  misrepresentation-based claims are mere "puffery" and therefore not actionable. At

8  the pleading stage, the focus is on whether a plaintiff alleging deceptive advertising

9  could possibly show likelihood of deception. *Williams v. Gerber Products Co.,* 552

10  F.3d 934, 939 (9th Cir. 2008). "Although reasonableness can, in appropriate

11  circumstances, be decided as a question of law, 'California courts . . . have

12  recognized that whether a business practice is deceptive will usually be a question

13  of fact not appropriate for decision on [a motion to dismiss].'" *Yumul v. Smart*

14  *Balance, Inc.,* 733 F. Supp. 2d 1117, 1125 (C.D. Cal. 2010). As shown below, the

15  representations of the decades-long "Loneliest Guy - Maytag Repairman"

16  advertising campaign are actionable non-puffery. *In re Toyota,* at 1193; *See Coastal*

17  *Abstract Serv. v. First Am. Title Ins. Co.,* 173 F.3d 725, 731 (9th Cir.1999).

18    In its advertising campaign, Whirlpool continually reinforces the message

19  that Maytag brand appliances are so well engineered and reliable that they do not

20  require repairs or possess low failure/repair rates when compared with other brands

21  (hence the perennially lonely repairman). Through its message, Whirlpool cultivated

22  the expectation in consumers that Maytag appliances were "the most dependable"

23  *for the specific reason* that its appliances need no repairs or have comparatively low

24  repair rates. This legitimate expectation of infrequent repairs thus provided

25  consumers with a quantifiable standard to measure the truth of Maytag's

26  dependability statements. FAC ¶¶36-54. *C.f. Newcal Indus., Inc. v. Ikon Office*

27  *Solution,* 513 F.3d 1038, 1053 (9th Cir. 2008) (holding representations of "low

28  costs" and "flexibility" were puffery because they were not quantifiable). Thus,

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' FAC

such representations are non-puffery and objectively verifiable. In fact, Consumer Reports conducts surveys which quantifies the reliability of dishwashers by numerically ranking different brands[10] and relies upon repair history as a specific, measurable criterion for assessing reliability. *See* RFJN Ex. 2. Because of Defendant's decades-long advertising campaign, consumers reasonably judge the reliability of Dishwashers in similar fashion – by the frequency of required repairs. ¶¶51-53. Maytag brand owners verify Apodaca's argument. ¶¶155; FAC Comments 12, 24, 31, 34, 37, 40, 43, 51, 52, 55, 58, 63.

Indeed, representations of "dependability" that Maytag attempts to substantiate with quantifiable claims that its appliances require little to no repairs can be easily proved or disproved through discovery. *In re Toyota*, at 1193. Apodaca can and will present survey, anecdotal, and other evidence which demonstrates the high failure rate and unreliability of Dishwashers. Further, Apodaca will show that Whirlpool's advertising campaign is likely to mislead reasonable consumers into believing that Maytag Dishwashers do not require repeated repair of the same component in comparison to other brands. *See e.g.* ¶155; "The falsity of ... advertising claims may be established by testing, scientific literature, or anecdotal evidence." *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1361-62 (2003), *citing National Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc*. 107 Cal.App.4th 1336, 1348 (2003).

All of the cases Whirlpool cites involving puffery, were, unlike here, based upon claims that were not quantifiable, could not be objectively proven and did not involve a long-term advertising campaign. *See e.g. Long v. Hewlett-Packard Co.*, No. 06-02816 JO, 2007 WL 2994812 at *7 (N.D. Cal. July 27, 2007)("reliable mobile computing solution" that could "do more on the move"); *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HGTV Televisions Litig.*, 758 F.

---

[10] Under the incorporation by reference doctrine, Plaintiffs request the Court consider the "Consumer Reports: Brand Reliability Rankings" referred to at ¶54.

