Galen D. Bellamy (SBN 231792)
Email: bellamy@wtotrial.com
Andrew M. Unthank (*pro hac vice*)
Email: unthank@wtotrial.com
Hayley E. Reynolds (*pro hac vice*)
Email: reynolds@wtotrial.com
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Telephone: (303) 244-1800
Facsimile: (303) 244-1879

Dean J. Zipser (SBN 94680)
Email: dzipser@kruzlaw.com
Carole E. Reagan (SBN 162674)
Email: creagan@kruzlaw.com
Keller Rackauckas Umberg Zipser LLP
18300 Von Karman Ave., Suite 930
Irvine, California 92612
Telephone: (949) 476-8700
Facsimile: (949) 476-0900

Attorneys for Defendant
Whirlpool Corporation

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIAN APODACA and BRUCE KALEITA, individually and on behalf of all others similarly situated,<br><br>                          Plaintiffs,<br><br>          vs.<br><br>WHIRLPOOL CORPORATION,<br><br>                          Defendant. | CASE NO. 8:13-cv-00725-JVS-AN<br><br>**REPLY IN SUPPORT OF DEFENDANT WHIRLPOOL CORPORATION'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date:        October 21, 2013<br>Time:        1:30 p.m.<br>Courtroom: 10C<br><br>Judge: The Honorable James V. Selna |

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................... 1

ARGUMENT ...................................................................................................... 2

I.   APODACA CANNOT AVOID THE PUFFERY DOCTRINE. ................... 2

II.  PLAINTIFFS DO NOT ALLEGE A PLAUSIBLE SAFETY
     ISSUE ...................................................................................................... 3

III. APODACA'S VARIOUS OMISSION CLAIMS FAIL ............................... 6

IV.  APODACA'S WARRANTY CLAIMS SHOULD NOT
     PROCEED .............................................................................................. 12

V.   KALEITA'S FRAUDULENT CONCEALMENT CLAIM
     FAILS ..................................................................................................... 16

VI.  KALEITA'S FDUTPA CLAIMS FAIL. ................................................... 17

CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

Page

**Cases**

*Anunziato v. eMachines, Inc.,*
402 F. Supp. 2d 1133 (C.D. Cal. 2005) ........................................................ 2, 13, 15

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................... 1, 4, 17

*Baba v. Hewlett-Packard Co.,*
No. C 09-05946 RS, 2011 WL 317650 (N.D. Cal. Jan. 28, 2011) ................... 7, 11

*Bardin v. DaimlerChrysler Corp.,*
136 Cal. App. 4th 1255 (2006) ............................................................... 8

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................................... 4

*Berenblat v. Apple, Inc.,*
Nos. 08-4969 JF (PVT), 09-1649 JF (PVT),
2010 WL 1460297 (N.D. Cal. Apr. 9, 2010) ........................................... 11

*Bros. v. Hewlett-Packard Co.,*
No. C-06-02254 RMW,
2007 WL 485979 (N.D. Cal. Feb. 12, 2007) ........................................ 3, 13, 15

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,*
173 F.3d 725 (9th Cir. 1999) ................................................................. 3

*Collins v. eMachines, Inc.,*
202 Cal. App. 4th 249 (2011) ............................................................... 6, 7

*Daugherty v. Am. Honda Motor Co.,*
144 Cal. App. 4th 824 (2006) ............................................................... 6, 8

*Dei Rossi v. Whirlpool Corp.,*
No. 12-CV-125-JAM-JFM, 2013 WL 1312105 (E.D. Cal. Mar. 28, 2013) ..... 15-16

*Elias v. Hewlett-Packard Co.,*
903 F. Supp. 2d 843 (N.D. Cal. 2012) .................................................. 8

*Falk v. Gen. Motors Corp.,*
496 F. Supp. 2d 1088 (N.D. Cal. 2007) ................................................ 6

*Gavron v. Weather Shield Mfg., Inc.,*
819 F. Supp. 2d 1297 (S.D. Fla. 2011) ................................................. 19

*Grodzitsky v. Am. Honda Motor Co.,*
No. 2:12-cv-1142-SVW-PLA,
2013 WL 2631326 (C.D. Cal. June 12, 2013).................................................. 5, 10

*Hicks v. Kaufman & Broad Home Corp.,*
89 Cal. App. 4th 908 (2001).......................................................................... 12

*Hovsepian v. Apple, Inc.,*
Nos. 08-5788 JF (PVT), 09-1064 JF (PVT),
2009 WL 2591445 (N.D. Cal. Aug. 21, 2009)................................................ 16

*In re LG Elecs. Inc.,*
Serial No. 77046446, 2009 WL 4863339
(Trademark Tr. & App. Bd. Dec. 1, 2009)..................................................... 14

*In re Sony Grand Wega KDF-E A10/A20 Series*
*Rear Projection HDTV Television Litig.,*
758 F. Supp. 2d 1077 (S.D. Cal. 2010)................................................... 2, 3, 8

*In re Toyota Corp. Unintended Acceleration Mktg.,*
*Sales Practices, & Prods. Liab. Litig.,*
754 F. Supp. 2d 1145 (C.D. Cal. 2010).................................................*passim*

*Intri-Plex Techs., Inc. v. Crest Grp., Inc.,*
499 F.3d 1048 (9th Cir. 2007)........................................................................ 3

*Jhaveri v. ADT Sec. Servs., Inc.,*
No. 2:11-cv-4426-JHN-MANx,
2012 WL 843315 (C.D. Cal. Mar. 6, 2012) ................................................... 9

*Jovine v. Abbott Labs., Inc.,*
795 F. Supp. 2d 1331 (S.D. Fla. 2011)...................................................... 18, 19

*Kearns v. Ford Motor Co.,*
567 F.3d 1120 (9th Cir. 2009)......................................................................... 3

*Keegan v. Am. Honda Motor Co.,*
838 F. Supp. 2d 929 (C.D. Cal. 2012).......................................................... 4-5

*Larsen v. Nissan N. Am.,*
No. A121838, 2009 WL 1766797 (Cal. Ct. App. June 23, 2009).......................... 8

*Lehman Bros. Holdings, Inc. v. Campbell,*
No. 3:12-cv-259, 2013 WL 3479525 (E.D. Tenn. 2013)................................. 17

*LiMandri v. Judkins,*
52 Cal. App. 4th 326 (2009).......................................................................... 9