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FAC

1  Supp. 2d 1077, 1095 (S.D. Cal. 2010)("high quality" and "superior quality"). Thus,
2  Apodaca has sufficiently demonstrated that he could plausibly prove that a
3  reasonable consumer would be deceived by Maytag's "Loneliest Repairman"
4  advertising campaign.
5        Contrary to Whirlpool's assertions, Apodaca's misrepresentation-based
6  CLRA, UCL fraud and FAL claims are plead with particularity. For UCL, FAL, and
7  CLRA claims grounded in fraud, a plaintiff need only "show that members of the
8  public are likely to be deceived." *Williams*, 552 F.3d at 938. Apodaca properly
9  pleads that a reasonable consumer is likely to be deceived by the misleading and
10 deceptive "repair-free" misrepresentations Defendant makes. ¶¶36-54. Moreover,
11 because the FAC alleges a long-term advertising campaign, Apodaca is not required
12 "to plead with an unrealistic degree of specificity that the plaintiff relied on
13 particular advertisements or statements". *In re Tobacco II Cases*, 46 Cal. 4th 298,
14 328 (2009). A plaintiff is not even "required to allege that those misrepresentations
15 were the sole or even the decisive cause of the injury-producing conduct." *Id*. Thus,
16 Apodaca sufficiently pleads facts regarding the Maytag brand's decades-long
17 advertising campaign and his decision to purchase a Dishwasher based upon
18 Defendant's numerous representations of Maytag brand appliances being the most
19 durable and dependable and not requiring frequent repairs of the same components.
20 ¶¶14-15; 36-54, 138. In support of its argument, Whirlpool relies on cases which do
21 not plead decades-long advertising campaigns and thus are distinguishable from the
22 present case. MTD at 12-13. As such, Apodaca's misrepresentation-based claims are
23 properly plead with particularity under Rule 9(b).
           **b. UCL "Unlawful" claim**
24       Because Apodaca has stated violations of the CLRA and FAL, above, and
25 violation of the SBA and MMWA, below, he satisfies the unlawful prong of the
26 UCL. *See Rose v. Bank of Am., N.A.*, 159 Cal. Rptr. 3d 693 (Cal. 2013).
27
28

1

### c. FDUTPA Omissions Claims Under "Deceptive" Prong

2      "Florida courts have recognized that a FDUTPA claim is stated where the

3   defendant knowingly fails to disclose a material defect that diminishes a product's

4   value." *Matthews v. Am. Honda Motor Co., Inc.*, 12-60630-CIV, 2012 WL 2520675,

5   at *3 (S.D. Fla. June 6, 2012); *Keegan I*, at 959 (FDUTPA omission claim

6   actionable based on concealment of known defect). "A party asserting a deceptive

7   trade practice claim need not show actual reliance on the representation or omission

8   at issue." *Davis v. Powertel, Inc.*, 776 So. 2d 971, 973 (Fla. Dist. Ct. App. 2000);

9   *accord*, *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1282 (11th Cir. 2011). "The

10  [FDUTPA] focuses on whether an act is deceptive, not whether a defendant knew

11  that the allegedly violative conduct was occurring." *Gavron v. Weather Shield*

12  *Mfg., Inc.*, 819 F. Supp. 2d 1297, 1302 (S.D. Fla. 2011).

13      Kaleita has sufficiently alleged a deceptive omission claim with particularity.

14  ¶¶ 30-35, 127-163, 307-316. Defendant's arguments, for many of which Whirlpool

15  cites **no** authority, all fail. First, its particularity argument fails because Defendant

16  merely cites ¶ 312 and ignores the remainder of the FAC. MTD at 29. Second,

17  Whirlpool's standing argument under the deceptive prong fails for the same reasons

18  as under the unfair prong. *See* Section II, *infra*. Third, Whirlpool's reliance on

19  *Jovine v. Abbott Laboratories, Inc.*, 795 F. Supp. 2d 1331, 1335 (S.D. Fla. 2011) for

20  the proposition that "selling a defective product, 'in and of itself,' is not a deceptive

21  trade practice" (MTD at 30) is misplaced. *Jovine* involved infant formula tainted

22  with beetles that the U.S. Food and Drug Administration concluded posed no safety

23  concern and which **the manufacturer recalled with a <u>full refund</u> to consumers**.

24  *Jovine*, 795 F.Supp. 2d at 1335[11].    Furthermore, *Jovine* pled affirmative

25  misrepresentations and failed to allege the "what," "when" and "where" of Rule 9(b)

26  (*id*. at 1343, fn. 9), unlike the omissions Kaleita pleads with particularity here. ¶¶

27  127-163. *See also*, *Matthews v. Am. Honda Motor Co., Inc.*, 12-60630-CIV, 2012

28

---

[11] *See also* RFJN Ex. 3 (FDA infant-formula-recall press release and information).