*Long v. Hewlett-Packard Co.,*
No. C 06-02816 JW, 2007 WL 2994812 (N.D. Cal. Jul. 27, 2007)..........5-6, 13, 15

*Marchante v. Sony Corp. of Am., Inc.,*
801 F. Supp. 2d 1013 (S.D. Cal. 2011) ................................................................ 8

*Matthews v. Am. Honda Motor Co.,*
No. 12-60630-CIV, 2012 WL 2520675 (S.D. Fla. June 6, 2012) ........................ 19

*McCabe v. Am. Honda Motor Co.,*
100 Cal. App. 4th 1111 (2002) ............................................................................ 12

*Mexia v. Rinker Boat Co.,*
174 Cal. App. 4th 1297 (2009) ............................................................................ 15

*Millennium Commc'ns & Fulfillment, Inc. v. Office of Attorney Gen.,*
*Dep't of Legal Affairs, State of Fla.,*
761 So. 2d 1256 (Fla. Dist. Ct. App. 2000) ........................................................ 20

*Morgan v. Harmonix Music Sys., Inc.,*
No. C08-5211 BZ, 2009 WL 2031765 (N.D. Cal. 2009) ...................................... 8

*Morris v. ADT Security Services,*
580 F. Supp. 2d 1305 (S.D. Fla. 2008) .............................................................. 18

*Moss v. U.S. Secret Service,*
572 F.3d 962 (9th Cir. 2009) ................................................................................ 4

*Ostreicher v. Alienware Corp.,*
544 F. Supp. 2d 964 (N.D. Cal. 2008) ................................................................. 3

*Rappaport v. Jimmy Bryan Toyota of Ft. Lauderdale, Inc.,*
552 So. 2d 1005 (Fla. Dist. Ct. App. 1988) ....................................................... 16

*Rice v. Sunbeam Prods., Inc.,*
No. CV 12-7923-CAS-(AJWx), 2013 WL 146270 (C.D. Cal. Jan. 7, 2013) ........ 11

*Seely v. White Motor Co.,*
63 Cal.2d 9 (1965) ................................................................................................ 8

*Smith v. Ford Motor Co.,*
462 F. App'x 660 (9th Cir. 2011) ......................................................................... 6

*Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos.,*
110 So. 3d 399 (Fla. 2013) ................................................................................. 17

*Tietsworth v. Sears, Roebuck & Co.,*
720 F. Supp. 2d 1123 (N.D. Cal. 2010) ........................................................... 2, 7

*Tietsworth v. Sears, Roebuck & Co.,*
No. 5:09-cv-00288-JF (HRL),
2012 WL 1595112 (N.D. Cal. May 4, 2012) ........................................................ 7

*Virgilio v. Ryland Grp., Inc.,*
680 F.3d 1329 (11th Cir. 2012) ......................................................................... 18

*Vitt v. Apple Computer, Inc.,*
469 F. App'x 605 (9th Cir. 2012) ...................................................................... 6, 7, 8

*White v. DaimlerChrysler Corp.,*
368 Ill. App. 3d 278 (2006) ................................................................................. 11

*Wilson v. Hewlett-Packard Co.,*
668 F.3d 1136 (9th Cir. 2012) ....................................................................*passim*

**Statutes, Rules, and Regulations**

Fed. R. Civ. P. 9(b) ........................................................................................ 3, 16

Fed. R. Evid. 201 .................................................................................................. 5

**Other Authorities**

Underwriters Laboratory Standard 749 ............................................................... 4

**INTRODUCTION**

Plaintiffs' claims are replete with conclusions that they fail to support with sufficient factual allegations. As the Supreme Court explained, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). After the Court weeds out those unsupported conclusions, Plaintiffs' allegations boil down to this: A small percentage of Maytag dishwashers, like all mass-produced consumer products, will require repair. When issues arise within warranty, Whirlpool will repair them. Plaintiffs claim Whirlpool acted "unlawfully" or "unfairly" by not providing post-warranty repairs free of charge.

Both Plaintiffs purchased Maytag dishwashers with one-year warranties. Plaintiff Apodaca ("Apodaca") called for repairs and Whirlpool provided them at no cost during his warranty period. Eleven months after his warranty expired, Apodaca called for another repair. When Whirlpool declined to provide free out-of-warranty repairs and offered a discount replacement option, Apodaca refused and filed suit. Plaintiff Kaleita's ("Kaleita") dishwasher operated without incident for approximately 17 months, after which it needed repair. He never contacted Whirlpool, but joined this lawsuit instead.

California and Florida have recognized that not providing free repairs under these circumstances is consistent with public policy. As the Ninth Circuit has explained, manufacturers are not required to notify customers of every possible problem that could arise with their products. In short, a consumer can be fairly charged with the risk that a product will not meet his subjective economic expectations unless the manufacturer promised it would. While Plaintiffs disagree with this policy, it is the law, and their claims cannot survive dismissal.

# ARGUMENT

## I.   APODACA CANNOT AVOID THE PUFFERY DOCTRINE.

Apodaca fails to meaningfully address the puffery doctrine. He argues that the nine puffery cases cited by Whirlpool are distinguishable because they are "based upon claims that were not quantifiable, could not be objectively proven, and did not involve a long-term advertising campaign." (Pls.' Opp'n 17, ECF No. 27.) Apodaca ignores the fact that these cases examined the exact same terms on which his misrepresentation claims rely ("reliable," "durable," "dependable"), as well as the same types of statements he alleges ("superior quality"[1] and "manufactured for years of dependable operation"[2]), and concluded that each was non-actionable puffery. (Def.'s Mot. 11-12, ECF No. 23.) Apodaca similarly fails to cite any authority to support his suggestion that the length of an advertising campaign is relevant. A statement that is vague or subjective does not become less so with repetition.

Lacking any supportive law, Apodaca asks this Court to take judicial notice of a Consumer Reports ("CR") survey, which he falsely claims is referenced in the First Amended Class Action Complaint, ECF No. 18 ("FAC"). (Pls.' Opp'n 17 n.10.) He claims the survey makes quantifiable statements about reliability or dependability by defining terms ("repair reports") and assigning number ratings. (Pls.' Opp'n 17.) But Apodaca does not claim Whirlpool referenced the CR survey, or any objective rating or standard. Instead, Whirlpool's use of the word "reliable" is "inherently vague and general" and "not expected to induce reasonable consumer reliance." *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1140 (C.D. Cal. 2005).

---

[1] *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.,* 758 F. Supp. 2d 1077, 1089 (S.D. Cal. 2010).
[2] *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1136 (N.D. Cal. 2010).