WL 2520675, at * 3 (S.D. Fla. June 6, 2012)(distinguishing *Jovine*). Fourth, "a duty to disclose is not an element of FDUTPA." *Morris v. ADT Sec. Servs.*, 580 F. Supp. 2d 1305, 1310 (S.D. Fla. 2008). Whirlpool cites no authority to the contrary. Fifth, Whirlpool improperly seeks to incorporate by reference Kaleita's written warranty to suggest, without supporting authority, that an unremarkable written warranty in a user manual located inside a boxed Dishwasher somehow disclosed the severity of the Dishwasher's defects and safety problems at the point of purchase. MTD at 5 fn.1, 30.  Also, because the FAC never refers to Kaleita's written warranty, incorporation by reference is improper. *Knievel*, 393 F.3d at 1076.

Even if the warranty were considered and Whirlpool could get past the procedural unconscionability of the warranty's purported post-purchase "disclaimer," it changes nothing. *Rothstein v. DaimlerChrysler Corp.*, 8:05CV1126T30MSS, 2005 WL 3093573, at *2 (M.D. Fla. Nov. 18, 2005)(rejecting identical argument that "express warranty implicitly informed [p]laintiff that the braking components in his vehicle could fail at any time"); *see also Tait I*, at *3 ("The Use and Care Manuals were available to consumers only *after* they bought the machines.")(emphasis in original).  Therefore, Kaleita has sufficiently stated a claim for deceptive practices.

### d. Fraudulent Concealment

Defendant merely lumps common law fraudulent concealment in with the CLRA, FAL, and UCL arguments. Even assuming *Wilson* correctly applies the law as to the UCL and CLRA, like the FAL, it says nothing about common law fraudulent concealment.  It is well established that "a manufacturer of a product may be liable for fraud when it conceals material product information from potential users.  This is true whether the product is a mechanical heart valve or frozen yogurt." *Kahn v. Shiley, Inc.*, 217 Cal. App. 3d 848, 858 (1990)(analyzing common

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' FAC

law fraudulent concealment claim).[12] *Kahn* does not make a safety concern an element of a fraudulent concealment claim and *Oestreicher*, upon which Whirlpool relies, is in accord. *See Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 970 (N.D. Cal. 2008) *aff'd,* 322 F. App'x 489 (9th Cir. 2009)("Plaintiff argues that California law has no requirement of a safety hazard before a duty to disclose material facts about a product arises… this is correct with respect to common law.")

Plaintiff Kaleita has sufficiently alleged a claim for fraudulent concealment under Florida law and Whirlpool's arguments fail. First, Kaleita has standing to bring his fraudulent concealment claim for the same reasons he has standing to bring a FDUTPA deception claim: diminished value. *See* Section I.(c), *supra.* Second, Defendant focuses entirely on the detergent dispenser defect, while ignoring the control panel defect. MTD at 25. Kaleita sufficiently pleads Whirlpool's knowledge and concealment of both. ¶¶ 109, 142, 146-163, 283-288, 297, 302, 314.

Third, Whirlpool misstates Florida law, which is not materially different from California law. "The classic illustration of fraud is where one party having superior knowledge intentionally fails to disclose a material fact, which is not discoverable by ordinary observation." *Nessim v. DeLoache*, 384 So. 2d 1341, 1344 (Fla. Dist. Ct. App. 1980). Whirlpool does have a duty to disclose where "the other party does not have equal opportunity to become apprised of the fact[s]." *Ramel v. Chasebrook Const. Co.*, 135 So. 2d 876, 882 (Fla. Dist. Ct. App. 1961). This rule is analogous to the second *Judkins* factor under California law and is satisfied here. *See* pp. 14-15, *supra. See also*, *Cohen v. Nat'l City Mortgage*, 2:08-CV-00578-29DNF, 2009 WL 2436595, at *3 (M.D. Fla. Aug. 6, 2009)("Defendant's alleged nondisclosure of material facts coupled with plaintiffs' reliance on defendant's superior knowledge is sufficient to support a fraud claim under Florida law."). Furthermore, as Whirlpool

---

[12] Similarly, a real-estate seller has a duty to disclose any material fact that "would have a significant and measurable effect on market value." *Shapiro v. Sutherland*, 64 Cal. App. 4th 1534, 1544 (1998).