1    Apodaca then goes one step further, claiming Whirlpool represented

2    Maytag appliances as "the most dependable"[3] and "repair free." (Pls.' Opp'n 16,

3    18.) But the FAC is devoid of any allegation that Whirlpool actually made those

4    statements, and Plaintiffs identify none in their Opposition Brief. Instead,

5    Apodaca indicates those were his subjective interpretations of the humorous,

6    caricatured Maytag repair man. (FAC ¶ 15.) If Apodaca were claiming Whirlpool

7    made those specific claims, he would need to provide "the who, what, when,

8    where, and how" pursuant to Federal Rule of Civil Procedure 9(b). *Kearns v. Ford*

9    *Motor Co.*, 567 F.3d 1120, 1125-27 (9th Cir. 2009). He does not.

10   Finally, Apodaca seeks to avoid dismissal by claiming this is a fact issue.

11   (Pls.' Opp'n 16.) However, he ignores the seven cases cited by Whirlpool

12   deciding the puffery issue on motions to dismiss. (Def.'s Mot. 10-12.) Indeed, a

13   case Apodaca cites reversed a jury verdict because "puffery, which a court may

14   determine as a matter of law, is not actionable." *Coastal Abstract Serv., Inc. v.*

15   *First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999). In sum, the Court

16   should dismiss Apodaca's affirmative misrepresentation claims, because they rely

17   on non-actionable puffery. Further, because these deficiencies are so fundamental,

18   amendment would be futile, and the Court should dismiss with prejudice. *Intri-*

19   *Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1056 (9th Cir. 2007).

20   **II.   PLAINTIFFS DO NOT ALLEGE A PLAUSIBLE SAFETY ISSUE**

21   Plaintiffs claim to represent a widespread class of consumers with defective

22   detergent dispensers that pose a substantial risk of fire. Yet neither the FAC nor

23   their Opposition identifies <u>any</u> consumer who ever experienced a fire from the

24

25   [3] General claims of superiority are also non-actionable. *See Brothers v. Hewlett-*
26   *Packard Co.*, No. C-06-02254 RMW, 2006 WL 3093685, at *5 (N.D. Cal. Oct.
     31, 2006) ("top of the line"); *In re Sony*, 758 F. Supp. 2d at 1089 ("superior"
27   quality) (CLRA, UCL, or FAL); *Ostreicher v. Alienware Corp.*, 544 F. Supp. 2d
     964, 973 (N.D. Cal. 2008) ("faster. . . than competing machines").

28

defect they allege. Plaintiffs argue they alleged a plausible safety defect by presenting a detailed theory about how moisture intrusion caused Kaleita's dispenser motor to overheat and malfunction. (Pls.' Opp'n 13; FAC ¶¶ 78-92.) But Plaintiffs do not connect this theory to any actual fire. Critically, Plaintiffs do not allege any conceivable way for the overheating to propagate beyond the dispenser and escape the dishwasher enclosure. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) (dismissing safety defect claim because "it is difficult to conceive" and "the complaint does not explain" how the laptops would "ignite into flames" as alleged). Absent such allegations, Plaintiffs' references to the risk of "ignition" and "fire" are purely speculative. (FAC ¶¶ 80, 83, 87, 88.) Plaintiffs have failed to allege a factual basis that is "plausible on its face." *Iqbal*, 556 U.S. at 663.[4] Legal claims may not rely on a "speculative" safety hazard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 127 S. Ct. 1955, 1959 (2007) .

Recognizing their inability to establish a safety defect from their own experiences, Plaintiffs cite 68 unverified consumer complaints from Whirlpool's Facebook page. (FAC ¶155.) But none of those report the alleged safety defect. Only two mention the detergent dispenser at all. (*Id.* ¶155, Cmt. 66-67.) Both allege that the dispenser did not open or function properly. They do not suggest overheating or melting, much less igniting a fire. Plaintiffs cannot satisfy the "plausibility standard" by alleging "a sheer possibility" of a safety defect. *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Indeed, even the cases cited by Plaintiffs involve safety defects actually experienced by named plaintiffs or a large volume of consumers. *See Keegan v.*

---

[4] Plaintiffs cite Underwriters Laboratory ("UL") Standard 749 to suggest their dishwashers "fail industry safety standards for switches and solenoids." (Pls.' Opp'n 13; FAC ¶ 112.) But Plaintiffs allege no factual basis to conclude the type of solenoid found in their dishwashers was put into production after failing any test.

1  *Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 943 (C.D. Cal. 2012) (named

2  plaintiffs' tires blew out while driving); *Grodzitsky v. Am. Honda Motor Co.*, No.

3  2:12-cv-1142-SVW-PLA, 2013 WL 2631326, at *5-6 (C.D. Cal. June 12, 2013)

4  (named plaintiffs experienced sudden window failure with risk of startling noise,

5  glass shattering, and ejection during crash); *In re Toyota Corp. Unintended*

6  *Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145,

7  1158 (C.D. Cal. 2010) (Toyota received 37,900 complaints of sudden, unintended

8  vehicle acceleration).

9        In a final effort, Plaintiffs rely on Whirlpool's 2007 voluntary recall of

10  Maytag dishwashers sold between 1997 and 2001—10 years or more before

11  Apodaca and Kaleita purchased their machines in 2011. That recall, based on a

12  perceived fire risk, involved a different component with a different failure mode in

13  different models from different years. It is simply not plausible that Maytag issued

14  a voluntary recall without correcting the underlying safety concern, that the

15  Consumer Product Safety Commission ("CPSC") allowed this, and that a latent

16  safety defect remained for a decade[5] without causing any fire that Plaintiffs can

17  identify. The 12 additional recall notices attached to Plaintiffs' Opposition are

18  even less relevant, because they do not involve Maytag dishwashers, and therefore

19  cannot possibly relate to the failure mode they allege.[6]

20        In sum, the FAC fails to allege any plausible safety defect. "[M]ere

21  conclusions couched in factual allegations are not sufficient to state a cause of

22  action." *Long v. Hewlett-Packard Co.*, No. C 06-02816 JW, 2007 WL 2994812, at

23

24  _____

[5] In fact this allegation contradicts Plaintiffs' assertion that manufacturers change

25  dishwasher designs every 3-4 years. (FAC ¶ 148.)