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' FAC

1  concedes (MTD at 26), where a defendant undertakes some representation, "he must

2  disclose the whole truth." *Ramel,* 135 So. 2d at 882; *Sherleigh Assocs. LLC v.*

3  *Windmere-Durable Holdings, Inc.,* 178 F. Supp. 2d 1255, 1270 (S.D. Fla. 2000).

4  This rule is analogous to the fourth *Judkins* factor and is also satisfied here. *See* p.

5  16, *supra.* Therefore, Kaleita has established a duty to disclose.

6         Fourth, Kaleita's fraudulent concealment claim is not barred by the economic

7  loss doctrine ("ELD") because the existence of a written warranty does not place

8  them in contractual privity (¶¶28-29).  *See Kaiser v. Depuy Spine, Inc.,* 8:12-CV-

9  2596-T35-AEP, 2013 WL 2006122, at *6 (M.D. Fla. May 14, 2013)(privity of

10 contract required to state claim under express and implied warranty under FL law).

11 As the leading case cited by Whirlpool points out, the ELD is applicable only where

12 "the parties are in privity." *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan*

13 *Companies, Inc.,* 110 So. 3d 399, 402 (Fla. 2013)(narrowing scope of ELD and

14 recognizing its unprincipled overexpansion); *Lehman Bros. Holdings, Inc. v.*

15 *Campbell,* 3:12-CV-259, 2013 WL 3479525, at *1-2 (E.D. Tenn. July 10,

16 2013)("economic loss rule does not apply because the parties are not in privity")

17 (applying *Tiara*).

18        For the same reason, Whirlpool's other two case are distinguishable. MTD at

19 27. More importantly, "[t]he economic loss rule has not eliminated causes of action

20 based upon torts independent of the contractual breach even though there exists a

21 breach of contract action." *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.,* 685 So.

22 2d 1238, 1239 (Fla. 1996).  Because breach of warranty relates to a defendant's

23 post-purchase conduct, it is independent of a fraudulent concealment action that

24 governs Whirlpool's point-of-purchase duty of disclosure of material facts, and thus

25 the ELD is inapplicable. *Tiara Condo. Ass'n,* 110 So. 3d at 402 (ELD does not bar

26 tort action where defendant breaches duty); *Freeman v. Sharpe Res. Corp.,* 6:12-

27 CV-1584-ORL-22T, 2013 WL 2151723, at *8 (M.D. Fla. May 16, 2013)(applying

28

*Tiara*). To interpret Florida law otherwise would create the absurd result of neither a remedy in tort or contract for remote purchasers.

## II.   PLAINTIFFS PLAUSIBLY ALLEGE UCL AND FDUTPA UNFAIR CONDUCT UNDER RULE 8(a)

California courts recognize a three-way split on the test for "unfair" conduct under the UCL.  *See W. v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780, 806 (2013), reh'g denied (Apr. 11, 2013), review filed (Apr. 26, 2013).   Plaintiff Apodaca pleads a violation of all three tests (¶¶ 177-185); defendant only challenges one. MTD at 14.  Florida "courts have found the existence of an unfair practice where such practice "offends established public policy and ... [where such] practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1264 (N.D. Fla. 2012)(citations omitted). Therefore, Florida overlaps with California as to one test.

Defendant again misstates the express allegations of the FAC (MTD at 14) as Plaintiffs' unfair claims are not based on "the failure to disclose a defect" (MTD at 14). *See* ¶¶ 115 (disclaiming fraud allegations as to unfair claims); *Vess*, 317 F.3d at 1104.  As to the balancing test, the injury is substantial because the Dishwashers pose a safety concern, the supposed energy-saving Dishwashers costing $350-$700 require frequent and expensive repairs costing approximately $3750 over their useful life (the cost of five to ten new Dishwashers), and Plaintiffs overpaid for them. ¶¶ 118, 122, 178. As one might expect, many consumers dispose of the Dishwashers after one or two repair attempts costing $250 or more each (or no attempt at all upon discovering the truth, like Kaleita (¶ 34)), resulting in an objectively unexpected, unreasonable, and unmerchantable actual useful life of 1-2 years and having to buy a new Dishwasher.[13]  Apodaca also alleges that there is no