[6] Federal Rule of Evidence 201 allows only for the Court to recognize the

26  existence of a recall based on a perceived safety hazard. The notice provides no

details about the failure mode, and Plaintiffs cannot manipulate Rule 201 into

27  substantive support for the plausibility of a safety hazard in their unrelated

machines.

28

1   *3 (N.D. Cal. Jul. 27, 2007), *aff'd*, 316 F. App'x 585 (9th Cir. 2009).

2   **III.   APODACA'S VARIOUS OMISSION CLAIMS FAIL**

3       The parties agree that "[a] claim for omission is actionable where the

4   'omission is contrary to a representation actually made by the defendant, or an

5   omission of a fact the defendant was obliged to disclose.'" (Pls.' Opp'n 5 (citing

6   *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1094 (N.D. Cal. 2007))). *See*

7   *also Daugherty v. Am. Honda Motor Co.,* 144 Cal. App. 4th 824, 835, 51 Cal.

8   Rptr. 3d 118, 126 (2006). Whirlpool disagrees, however, that Apodaca states such

9   a claim.

10       **Apodaca fails to make the threshold "materiality" showing.** "To plead a

11   duty to disclose, Plaintiffs must show the nondisclosed facts are material." *In re*

12   *Toyota*, 754 F. Supp. 2d at 1173. To establish an actionable duty to disclose, a

13   quality issue that manifests post-warranty is <u>not material</u>, unless it poses "an

14   unreasonable safety hazard." *Wilson*, 668 F.3d at 1143.

15       Apodaca strives to avoid the safety requirement. He attempts to undermine

16   *Wilson* on four bases. First, he suggests that a safety concern is not required for an

17   omission-based FAL or common law fraud claim. (Pls.' Opp'n 2.) But this is not

18   correct. *See, e.g., Vitt v. Apple Computer, Inc.,* 469 F. App'x 605, 608 (9th Cir.

19   2012) (dismissing FAL, UCL, and CLRA claims after finding "no duty to disclose

20   that a product may fail beyond its warranty period absent an affirmative

21   misrepresentation or a safety risk."); *Smith v. Ford Motor Co.,* 462 F. App'x 660,

22   662-63 (9th Cir. 2011) (dismissing CLRA and common law fraudulent

23   concealment claim after finding no duty to disclose latent non-safety defect).

24       Second, he focuses on an earlier split among lower federal courts, which is

25   now irrelevant because the Ninth Circuit <u>resolved</u> the issue in *Wilson*. (Pls.' Opp'n

26   8-10.) Third, he relies on *Collins v. eMachines, Inc.,* 202 Cal. App. 4th 249, 257,

27   134 Cal. Rptr. 3d 588, 595 (2011), which allowed an omissions claim for a non-

28   safety defect. (Pls.' Opp'n 9.) But *Collins* involved a disk drive defect present at

the time of sale that prevented consumers from using the laptop without risking data corruption or loss. *Id.* This is distinguishable from cases where, as here, an alleged defect does not prevent use of the product until it manifests. *Vitt*, 469 F. App'x at 608-09 (explaining distinction). Additionally, *Collins* based its ruling on the fact that the product did not "wear[] out or break[] over time." *Collins*, 202 Cal. App. 4th at 257. While Apodaca asserts that his defect existed from day one and that break-downs are not caused by wear (Pls.' Opp'n 10 n.8, 12; FAC ¶ 73), his own allegations contradict this assertion. According to the FAC, moisture infiltration "eventually" will "break down the coating on the traces," which "begin[s] the process of [silver] migration and dendritic growth" that can later cause the control panel to malfunction. (FAC ¶¶ 68-70.) Similarly, he alleges moisture entering the dispenser solenoid "builds over time" (FAC ¶ 80) and may eventually cause a short circuit.

Fourth, Apodaca argues that *Wilson*'s reference to *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123 (N.D. Cal. 2010), in dicta, shows that a safety concern is not required if a defect first manifests during the warranty period. 668 F.3d at 1143 n.1. But this reference is inapposite. *Tietsworth* involved allegations that (1) the warranty service provided was unsuccessful in restoring the machines to proper functioning, and (2) the manufacturer failed to provide replacement control boards for machines that malfunctioned during warranty, yet later admitted the problem could only be solved through such replacement. *Id.* at 1130-31. Moreover, following *Wilson*, the *Tietsworth* court concluded an in-warranty malfunction was irrelevant to determine materiality. *See Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-cv-00288-JF (HRL), 2012 WL 1595112, at *14 (N.D. Cal. May 4, 2012).[7]

---

[7] Similarly, *Baba v. Hewlett-Packard Co.*, C 09-05946 RS, 2010 WL 2486353 at *1 (N.D. Cal. June 16, 2010), is inapposite, because one of the named plaintiffs

*(Footnote cont'd on next page.)*

Failing these attempts, Apodaca's argument devolves into an argument that this Court should ignore the Ninth Circuit because *Wilson* was wrongly decided. (Pls.' Opp'n 6, 11.) Yet he concedes that the Ninth Circuit, this Court, and other California federal courts have repeatedly found a safety requirement. (Pls.' Opp'n 6-9.) *See Vitt*, 469 F. App'x at 607-08; *Oestreicher*, 322 F. App'x at 493.[8] Plus, Apodaca is incorrect to claim that this requirement "is wholly foreign to California jurisprudence." (Pls.' Opp'n 7.) *See Larsen v. Nissan N. Am.*, No. A121838, 2009 WL 1766797, at *4 (Cal. Ct. App. June 23, 2009); *Bardin v. DaimlerChrysler Corp.,* 136 Cal. App. 4th 1255, 1270, 39 Cal. Rptr. 3d 634, 643-44 (2006); *Daugherty*, 144 Cal. App. 4th at 836-37. Apodaca ignores the California Supreme Court's statements that a manufacturer "can appropriately be held liable for physical injuries caused by defects . . . that create unreasonable risks of harm" but a consumer can "be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will." *Seely v. White Motor Co.,* 63 Cal.2d 9, 18, 45 Cal. Rptr. 17, 23 (1965). In short, Apodaca's alternative to *Wilson* would require manufacturers to predict every possible way their products could fall short of consumers' subjective economic expectations. This is not reasonable and, as explained above, is not the law.