---

[13] Whirlpool's cases are inapposite as both *Smith* and *Clemens* reviewed summary judgment, the defects manifested outside the warranty period, and unlike here, the relatively inexpensive "operational costs" did not shorten the useful life or equal ten

countervailing benefit to a Dishwasher that poses a safety concern, has a shortened useful life or could cost ten times its purchase price to keep operational through its expected useful life and that the injury was not reasonably avoidable. ¶¶ 123-124, 179-180.    Whirlpool's reference to availability of an "extended warranty" is inapposite as it would not have made a material difference to the injury as the FAC pleads that Whirlpool denies the existence of defects to its customers and unfairly and knowingly uses defective replacement components, nor does an extended warranty cure the safety concern. Lastly, any extended warranty is outside the FAC.

Plaintiffs both allege that Whirlpool's conduct of knowingly selling a defective Dishwasher that poses a safety concern and knowingly replacing defective parts with other defective parts while denying the existence of a defect to inquiring consumers, including Apodaca, is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers and without benefit. ¶¶ 22, 121, 125, 182, 302.  Plaintiffs' allegations are sufficient to establish unfair conduct. *See Horvath*, 2012 WL 2861160, at *10-11.

As to the tethering test, Whirlpool's violations of the policies underlying the SBA and CLRA are unfair.  *See Hartless v. Clorox Co.*, CIV. 06CV2705JAHCAB, 2007 WL 3245260, at *7 (S.D. Cal. Nov. 2, 2007)(SBA); *Mui Ho*, at *11(CLRA).[14]

Kaleita alleges diminished value (¶¶ 33-34, 304-305,312-313) and therefore has standing to assert a claim under the FDUTPA. *See Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1339 (S.D. Fla. 2009). Actual fire, let alone a safety concern, is not a necessary element of either a deceptive or unfair FDUTPA claim (*Matthews v. Am. Honda Motor Co., Inc.*, 12-60630-CIV, 2012 WL 2520675, at *2 (S.D. Fla. June 6, 2012)), and Whirlpool cites no authority for its assertion that Plaintiff

---

times the purchase price. *Smith v. Ford Motor Co.*, 462 F. App'x 660, 665 (9th Cir. 2011); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2008).
[14] Whirlpool's purported "public policy" favoring shoddy manufacturing is nonexistent. MTD at 14. The Court's 1965 decision in *Seely* (cited by *Hoey*) predates the enactment of the UCL, CLRA, SBA & MMWA and is otherwise distinguishable. *See Belle*, 2013 WL 949484, at *4.

24

1    Kaleita lacks standing. MTD at 28.  Also, Whirlpool's attempt to paint Kaleita's

2    FDUTPA claims as based in warranty also fails. *See Matthews*, 2012 WL 2520675,

3    at *3; *Rothstein v. DaimlerChrysler Corp.*, 8:05CV1126T30MSS, 2005 WL

4    3093573, at *2 (M.D. Fla. Nov. 18, 2005)("[manufacturer] ignores [p]laintiff's

5    allegation that [manufacturer] knew the [component] was defective at the time of

6    sale."). Therefore, Plaintiffs have plausibly stated their "unfair" claims.

7    ### III.   PLAINTIFF APODACA ALLEGES PLAUSIBLE WARRANTY CLAIMS UNDER RULE 8(a)

8

9    #### a. Express Warranties

     ##### i. Written Warranty

10

11   Whirlpool's two arguments are based on misstating and ignoring the

     allegations of the FAC and misconstruing California law. MTD at 18-22. First,

12   while Whirlpool would have this Court believe that the defects manifested outside

13   the warranty period, the FAC expressly pleads manifested failures during the

14   warranty on period on two separate occasions (¶¶ 19-20), in addition to a manifested

15   failure outside the warranty period (¶21).