**Apodaca independently fails to assert a duty to disclose.** Even if the *Judkins* factors apply as Apodaca suggests, he fails to establish a duty to disclose by arguing (1) that Whirlpool had exclusive knowledge of material facts not

---

*(Footnote cont'd from previous page.)*

did request service within warranty and it was of "no avail" in eliminating the cursor problem that interfered with the laptop's functionality.
[8] *See also Marchante v. Sony Corp. of Am., Inc.*, 801 F. Supp. 2d 1013, 1018 (S.D. Cal. 2011); *In re Sony*, 758 F. Supp. 2d at 1096; *Morgan v. Harmonix Music Sys., Inc.*, No. C08-5211 BZ, 2009 WL 2031765, at *4 (N.D. Cal. 2009); *Hoey*, 515 F. Supp. 2d at 1104; *In re Toyota*, 754 F. Supp. 2d at 1173; *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 856 (N.D. Cal. 2012).

known to him; or (2) that Whirlpool's actively concealed a material fact from him.[9] *See LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336, 60 Cal. Rptr. 2d 539, 543 (2009). First, Apodaca does not allege a plausible basis to establish a defect or to conclude that Whirlpool had knowledge of that defect, let alone <u>exclusive</u> knowledge that would give rise to a duty of disclosure in California. *See Tietsworth,* 720 F. Supp. 2d at 1134 ("[A] plaintiff cannot establish a duty by pleading, in a purely conclusory fashion, that a defendant was in a superior position to know the truth about a product and actively concealed the defect."); *Jhaveri v. ADT Sec. Servs., Inc.*, No. 2:11-cv-4426-JHN-MANx, 2012 WL 843315, at *5 (C.D. Cal. Mar. 6, 2012) (insufficient to allege fraud or its elements upon information and belief unless the facts upon which the belief is founded are stated in the pleading).

Apodaca's references to the earlier recall notice and alleged Facebook complaints also fail to establish the existence of a product defect or Whirlpool's knowledge of it. As explained above, Maytag's 2007 voluntary recall involved a different failure mode in a different part in a different dishwasher sold 10 years before Plaintiffs' dishwashers. As for the consumer complaints, Apodaca lists only <u>seven</u> that were posted before his purchase that involve the parts he alleges were defective (two related to the detergent dispenser, one referenced the control board and control panel, and four mentioned the control panel alone). (FAC ¶ 155.) These vague, unverified consumer complaints are hardly sufficient to charge Whirlpool with knowledge of the specific defects Plaintiffs allege. Moreover, even if Apodaca had sufficiently alleged the existence of a defect, the public nature of

---

[9] Apodaca also fails to establish an actionable partial representation accompanied by the suppression of a material fact, as Whirlpool previously established (Def.'s Mot. 18; *see also* Section I above), and he does not separately argue this point. (Pls.' Opp'n 16.) Nor does either party suggest that the final *Judkins* factor, fiduciary relationship, applies here.

1   the recall notice and Facebook complaints undercuts his claim that Whirlpool's

2   knowledge of it would have been exclusive.

3         Next Apodaca argues that Whirlpool had exclusive knowledge based on its

4   own testing and analysis, meetings with suppliers, warranty claims database, call

5   center records, consumer complaints, and previous recall data. (*See* Pls.' Opp'n

6   14; FAC ¶ 142A. *Cf.* ¶¶ 146-157.) But the FAC is devoid of a factual basis for

7   alleging that these sources should have alerted Whirlpool to any defect in its

8   detergent dispenser, control board, or control panel—let alone a safety defect. The

9   fact that Apodaca lists various types of sources and tests (FAC ¶¶142A, 150) does

10  nothing to bolster his knowledge claims. Every manufacturer conducts tests and

11  collects product information, and the list in the FAC could be copied into any

12  complaint. If a generic list of types of product tests or categories of warranty

13  information were sufficient to allege a manufacturer's knowledge and duty to

14  disclose, then any disappointed consumer could demand expensive and disruptive

15  discovery at any time to fish for claims or coerce settlement through costly

16  litigation.[10]

17        Indeed, Apodaca's allegations concerning testing, reports, and public

18  announcements are nearly identical to those recently rejected by this Court in

19  *Grodzitsky*, 2013 WL 690822, at *7 (exclusive knowledge not plausibly asserted

20  with testing data, replacement parts data, dealer reports, ten online complaints,

21  three manufacturer service bulletins, or a servicer's statement that the defect was

22  well known and widespread). And courts have repeatedly rejected similar

23  knowledge claims. *Wilson*, 668 F.3d at 1146-47 (information about overheating,

24

25  ————————————————

26  [10] In fact, Apodaca's allegations of specific testing protocols tend to undermine,
    rather than support his claim that Whirlpool's testing provided pre-sale knowledge
    of a defect. (*See id.* ¶¶142A, 150.) He alleges no basis to believe the test results

27  were negative. Rather, the UL certification of Maytag dishwashers suggests the
    test results conformed to its safety and quality standards.

28

14 customer complaints, and a similar lawsuit insufficient); *Baba*, 2011 WL 317650, at *3 (complaints on defendant's website insufficient); *Berenblat v. Apple, Inc.*, Nos. 08-4969 JF (PVT), 09-1649 JF (PVT), 2010 WL 1460297, at *8-9 (N.D. Cal. Apr. 9, 2010) (same); *White v. DaimlerChrysler Corp.*, 368 Ill. App. 3d 278, 286-87, 856 N.E.2d 542, 550 (2006); *Rice v. Sunbeam Prods., Inc.*, No. CV 12-7923-CAS-(AJWx), 2013 WL 146270, at *7 (C.D. Cal. Jan. 7, 2013). Accordingly, Apodaca has failed to allege a plausible basis to conclude that Whirlpool had exclusive knowledge giving rise to a duty to disclose.

**Apodaca fails to allege active concealment.** Apodaca's active concealment argument is entirely dependent on his knowledge argument. He contends that Whirlpool engaged in active concealment by denying the existence of a defect when consumers called to complain. But, as explained above, Apodaca fails to establish the existence of a defect or Whirlpool's knowledge of it. One cannot conceal, actively or otherwise, an alleged defect without knowledge of its existence. *See, e.g., Tietsworth*, 720 F. Supp. 2d at 1134-35. Apodaca's recitation of unverified anecdotes from Whirlpool's Facebook page fails to support his assertion of active concealment. Only two of the comments even mention that a Whirlpool representative stated that he or she was unaware of any complaints and both were posted in 2012. (FAC ¶ 155, Cmt. 19, 42.)[11] Apodaca does not and cannot explain how these complaints or Whirlpool's alleged denial of a defect to him in December 2012 are causally related to his decision to purchase a Dishwasher in January 2011.[12] Therefore, Apodaca's active concealment

---

[11] The remaining seven comments upon which Apodaca relies do not assert that Whirlpool denied that a defect existed and thus do not show any active concealment. FAC ¶ 155 Cmt. 9, 15, 18, 22, 40, 49, 67.
[12] Moreover, the cases Plaintiff cites for the proposition that denying a defect to a consumer are inapposite. *See e.g., In re Toyota*, 754 F. Supp. 2d at 1192 (alleging Toyota hid information during agency investigations and concealed the real reason for its recalls).