16   Second, Apodaca alleges **both** materials defects under express warranty (¶¶ 3,

17   73, 96, 97, 233, 275) and design defects under implied warranty (¶¶ 3, 65, 73, 88,

18   112, 152, 162, 178, 298). Whirlpool conflates "design" with "materials." "The Ninth

19   Circuit disfavors this type of mingling of issues, and requires that courts accept

20   plaintiffs' theory of relief as it is stated." *Keegan II*, at 530 *citing United Steel,*

21   *Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union,*

22   *AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010); *see also*

23   *In re Toyota*, at 1181 (express warranty claim alleging materials defects sufficient

24   even where plaintiff also alleges design defects).

25   Third, "[t]he substantive requirements of California law, as articulated in

26   *American Honda Motor Co.* and *Hicks,* do not require proof of a current

27   malfunction to assert breach of express warranty claims, but do require proof that

28   the defect is 'substantially certain to manifest in a future malfunction.'" *Keegan II*,

1  at 534 (citing cases); *see also Long v. Hewlett-Packard Co.*, 316 F. App'x 585, 586

2  (9th Cir. 2009). Apodaca pleads substantial certainty of failure. ¶¶ 6, 55-88, 257.

3          Whirlpool ignores Apodaca's SBA allegations that Whirlpool did not

4  "correct defects" after a reasonable attempt at repairs as required under the written

5  warranty and the SBA (¶¶ 18-22, 71, 73, 80, 97, 124, 247). "[T]he [Song-Beverly]

6  Act is manifestly a remedial measure, intended for the protection of the consumer; it

7  should be given a construction calculated to bring its benefits into action."

8  *Robertson v. Fleetwood Travel Trailers of California, Inc.*, 144 Cal. App. 4th 785,

9  800-801 (2006)(rejecting argument that attempted repair absolved SBA rights);

10  *Donlen v. Ford Motor Co.*, 217 Cal. App. 4th 138, 149 (2013)(product requiring

11  repair outside warranty is evidence in-warranty repair breached warranty) *citing*

12  Cal. Civ. Code 1792.3; *see also*, *In re Toyota*, at 1178 (holding allegation that

13  purported repairs in warranty were themselves defective sufficient to fall within the

14  scope of the written warranty); *Horvath,* at *6 (S.D. Cal. Feb. 13, 2012)(allegations

15  of breach sufficient where plaintiffs received replacement telephones that were

16  afflicted with the same defects). Instead of replacing the Dishwasher or reimbursing

17  Apodaca as required by § 1793.2(d)(1), Whirlpool attempted to charge him more

18  money. ¶ 21-23.

19          Defendant's cases are inapposite as they did not involve allegations of defects

20  in materials. Also, in *Daugherty, Hovsepian,* and *Merchante* the alleged defects did

21  not manifest in-warranty. *Daugherty*, at 830; *Hovsepian v. Apple, Inc.*, 08-5788 JF

22  (PVT), 2009 WL 2591445, at *1, *3 (N.D. Cal. Aug. 21, 2009); *Marchante v. Sony*

23  *Corp. of Am., Inc.*, 801 F. Supp. 2d 1013, 1020 (S.D. Cal. 2011). *Brothers* actually

24  supports Apodaca's claim because, as the *Brothers* court opined, the warranty

25  "essentially promises that [manufacturer] **would not use materials that are**

26  **defective** or substandard workmanship **in repairing or replacing** parts under

27  warranty." *Bros. v. Hewlett-Packard Co.*, C-06-02254RMW, 2007 WL 485979, at

28

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' FAC

*4 (N.D. Cal. Feb. 12, 2007)(emphasis added). The warranty in *Long*, unlike warranty at issue here (¶ 95), did not promise to "correct defects." *Long*, at *4.

### ii. "Commercial Grade" Warranty

> In California, a cause of action for breach of express warranty requires '(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached.' *Weinstat v. Dentsply Int'l., Inc.*, 180 Cal.App.4th 1213, 1227, 103 Cal.Rptr.3d 614 (2010) (citations and internal quotation marks omitted). California courts have further noted that 'breach of express warranty arises in the context of contract formation in which **reliance plays no role**.' *Id.*

*Holt v. Globalinx Pet, LLC*, SACV13-0041 DOC JPRX, 2013 WL 3947169, at *10 (C.D. Cal. July 30, 2013)(finding the term "wholesome" actionable as express warranty)(emphasis added).   "Statements made by a manufacturer through its advertising efforts can be construed as warranty statements." *Aaronson v. Vital Pharmaceuticals, Inc.*, 09-CV-1333 W (CAB), 2010 WL 625337, at *6 (S.D. Cal. Feb. 17, 2010).  Apodaca pleads that the statement "Commercial Grade Components" is an affirmation of fact and description of the Dishwashers (¶¶ 49, 99-100, 236), that the statement was part of the basis of the bargain (¶¶ 104-105, 245), and breach causing damages (¶¶ 101-103, 106-108, 235, 239, 246).