1    argument fails. For the above reasons and given his inability to cure the defects,

2    this Court should dismiss Apodaca's various omission claims with prejudice.

3    **IV.    APODACA'S WARRANTY CLAIMS SHOULD NOT PROCEED**

4        **Whirlpool did not breach any applicable express warranty.** In moving

5    to dismiss the FAC, Whirlpool explained that Apodaca's express written warranty

6    claims fail because (1) design defects are excluded from coverage, and (2)

7    Whirlpool fully complied with its in-warranty repair obligations. (Def.'s Mot. 18-

8    20.) Apodaca's attempts to counter these points similarly fail.

9        First, Apodaca argues that, while he asserted a <u>design</u> defect for purposes of

10   his implied warranty claim, he is couching his claim as a <u>materials</u> defect for

11   purposes of his express warranty claim. (Pls.' Opp'n 25.) But this does not fix the

12   problem. A materials defect (*a.k.a.* "manufacturing defect") means a

13   "manufacturer's failure to comply with its own design specifications." *McCabe v.*

14   *Am. Honda Motor Co.*, 100 Cal. App. 4th 1111, 1120, 123 Cal. Rptr. 2d 303, 309

15   (2002). This can be asserted "by showing the product performed differently from

16   other ostensibly identical units of the same product line." *Id.* By contrast, a design

17   defect exists "when the product is built in accordance with its intended

18   specifications, but the design itself is inherently defective." *Id.* Thus, while the

19   FAC conclusorily states that Plaintiffs' dishwashers "have defects in materials"

20   (FAC ¶ 275), he alleges no facts to support a materials defect. Apodaca never

21   alleges that the parts were damaged or otherwise different from those specified by

22   Whirlpool—*e.g.*, cracked, deformed, or improperly sized.

23       Even if Apodaca could clear that hurdle, he cannot avoid alleging a current

24   malfunction by claiming that his alleged defect is "substantially certain" to

25   manifest in a future malfunction. (Pls.' Opp'n 25.) The "substantially certain"

26   exception does not apply to consumer products like dishwashers or cars with a

27   limited useful life. *See Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th

28   908, 923, 107 Cal. Rptr. 2d 761, 772-73 (2001) (contrasting concrete foundations

with "indefinite" lifespans to products like cars with limited useful lives); *In re Toyota*, 754 F. Supp. 2d at 1179; *In re Sony*, 758 F. Supp. 2d at 1077. And, even if it did, his factual allegations fall short of that standard. A tiny percentage of Maytag dishwashers experiencing problems is not "substantial certainty" of failure. As previously explained (Section III.B.1 above), an earlier recall involved 135 complaints, which established a 0.0059% failure rate. Apodaca only cites seven unverified complaints, amounting to an even smaller fraction of a percent.

Finally, Apodaca fails to counter Whirlpool's point that it repaired his dishwasher free of charge under his warranty and it continued to function throughout the one-year warranty period. Apodaca alleges his detergent dispenser and control board malfunctioned in warranty and were replaced. (FAC ¶ 19.) He does not allege, however, that these components ever failed again and therefore provides no basis for his allegation that these repairs were ineffective. Apodaca alleges a control panel failure and replacement in warranty and a failure with the replacement control panel 14 months later, out of warranty. (FAC ¶ 20.) But this allegation is also insufficient for his warranty claim. "It is clear . . . that a plaintiff cannot maintain a breach of warranty claim under California law for a product that is repaired within the warranty period and fails again months after the warranty has expired" (as allegedly happened here). *Long*, 2007 WL 2994812 at *4 (quoted in Def.'s Mot. 20). This is true even if the out-of-warranty failure involves the same issue or part as a recent in-warranty repair. *Id.*; *see also Brothers*, 2007 WL 485979, at *4; *Anunziato*, 402 F. Supp. 2d at 1141.

Apodaca fails to meaningfully distinguish the cases cited by Whirlpool, which are factually similar to his. He merely claims (incorrectly) that the *Long*, *Anunziato*, and *Brothers* holdings depended upon allegations of design defect. But he identifies no case that ever found a Song-Beverly Act warranty violation based on the same type of part failing twice, 14 months apart, as allegedly happened with Apodaca's machine. Accordingly, his express warranty claim fails.

1    **Whirlpool neither created nor breached a "fact" warranty.** As

2    previously argued (Def.'s Mot. 20-21), Whirlpool's alleged website advertisement

3    that "[e]xceptionally durable, commercial grade components are found in Maytag

4    brand appliances" (FAC ¶ 49) is not sufficiently "specific and unequivocal" to

5    create an express warranty. *See In re Toyota*, 754 F. Supp. 2d at 1182. Nor can the

6    ad warrant the control panels, control boards, or detergent dispensers in Apodaca's

7    2011 dishwasher when it does specify which components, which types of

8    appliances, which models, or which years.

9         Apodaca's new arguments are unavailing. In particular, he cites *In re LG*

10   *Electronics Inc.*, Serial No. 77046446, 2009 WL 4863339 (Trademark Tr. & App.

11   Bd. Dec. 1, 2009), for the proposition that the patent board "readily

12   acknowledge[s] the distinction between commercial and domestic cooking

13   appliances." (Pls.' Opp'n 28.) But he omits the board's conclusion that "[t]he

14   record shows . . . the distinction is not clear-cut." *Id.* at *11. Further, his references

15   to statutory definitions of commercial grade ingots, detergent, germicide, and

16   propane (Pls.' Opp'n 28) merely highlight the point that no such statute,

17   regulation, or industry standard defines that term for dishwasher components.

18        Finally, his claim independently fails, because he never alleges that he

19   visited Whirlpool's corporate website and saw the statement before purchasing his

20   dishwasher. Apodaca claims that he "was exposed to the Commercial Grade

21   Warranty through the decades-long advertising campaign in which Defendant

22   touts the reliability of its commercial grade components." (FAC ¶105.) But the

23   "decades-long advertising campaign" he describes is the humorous portrayal of

24   the Maytag repairman character, which does not use the term "commercial grade."