Whirlpool coyly argues that it does not know what it meant went it promised that its appliances all contain "commercial grade components." MTD at 12, 21. There's nothing ambiguous about it.  Even if it were, an express warranty claim arises under contract (*Weinstat*, 180 Cal.App.4th at 1227), therefore any ambiguity must be construed against Whirlpool.[15] Cal. Civ. Code § 1654 (West).

"Commercial Grade Components" is analogous to the "Brand Name Components" previously found actionable by this Court. *Anunziato v. eMachines, Inc.*, 402 F.Supp.2d 1133, 1141 (C.D. Cal. 2005)(Selna, J.).    Moreover, "Commercial Grade" is a specific term used in California statutes and regulations

---

[15] "Component" is defined as "a constituent part." http://www.merriam-webster.com/dictionary/component. The control panel, control board, or detergent dispenser assembly are constituent parts of a dishwasher.

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FAC

1 and has "significant legal meaning." *Holt*, at \*11. (use of "wholesome" in Texas
2 Administrative Code supports finding of warranty); *See, e.g.* Cal. Health & Safety
3 Code § 113916(b)(West)(defining "smooth," in part, as "equipment surface equal to
4 that of commercial grade hot-rolled steel free of visible scale"); Cal. Bus. & Prof.
5 Code § 21627 (West)(defining "commercial grade ingots"); Cal. Code Regs. tit. 22,
6 § 77153("commercial grade detergent germicide"); Cal. Code Regs. tit. 17, §
7 95102("commercial grade propane"); *see also In Re LG Electronics Inc.*, SERIAL
8 77046446, 2009 WL 4863339, at \*5 (Trademark Tr. & App. Bd. Dec. 1, 2009)("**We**
9 **readily acknowledge the distinction between commercial and domestic cooking**
10 **appliances.**")(emphasis added.)[16]

11     Reliance is not an element of breach of warranty. *Weinstat*, at 1227. Breach
12 of express warranty focuses on "*the seller's* behavior and obligation - his or her
13 affirmations, promises and descriptions of the goods – all of which help define what
14 the seller 'in essence' agreed to sell." *Id.* at 1228 (emphasis in original); *Horvath*, at
15 \*6 (following *Weinstat*). Even so, Apodaca has pled that he was exposed to the
16 "Commercial Grade" warranty (¶¶ 105, 245). *In re Toyota*, at 1183 (denying motion
17 to dismiss as to plaintiffs that were "exposed to the advertising").

18     **b. Implied Warranty**

19     Merchantability, for purposes of the Song–Beverly Act, means that the
20 consumer goods: '(1) Pass without objection in the trade under the contract description. (2) Are fit for the ordinary purposes for which such goods are used. (3) Are adequately contained, packaged, and labeled. (4) Conform to
21 the promises or affirmations of fact made on the container or label.'

22 *Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297, 1303 (2009) *citing* Cal. Civ.
23 Code § 1791.1. "The core test of merchantability is fitness for the ordinary purpose
24 for which such goods are used... Such fitness is shown if the product is in safe

---

[16] Whirlpool's reliance on *Johnson v. Mitsubishi Digital Electronics Am., Inc.*, 578
F. Supp. 2d 1229 (C.D. Cal. 2008) is misplaced as it was decided on a motion for
summary judgment with a fully developed record. *See Date v. Sony Electronics, Inc.*,
07-CV-15474, 2010 WL 3702599 (E.D. Mich. Sept. 16, 2010)(distinguishing
*Johnson* and denying motion to dismiss identical factual claims in their entirety).