25   In fact, that phrase appears nowhere in his allegations concerning the Maytag

26   "lonely repairman" campaign or that he was aware the statement was made. (FAC

27   ¶¶ 36-48.) "California law does not permit Plaintiffs, in the absence of specific

28   allegations that they were aware of the statements made in a national advertising

1    campaign, to base their express warranty claims on [such] statements." *In re*

2    *Toyota*, 754 F. Supp. 2d at 1183.

3          **Whirlpool did not breach any implied warranty.** Apodaca fails to state

4    an implied warranty claim because he fails to allege any facts with plausible

5    support for his conclusory allegations that his dishwasher was not fit for its

6    ordinary purpose, would not pass without objection in the trade, and was unsafe.

7    He argues that his dishwasher failed its essential purpose because the control

8    panel, control board, and detergent dispenser each failed once during the limited

9    warranty. (FAC ¶18-20, 111.) But he concedes that all parts were repaired for free

10   under warranty and returned to full operation. (FAC ¶18-20.) Apodaca cites no

11   case finding breach of implied warranty based on the need for two repairs.

12   Numerous cases have found no breach of warranty where a replacement part fails

13   or the problem reappears outside warranty. *See Long*, 2007 WL 2994812, at *4

14   (express warranty only); *Brothers*, 2007 WL 485979 at *4 (express warranty

15   only); *Anunziato*, 402 F. Supp. 2d at 1141.

16         Further, because his argument that his dishwasher would not pass without

17   objection in the trade is based on his allegation that it "poses a significant risk of

18   fire" (FAC ¶¶ 73, 112), it also fails because, as explained in Section II above, the

19   FAC does not allege a plausible risk of fire. And, as explained in Section III, his

20   allegation that Whirlpool does not satisfy industry tests and standards (FAC ¶ 259)

21   is pure speculation unsupported by any well-pled facts.

22         Apodaca similarly fails to overcome his timeliness problem with this claim.

23   (Def.'s Mot. 22.) Although *Mexia v. Rinker Boat Co.,* 174 Cal. App. 4th 1297,

24   1308, 95 Cal. Rptr. 3d 285, 293 (2009), held that an implied warranty claim could

25   be based on a latent defect, other courts have recognized that *Mexia* "is an

26   outlier," *Dei Rossi v. Whirlpool Corp.,* No. 12-CV-125-JAM-JFM, 2013 WL

27   1312105, at *5 (E.D. Cal. Mar. 28, 2013), and is "contrary to established

28   California case law with respect to the duration of the implied warranty of

1   merchantability." *Marchante*, 801 F. Supp. 2d at 1022 (quoting *Hovsepian v.*

2   *Apple, Inc.*, Nos. 08-5788 JF (PVT), 09-1064 JF (PVT), 2009 WL 2591445, at *8

3   n. 7 (N.D. Cal. Aug. 21, 2009). Given the integral flaws in Apodaca's claims, all

4   of his express and implied warranty claims should be dismissed.

5   **V.    KALEITA'S FRAUDULENT CONCEALMENT CLAIM FAILS.**

6           Kaleita's fraudulent concealment claim remains deficient. First, he has not

7   cured his failure to establish a duty to disclose. Kaleita does nothing to counter

8   Whirlpool's point that the only affirmative representations he alleges (FAC ¶ 288)

9   are vague references to advertisements that fail on puffery and Rule 9(b) grounds

10   (Def.'s Mot. 26-27). And he never alleges that he spoke to a Whirlpool

11   representative. Moreover, Kaleita's alternative "superior knowledge" argument

12   fails because he has not alleged a plausible safety defect[13] or Whirlpool's

13   knowledge of a defect prior to his purchase in 2011 (*see* Sections II and III) A

14   fraud claim cannot be based on a seller's silence about a defect not known to the

15   seller. *See Rappaport v. Jimmy Bryan Toyota of Ft. Lauderdale, Inc.*, 552 So. 2d

16   1005, 1006 (Fla. Dist. Ct. App. 1988) ("[I]ntentional misconduct is a necessary

17   element of fraud" and "to prove fraud, a plaintiff must establish that the defendant

18   made a deliberate and knowing misrepresentation designed to cause and actually

19   causing detrimental reliance."). Indeed, the cases he cites on "superior

20   knowledge" are distinguishable by their inclusion of affirmative representations.

21           Finally, Kaleita fails to successfully counter Whirlpool's argument that his

22   fraudulent concealment claim is barred by the economic loss doctrine ("ELD").

23   (Def.'s Mot. 27-28.) Contrary to Kaleita's assertion that the ELD requires privity

24   (Pls.' Opp'n 22), the Florida Supreme Court recently affirmed its earlier holding

25

26   [13] Kaleita also misperceives Whirlpool's standing argument. Simply put, because
    Kaleita has not shown that his alleged safety defect manifested for anyone (*see*
27   Section II), he has nothing upon which to base his derivative "diminished value"
    claim. Accordingly, his damages remain speculative.

28

that "the products liability economic loss rule . . . applies even in the absence of privity of contract." *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos.*, 110 So. 3d 399, 407, 405 (Fla. 2013) (eliminating the sub-category of "contractual privity" ELD, but explicitly affirming ELD's application to product cases); *cf. Lehman Bros. Holdings, Inc. v. Campbell*, No. 3:12-cv-259, 2013 WL 3479525, at *2 (E.D. Tenn. 2013) (involving a non-product case and acknowledging that *Tiara* limited ELD to product cases). Nor can Kaleita avoid the ELD by arguing that advertising statements are relevant pre-purchase, whereas warranty representations are relevant only post-purchase. Whatever that distinction may mean to Kaleita personally, Florida law clearly holds that a fraudulent concealment claim is barred by the ELD where the information concealed is intertwined with the subject matter of the warranty. (*See* Def.'s Mot. 27 and cited cases.) In this case, Kaleita was protected by an express warranty, and he cannot avoid the ELD by ignoring his warranty. That he chose not to bring a baseless breach-of-warranty claim makes his claim to relief weaker, not stronger. Thus, the Court should dismiss Kaleita's fraudulent concealment claim.