1   condition and substantially free of defects…" *Mexia*, 174 Cal. App. 4th at 1303
2   (2009)(citations omitted).  "'[U]ndisclosed latent defects ... are the very evil that the
3   implied warranty of merchantability was designed to remedy.'" *Id.* at 13.  *Hicks*, at
4   918.

5           Apodaca alleges that the Dishwashers do not pass without objection in the
6   trade, are unfit for their ordinary purpose, and are unsafe. ¶¶6, 72-73, 87, 110-114,
7   248-281.  Notably, Whirlpool does not move against the independent basis of
8   "objection in the trade." MTD at 23. As such, the claim survives.

9           Let us quickly dispense with the spurious argument that Apodaca's claim is
10  untimely. Apodaca experienced two failures alleged to make the Dishwasher
11  unmerchantable within one year of ownership (¶¶ 18-20).  Therefore, Apodaca has
12  stated an implied warranty claim.   Whirlpool's implied warranty argument is but a
13  rehash of its express warranty argument. But "[a] product may not be fit for its
14  ordinary purpose even when a manufacturer complies with the terms of an express
15  warranty." *Avedisian v. Mercedes-Benz USA, LLC*, CV 12-00936 DMG CWX, 2013
16  WL 2285237, at *4 (C.D. Cal. May 22, 2013).  Whirlpool cites no case for its
17  erroneous proposition that replacing a defectively designed component with an
18  identical defective component renders the product merchantable under the SBA.[17]
19  The unreasonable attempted "repair" did resolve that the defective Dishwasher still
20  did not meet the minimum level of quality required to be merchantable because
21  dendrites and silver migration occur immediately upon installation of the
22  replacement control panel (¶¶56-61, 70, 71, 73), and the replaced detergent
23  dispenser solenoid continues to pose a safety concern (¶¶74, 80, 87-89, 92).

24          Even if Apodaca had not experienced the defects during the first year, "a
25  product is rendered unmerchantable, and the warranty of merchantability is
26  breached, by the existence of the unseen defect, not by its subsequent discovery."

27
28  [17] Whirlpool's reliance on *Tietsworth* is misplaced as none of the plaintiffs
    experienced a failure until after one year. *Tietsworth*, 2009 WL 1363548 at *3.

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' FAC

1  *Mexia*, at 1305; *see also*, *Donlen*, 217 Cal. App 4ᵗʰ at 149 (*citing Mexia*); *Ehrlich v.*
2  *BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 924 (C.D. Cal. 2010)(following *Mexia*);
3  *Keegan I*, at 948 (same); *Kas v. Mercedes-Benz USA, LLC*, CV 11-1032-GHK
4  PJWX, 2011 WL 5248299, at *2 (C.D. Cal. Oct. 31, 2011)(same).

5    Finally, Whirlpool argues that the Dishwasher are merchantable because they
6  are fit for their ordinary purpose. First, as alleged in the FAC and shown above, the
7  Dishwashers pose a safety concern rendering them unmerchantable. Second, the
8  Dishwashers would not pass without objection in the trade under their description as
9  household dishwashers (¶¶ 61, 111-112, 142(A)(i), 259). Third, Apodaca's
10  Dishwasher was rendered unfit for washing dishes, the Dishwashers are
11  substantially certain to fail within their useful life of 15 years, and the Dishwashers
12  cannot operate without frequent and repeated failure of the control panel, rendering
13  the Dishwashers useless (¶¶ 5, 6, 13, 18-21, 24, 30, 33, 117, 122, 127, 130, 140,
14  162, 198, 222, 256, 260, ). *See Hicks*, at 918. Therefore, Apodaca has sufficiently
15  pled his implied warranty claim.[18]

16  **CONCLUSION**

17    For the foregoing reasons, the Court should deny Defendant's motion. If
18  Plaintiffs' allegations are found inadequate, Plaintiffs request leave to amend.
19  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.
20  1986).

21
22  DATED: August 23, 2013  EPPSTEINER & FIORICA ATTORNEYS, LLP
23
24       By:  /s/ Andrew J. Kubik
25        Stuart M. Eppsteiner, Esq.
      Andrew J. Kubik, Esq.
26        Zelekha Amirzada, Esq.

27  [18] Because Apodaca plausibly states express and implied warranty claims under state
28  law, he has also sufficiently stated his MMWA claims. *Keegan I*, 954.

30
MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' FAC