## VI.    KALEITA'S FDUTPA CLAIMS FAIL.

Finally, Kaleita fails to state a claim under FDUTPA. In evaluating whether Whirlpool's conduct is "deceptive" or "unfair," the Court must first narrow its focus to the well-pled facts. *See Iqbal*, 556 U.S. at 679. Thus, the court need not consider whether it would be unfair to sell a Dishwasher requiring "repairs costing approximately $3750 over [the dishwasher's] useful life," because the FAC identifies no consumer who has actually suffered such injuries. Kaleita himself asserts only one malfunction after 17 months of use, and he opted not to have the dishwasher repaired. (FAC ¶ ¶32, 34.)[14] As explained in Sections II and III,

---

[14] The allegations considered by the Court should be further narrowed, because Kaleita lacks standing to bring claims based on conduct that has no causal

*(Footnote cont'd on next page.)*

1  Plaintiffs have not alleged a plausible safety concern or the existence of any

2  plausible defect in the control board, control panel, or detergent dispenser—let

3  alone Whirlpool's pre-sale knowledge. Thus, the question is not whether it would

4  violate FDUTPA to conceal a substantial risk of fire or a quality defect that affects

5  all products, but whether it violates FDUTPA to not disclose the risk that a small

6  percentage of dishwashers will fail earlier than consumers expect.

7       Kaleita's deceptive practice claim fails because he has not established a

8  duty to disclose. He argues this is not an element of FDUTPA based on *Morris v.*

9  *ADT Security Services*, 580 F. Supp. 2d 1305, 1310 (S.D. Fla. 2008). (Pls.' Opp'n.

10 20.) *Morris* ruled duty to disclose is not an element of every FDUTPA claim

11 because a plaintiff may be able to identify a practice that is unfair for reasons

12 other than non-disclosure. But the Eleventh Circuit later clarified that where, as

13 here, FDUTPA claims are based on non-disclosure, the plaintiff must establish

14 duty to disclose. *Virgilio v. Ryland Grp., Inc.,* 680 F.3d 1329, 1337-38 (11th Cir.

15 2012). In analyzing "deceptive" practices claims, a split of authority exists among

16 Florida federal courts regarding when a manufacturer has a duty to disclose

17 alleged defects. In *Jovine v. Abbott Laboratories, Inc.,* 795 F. Supp. 2d 1331 (S.D.

18 Fla. 2011), the court rejected the argument that a FDUTPA claim could be based

19 on selling a defective product without an affirmative misrepresentation. As the

20 Court reasoned, "Plaintiff, however, does not explain how selling a defective

21 product, in and of itself, is a deceptive trade practice. Ostensibly, it would not be a

22 violation of FDUTPA to sell a broken-down car or an inoperable computer

23 provided the seller did not misrepresent the items' qualities." *Id.* at 1343. The

24

25

---

*(Footnote cont'd from previous page.)*

26 relationship to him. (*See* Def.'s Mot. at 17 (citing cases), 28.) Although Kaleita

27 argues "diminished value," he does not explain how the alleged conduct has
   affected him.

28

*Jovine* court found that the plaintiffs stated a FDUTPA claim by alleging the product label affirmatively represented the infant formula was safe for consumption when it was in fact not safe and had allegedly sickened thousands of infants. *Id.* at 1344. In *Matthews v. American Honda Motor Co.,* No. 12-60630-CIV, 2012 WL 2520675, at *2-3 (S.D. Fla. June 6, 2012), the court allowed an omissions claim, but stressed its decision was based on the manufacturer's <u>knowing</u> failure to disclose the defect, which it believed took the case outside warranty law.

Thus, even if this Court follows *Matthews*, Kaleita fails to establish duty to disclose, because he has not sufficiently alleged Whirlpool's pre-sale knowledge of the alleged defects. Kaleita cites *Gavron v. Weather Shield Manufacturing, Inc.,* 819 F. Supp. 2d 1297, 1299-300 (S.D. Fla. 2011), for the proposition that failure to disclose a defect can be deceptive regardless of whether a manufacturer has knowledge. But *Gavron* was a case involving affirmative misrepresentations. The court found it was deceptive for the seller to not disclose its windows were improperly sealed because this was directly contrary to  representations it had made. *Id.* at 1299-1300 & n.1. As explained above (*see* Section I), Kaleita has not alleged any actionable representations by Whirlpool. It would be nonsensical to call a manufacturer's silence "deceptive" or "unfair" in the absence of knowledge or a contrary representation. Kaleita's "unfair" claim suffers from similar defects as his "deceptive" claim under FDUTPA, because it is based on the same alleged conduct.[15] He has not sufficiently alleged Whirlpool had pre-sale knowledge of a defect (*see* Section III) And selling a defective product, in and of itself, is not actionable under FDUTPA (*see* Section VI). *See Jovine*, 795 F. Supp. 2d at 1343.

---

[15] Kaleita's argument that his "unfair practices" claim is not based on "failure to disclose a defect," (Pl's. Opp'n. 23), is contrary to the FAC (*See* FAC ¶¶ 127-163 (subheading "Whirlpool's omission of material fact" under heading "Unfair Prong" ); ¶302 ("It is unethical . . .to deny the existence of a defect.")

Finally, an act or practice is not "unfair" under FDUTPA unless it is "likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." *Millennium Commc'ns & Fulfillment, Inc. v. Office of Attorney Gen., Dep't of Legal Affairs, State of Fla.,* 761 So. 2d 1256, 1263 (Fla. Dist. Ct. App. 2000). Kaleita cannot show the alleged harm of requiring consumers to bear their own repair costs for latent quality defects that manifest outside warranty outweighs the harm to the public of allowing lawsuits any time a product does not live up to a consumers' subjective economic expectations. Such a rule would undermine warranty limitations, invite endless litigation, and significantly increase product costs for consumers. For all of these reasons, Kaleita's FDUTPA claims should be dismissed.

## CONCLUSION

For the reasons stated in support of Whirlpool's original Motion to Dismiss and the above brief, this Court should dismiss the FAC in its entirety.

Dated: September 13, 2013          Wheeler Trigg O'Donnell LLP


                                   By: *s/ Andrew M. Unthank*
                                       Andrew M. Unthank

                                   Attorney for Defendant
                                   Whirlpool Corporation

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on September 13, 2013, I electronically filed the foregoing **Reply in Support of Defendant Whirlpool Corporation's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

> Stuart M. Eppsteiner (sme@eppsteiner.com)
>
> Andrew J. Kubik (ajk@eppsteiner.com)
>
> Zelekha Amirzada (za@eppsteiner.com)
>
> *Attorneys for Plaintiffs*

*s/Andrew M. Unthank*
Andrew M. Unthank